# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOURGEMAN,<br><br>                Plaintiff,<br><br>      vs.<br><br><br><br>COLLINS FINANCIAL SERVICES, INC.; NELSON & KENNARD; DELL FINANCIAL SERVICES, L.P.; CIT FINANCIAL USA, INC; et al.,<br><br>                Defendants. | 08-CV-01392-JLS-NLS<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART COLLINS FINANCIAL AND NELSON & KENNARD'S MOTION TO DISMISS (2) GRANTING IN PART AND DENYING IN PART COLLINS FINANCIAL AND NELSON & KENNARD'S MOTION TO STRIKE AND (3) GRANTING IN PART AND DENYING IN PART DELL FINANCIAL SERVICES'S MOTION TO DISMISS**<br><br>(Doc. Nos. 38, 39, 40, & 57) |

Presently before the Court is Defendants Collins Financial and Nelson & Kennard's ("CFNK") motion to dismiss the complaint and motion to strike portions of the complaint, Defendant Dell Financial Services's ("DFS") motion to dismiss the complaint.  For the reasons set forth below, Defendants CFNK's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, CFNK's motion to strike is **GRANTED IN PART** and **DENIED IN PART**, and DFS's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.**

//

**BACKGROUND**

Plaintiff, a resident of Mexico, entered into a finance agreement on or prior to November 18, 2001 with DFS and CIT Financial USA for the purchase of a Dell computer.[1] (First Amended Complaint ("FAC") ¶ 20.) Plaintiff pre-paid the full finance debt prior to August 2, 2003. (Id. ¶ 22.) DFS and CIT failed to process Plaintiff's payments and failed to register that he had paid in full. (Id. ¶¶ 23–24.) Consequently, the purported debt was sold to Collins Financial. (Id.) Collins Financial, acting through law firm Nelson & Kennard, attempted to collect the purported debt from Plaintiff by filing a collection action in California state court. (Id. ¶ 27.) The state court action was dismissed before Plaintiff filed a response. (Id. ¶ 37.)

On July 31, 2008, Plaintiff filed the instant action. The first amended complaint ("FAC") was filed as a class action on April 6, 2009. On April 20, 2009, Defendants CFNK filed a motion to dismiss ("Collins MTD") and a motion to strike, ("Collins MTS") and Defendant DFS filed a motion to dismiss ("DFS MTD.") The Court received Plaintiff's opposition to the Collins MTD, ("Opp. to Collins MTD") to the Collins MTS, ("Opp. to Collins MTS") and to the DFS MTD, ("Opp. to DFS MTD") on May 8, 2009. The Court received CFNK's motion to dismiss reply, ("Collins MTD Reply") and motion to strike reply, ("Collins MTS Reply") as well as DFS's motion to dismiss reply, ("DFS MTD Reply") on May 21, 2009.

**ANALYSIS**

**I.  Collins Financial and Nelson & Kennard's Motion to Dismiss**

  **A.  Legal Standard**

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) permits courts to dismiss a complaint for two reasons: (1) lack of a cognizable legal theory or (2) pleading of insufficient facts under an adequate theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533–34 (9th Cir. 1984). In reviewing the Rule 12(b)(6) motion to dismiss, the Court must assume the truth of all factual allegations and construe inferences in the light most favorable to the nonmoving party. Thompson

---

[1] For purposes of this motion, all of the facts alleged in the complaint are taken as true. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th. Cir. 2001).

v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). While the complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). That is, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Associated Gen. Contractors of Am. v. Metro. Water Dist., 159 F.3d 1178, 1181 (9th Cir. 1998) (quoting Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 550 U.S. at 555 (citations omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, the Court may deny leave to amend where amendment would be futile. See id.; Schreiber Distrib., 806 F.2d at 1401.

**B.     Fair Debt Collection Practices Act**

The Fair Debt Collection Practices Act ("FDCPA") prohibits various abusive debt collection practices. 15 U.S.C. § 1692. Plaintiff brings several claims against CFNK under the FDCPA. (FAC ¶ 52.) These include that Defendants through their actions, inter alia, harassed and oppressed Plaintiff; used false or unconscionable means to collect debts; failed to provide proper notice of debt; attempted to collect amounts not permitted by law; brought legal action in an improper venue; and made various misrepresentations to Plaintiff. (Id.; 15 U.S.C. §§ 1692b–1692g, 1692i.)

1.     Defendants' Communication with Plaintiff

CFNK moves to dismiss the FDCPA claims on the grounds that no communications between them and Plaintiff have been alleged during which the litany of alleged FDCPA violations could have

occurred. (Collins MTD, at 3–4.) However, the FDCPA defines a "communication" broadly, as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Holding state court collection actions to be "communications" is in accord with the language of the FDCPA: such litigation conveys "information regarding a debt" in the emphatic "medium" of a summons to defend oneself in court. This is supported by Heintz v. Jenkins, 514 U.S. 291 (1995). In that case, the Supreme Court declined to exclude acts of litigation aimed at debt collection from the scope of the FDCPA. Id. at 297. Further, treating collection litigation as a "communication" respects the FDCPA's purpose, which is to "eliminate abusive debt collection practices." 15 U.S.C.A. § 1692(e). To lend legitimacy to harassment or abuse of debtors that occurs in court would not be consistent with broadly stated Congressional intent. Therefore, given the language and purpose of the FDCPA, the Supreme Court's decision in Heintz, and taking the allegations in the complaint as true, Defendants' state court claim is an FDCPA "communication."

### 2. Extraterritoriality

CFNK next argue that Plaintiff lacks standing to bring FDCPA claims. They argue that granting relief to Plaintiff, a resident of Mexico during the events at issue, would require extraterritorial application of the FDCPA. (Collins MTD, at 5–7.)

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244, 248 (1991) (quoting Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949)). Before considering whether a statute should be applied extraterritorially, a court must first address whether application of the statute presents an issue of extraterritoriality at all. Envtl. Def. Fund v. Massey, 986 F.2d 528, 532 (D.C. Cir. 1993); see also 44B Am. Jur. 2d Int'l Law § 71 (2009) ("the presumption [against extraterritoriality] has no bearing when the conduct that Congress seeks to regulate occurs largely within the United States. . . ."). Whether application of a statute is extraterritorial hinges largely on whether the conduct Congress seeks to regulate occurred in the United States. Gushi Bros. Co. v. Bank of Guam, 28 F.3d 1535, 1538 (9th Cir. 1994) (citing Massey, 986 F.2d at 531) ("Questions involving the reach of Congress' prescriptive jurisdiction are not

implicated when the conduct sought to be regulated occurs within the United States."); see also Restatement (Third) of Foreign Relations Law § 402 (1987). Even if the effect or harm of the conduct occurred outside the U.S., if the harm-causing *conduct* at issue occurred largely in the U.S., enforcement of the statute is not extraterritorial. Massey, 986 F.2d at 531;[2] cf. Aalmuhammed v. Lee, 202 F.3d 1227, 1238 (9th Cir. 2000) (no extraterritoriality because conduct at issue may have occurred in U.S.); Grunenthal GmbH v. Hotz, 712 F.2d 421, 425–26 (9th Cir. 1983) (court has subject matter jurisdiction over securities fraud action involving sale of foreign securities between foreign corporations because alleged fraudulent conduct occurred in U.S.).

In the instant case the conduct at issue—the filing of a state collection action allegedly in violation of the FDCPA—occurred in the United States. There is no suggestion any actions taken by CFNK in connection to this or any other communication with Plaintiff occurred outside the United States. Plaintiff's seeking enforcement of the FDCPA against Defendants therefore raises no issue of extraterritoriality.

Defendants object that Plaintiff was in Mexico when he received any communications or suffered any harms, and cite to Arabian American Oil Co. and Filardo to argue that "the Supreme Court has repeatedly refused to allow plaintiffs to seek a remedy under federal statutes based upon harm occurring outside of the country." (Collins MTD Reply, at 2–3.) The legal cause of the lack of standing in these cases, however, is the foreign conduct rather than the foreign harm. The Ninth Circuit has stated the principle of Arabian American Oil Co. and Filardo: "the cases invoke the presumption [against extraterritoriality] when applying a statute would have the effect of regulating specific *conduct* occurring abroad." Blazevska v. Raytheon Aircraft Co., 522 F.3d 948, 954 (9th Cir. 2008) (emphasis added). Since Defendants' conduct occurred in the United States, no issue of

---

[2] Defendants devote much of their reply to Massey, arguing that the decision has been called into question and is distinguishable from this case. (Collins MTD Reply, at 3–4.) Neither point is convincing. Smith v. United States, 507 U.S. 197 (1993), found *conduct* committed in Antarctica extraterritorial, and is thus consistent with the analysis here. The district cases cited question how the presumption of extraterritoriality should be applied to sovereign-less areas such as the high seas; they do not address Massey's valid statement that domestic conduct does not touch extraterritoriality at all. Basel Action Network v. Maritime Admin., 370 F. Supp. 2d 57 (D.D.C. 2005); NEPA Coalition of Japan v. Aspin, 837 F. Supp. 466 (D.D.C. 1993). Further, that Massey dealt with a "consumer group seeking to enforce [a] decision-making process regulated by a federal statute" in no way distinguishes it from the instant case. (Collins MTD Reply, at 4.) The "consumer group" was a plaintiff, and the "decision-making process" at issue was conduct that occurred in the United States. Regardless, many other authorities articulate these same principles of extraterritoriality.

1  extraterritoriality arises.[3] <u>Massey</u>, 986 F.2d at 531.

2              3.      FDCPA Notice of Debt Requirement

3  The FDCPA requires that within five days of making an initial communication with a debtor
4  a debt collector provide the debtor with a written notice containing various data regarding the debt.
5  15 U.S.C. § 1692g(a). Congress recently amended 15 U.S.C. § 1692g, adding the provision "[a]
6  communication in the form of a formal pleading in a civil action shall not be treated as an initial
7  communication for purposes of subsection (a)." Pub.L. 109-351, 120 Stat.2006 (Oct. 13, 2006),
8  adding 15 U.S.C. § 1692g(d).

9  Defendants argue that Plaintiff's § 1692g claim should be dismissed because the only
10 communication he alleges is the state court collection action, which does not count as an "initial
11 communication" under § 1692g(d). (Collins MTD, at 3–7; Collins MTD Reply, at 5.) While Plaintiff
12 makes vague and conclusory statements that outside the court proceeding CFNK "otherwise [took]
13 action to oppress and harass Plaintiff," he fails to allege any actual communications other than the
14 state court summons and complaint. (FAC ¶ 26–28, 37.) Because Plaintiff has alleged a
15 "communication" under the FDCPA and his claims do not involve extraterritorial application of the
16 FDCPA, the Court **DENIES** Defendants' motion to dismiss Plaintiff's FDCPA claims, except for the
17 § 1692g claim, for which the Court **GRANTS** Defendants' motion to dismiss.

18     **C.     State Law Claims**

19 CFNK assert that Plaintiff's state law claims should be dismissed because dismissal of the
20 FDCPA claims will leave no question of federal law and thus no jurisdiction for this Court. (Collins
21 MTD, at 7.) Most of the FDCPA claims have survived CFNKs' motion to dismiss. The Court thus
22 retains jurisdiction over Plaintiff's state law claims, since they share a "common nucleus of operative
23 fact" with the FDCPA claims. <u>See</u> 28 U.S.C. § 1367(a); <u>United Mine Workers of America v. Gibbs</u>,
24 383 U.S. 715, 725 (1966). Defendants raise no other reason why the state law claims should be
25 dismissed. The Court therefore **DENIES** Defendants' motion with respect to all of Plaintiff's state

---

[3] Defendants' section arguing that "The [FDCPA] was not passed to provide a remedy to residents of Mexico" differs little from the argument just addressed, in that it again focuses on the harmed instead of the harming party. (Collins MTD Reply, at 4–5.) The FDCPA was passed, in part, "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The statute does not say that violators are to be cleansed of liability should citizens of other countries be their abused of choice.

law claims.

## II.   Collins Financial and Nelson & Kennard's Motion to Strike

### A.   Legal Standard

FRCP 12(f) permits the Court to "[strike] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). The court "views the pleadings in the light most favorable to the non-moving party." Id. In a motion to strike, "courts are reluctant to determine disputed or substantial questions of law." S.E.C. v. Sands, 902 F. Supp. 1149, 1166 (C.D.Cal. 1995) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1381 (1990)).

### B.   Fair Debt Collection Practices Act

#### 1.   FDCPA Violations Through Filing of Abusive Litigation

CFNK move to strike allegations that they violated the FDCPA by filing a state collection action without yet having the evidence necessary to prevail in their suit. (Collins MTS, at 6–7.) Defendants, however, understate the claims being made against them. Granted, the filing of a lawsuit, even if a plaintiff does not have the means of proving the case at filing or does not ultimately prevail, has not by itself been considered harassment or abuse under the FDCPA. See, e.g., Heintz v. Jenkins, 514 U.S. 291, 296 (1995); Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 330 (6th Cir. 2006). But the complaint here alleges actions above and beyond merely filing suit. These further allegations, if true, potentially constitute abuse under the FDCPA. Plaintiff has alleged he owed no debt, the action filed in state court by Nelson & Kennard was time-barred, Nelson & Kennard made no effort to verify the existence of the alleged debt before filing, and they attempted to collect an amount different from what their own records showed was owed. (FAC ¶¶ 22, 27, 33–36.) The facts alleged above cannot as a matter of law be dismissed for failure to state an FDCPA cause of action. See, e.g., Freyermuth v. Credit Bureau Services, Inc., 248 F.3d 767, 771 (8th Cir. 2001) (bringing time-barred collection action, even if for valid debt, violates FDCPA); Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000) (misrepresenting amount of debt violates FDCPA); Mello v. Great Seneca Fin. Corp., 526 F. Supp. 2d 1020, 1023 (C.D. Cal. 2007) (same); see also Jeter v. Credit Bureau, 760 F.2d

1168, 1179 (11th Cir. 1985) ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury").

The cases cited by Defendants do not support striking language from the FAC. The portions cited in the motion to strike support the narrow proposition that filing an incomplete or losing lawsuit *by itself* does not violate the FDCPA. (Collins MTS, at 6–7.) But several of these cases go on to explain that acts of abuse connected to a suit can turn the litigation into a violation of the FDCPA. The Sixth Circuit in Harvey made it clear that had the plaintiff alleged she owed no debt and that the defendant made misrepresentations in its state court complaint, her FDCPA claims would not have been dismissed. Harvey, 453 F.3d at 330–32. The other cases cited by Defendants are similarly unsupportive. See, e.g., Nikoloff v. Wolpoff & Abramson, L.L.P., 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007) (initiating arbitration to collect legitimate debt does not violate FDCPA; but debt collector trying to collect debt it does not own would violate FDCPA); Whittiker v. Deutsche Bank Nat. Trust Co., 605 F. Supp. 2d 914, 929 (N.D. Ohio 2009) (filing action debt collector knows it cannot prove could violate FDCPA). The Court **DENIES** Defendants' motion to strike allegations they violated the FDCPA by filing an abusive state collection action against Plaintiff.

2.  FDCPA Violations Through Lack of "Meaningful Involvement"

Defendants move to strike portions of the complaint alleging they violated the FDCPA because they lacked "meaningful involvement" in the debt collection process. (Collins MTS, at 8–9.) Defendants point out that the plain language of the FDCPA prohibits representing communications as being from an attorney when they are not, but says nothing about how involved with a debt collection a communicating attorney needs to be. (Collins MTS Reply, at 4; see 15 U.S.C. § 1692e(3).) Defendants also state that the Ninth Circuit has not taken a position on whether attorneys not having "meaningful involvement" violates the FDCPA and that the decisions creating the "meaningful involvement" doctrine did not address attorneys filing litigation. (MTS Reply, at 4, 6; Clomon v. Jackson, 988 F.2d 1314 (2nd Cir. 1993); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996).)

Plaintiff argues that this Court should adopt the "meaningful involvement" doctrine because communications from a completely uninformed attorney are not from someone acting professionally in the capacity of an attorney. (Opp. to Collins MTS, at 8.) Plaintiff cites the reasoning of the Clomon and Avila decisions as support, as well as decisions from the Northern and Central Districts of

1    California. (Id.; see Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1461 (C.D. Cal 1991).)

2    The parties make arguments for and against adopting the "meaningful involvement" rule.
3    Defendants, however, give no germane reason to strike Plaintiff's allegations on a point of law that
4    is not fully settled. Rather than explain why the allegations are redundant, immaterial, impertinent,
5    or scandalous, they attempt to argue a material legal issue on its merits. A motion to strike can be
6    denied when the law at issue is not clear or is in dispute, and the arguments presented by Defendants
7    do not justify striking Plaintiff's "meaningful involvement" allegations. See Sands, 902 F. Supp. at
8    1166. Defendants' motion to strike the FAC's references to "meaningful involvement" is therefore
9    **DENIED**.

10   **C.     State Law Claims**

11   Defendants move to strike the Rosenthal Act and all other state law claims insofar as they arise
12   from Defendants filing the state collection claim. (Collins MTS, at 10–12.) They argue that
13   communications to Plaintiff arising out of the state collection claim are protected by California's
14   litigation privilege. See Cal. Civ. Code § 47(b).

15   "The interplay between the litigation privilege and the Rosenthal Act is not well defined."
16   Yates v. Allied Intern. Credit Corp., 578 F. Supp. 2d 1251, 1255 (S.D. Cal. 2008). In fact, there is a
17   split in opinion among federal district courts on whether the litigation privilege is irreconcilable with
18   the Rosenthal Act. Compare Oei v. N. Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1100
19   (C.D. Cal. 2006) ("Applying the privilege . . . would effectively vitiate the Rosenthal Act and render
20   the protections it affords meaningless.") with Taylor v. Quall, 458 F. Supp. 2d 1065, 1067–69 (C.D.
21   Cal. 2006) (precluding Rosenthal Act claims based on the litigation privilege). In the midst of this
22   split in authority, the Court finds the reasoning in Yates persuasive:

> the application of the privilege would leave an individual. . . without a California civil remedy, a result hardly intended by the legislature. Further, rules of statutory construction weigh in favor of the Rosenthal Act, the more specific and recent law, and against the litigation privilege, the more general and earlier law.

Yates, 578 F. Supp. 2d at 1255. The Court finds that the litigation privilege does not apply to the Rosenthal Act claim brought against Collins Financial. Defendants' motion to strike the Rosenthal Act claims against Collins Financial is therefore denied. Because Plaintiff concedes that Nelson & Kennard are not subject to the Rosenthal Act, the Court grants the motion to strike Nelson & Kennard from

Plaintiff's second cause of action. (Opp. to Collins MTS, at 1, n.1; see Reyes v. Kenosian & Miele, LLP, 525 F. Supp. 2d 1158, 1164 (N.D. Cal. 2007) (citing Cal. Civ.Code § 1788.2(c)) (attorneys not "debt collectors" under Rosenthal Act)).

As to the state law claims under the California Unfair Business Practices Act, and for negligence and invasion of privacy, Defendants take Plaintiff's silence in his motion to strike opposition as a concession to striking those claims. (Collins MTS Reply, at 7.) That Plaintiff's non-Rosenthal Act state law claims may end up precluded by the litigation privilege is plausible. However, the Court is not ready to adjudicate these claims in a motion to strike, because more factual development is needed. Although his claims are not supported with factual allegations, Plaintiff claims that Defendants took actions to oppress and harass him outside of the state collection suit. (FAC ¶¶ 28, 37.) Defendants here moves to strike material in the complaint that is not ripe for adjudication and needs to be addressed elsewhere in the litigation process. See Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1382 (1990) ("a motion to strike frequently has been denied when the court believes that no prejudice could result from the challenged allegations"). The Court **GRANTS** Defendants' motion to strike Nelson & Kennard from Plaintiff's Rosenthal Act cause of action, and **DENIES** Defendants' motion to strike Plaintiff's other state law claims.

### D.    Class Action

CFNK move to strike Plaintiff's proposed class definition, and state: "For the reasons set forth in Defendants'. . . Motion to Dismiss, [Plaintiff] cannot bring an action on behalf of a class of consumer who reside "abroad." (Collins MTS, at 13.) Because Defendants base their motion to strike Plaintiff's class definition on the unsuccessful extraterritoriality argument found in their motion to dismiss, the Court **DENIES** Defendants' motion to strike the class allegation language in the FAC. See section I.B.2. supra.

//
//
//
//
//

1  **III.   Dell Financial Services's Motion to Dismiss**[4]

2       **A.   California Unfair Business Practices Act**

California's Unfair Business Practices Act ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff claims that DFS has violated the "unfair" prong of the UCL. (Opp. to DFS MTD, at 3.) The California Supreme Court ruled that between business competitors conduct is only "unfair" under the UCL if it violates or is comparable to a violation of—and is thus "tethered" to—an underlying law.[5] Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 186–87 (1999). As applied to consumers, California appellate courts have split over how to define "unfair" under the UCL, with some extending the California Supreme Court's "tethering" test to consumers and some applying an older "balancing" test. Compare Gregory v. Albertson's, Inc., 104 Cal.App.4th 845, 854 (Cal. Ct. App. 2002) (applying "tether" test to consumers); and Scripps Clinic v. Superior Court, 108 Cal.App.4th 917, 938 (Cal. Ct. App. 2003) (same); with Smith v. State Farm Mutual Auto. Ins. Co., 93 Cal.App.4th 700, 718–19 (Cal. Ct. App. 2001) (applying balancing test). Recognizing that the UCL, as applied to consumer actions, is currently "in flux," the Ninth Circuit has not, "in the absence of further clarification from the California Supreme Court," stated a preference for either the "tether" or "balancing" test. Lozano v. AT & T Wireless Services, Inc., 504 F.3d 718, 737 (9th Cir. 2007).

The Court finds that the reasoning of the California Supreme Court in Cel-Tech leads logically to an application of the "tether" test to consumer UCL suits. Considering whether conduct should be held "unfair" on public policy rather than statutory grounds, the court in Cel-Tech found that balancing tests to determine unfairness are "too amorphous and provide too little guidance to courts." Cel-Tech, 20 Cal.4th at 185. The court went on:

> Vague references to "public policy,". . . provide little real guidance. "Public policy" as a concept is notoriously resistant to precise definition, and courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, lest they mistake their own predilections for public policy which deserves recognition at law.

Id. (quotation and citation omitted). The Court is cautious not to extend the scope of unfairness under

---

[4] The legal standard for a motion to dismiss is presented supra, section I.A.

[5] Conduct is also "unfair" if it "significantly threatens or harms competition," Cel-Tech, 20 Cal.4th at 187, which has not been alleged by Plaintiff in the instant case.

the UCL beyond what can be justified by the expressed will of the legislature.

Plaintiff seeks restitution from all Defendants, including DFS, as well as an injunction against Defendants filing lawsuits in cases where the debt has not been verified or where Defendants do not possess account documents. (FAC ¶¶ 61–62.) As part of his UCL cause of action Plaintiff states that through "multiple improper means of debt collection" Defendants violated the FDCPA and the Rosenthal Act. (FAC ¶ 63.) Plaintiff makes no claims against DFS under the FDCPA or the Rosenthal Act, but he argues that his UCL claims against DFS pass the "tether" test because DFS has violated "the spirit, if not the express terms," of those statutes. (Opp. to DFS MTD, at 7.) Plaintiff invokes against DFS no actual provisions of the FDCPA or the Rosenthal Act. To support the argument that DFS has violated the "spirit" of the two statutes he cites broad statements of their overall purpose. (Opp. to DFS MTD, at 6.)

According to the "tether" test, for conduct contrary to the "spirit" of a law to violate the UCL, it must be comparable to an actual violation of a law. Cel-Tech, 20 Cal.4th at 186–87. Plaintiff does not overcome this requirement by citing statements of purpose, which are vague, hortatory guides and not specific, enforceable law. See generally D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932) (general statutory language does not control over specific statutory provisions). Further, to grant courts license to find liability any time conduct failed to accord with the stated purpose of a statute would leave courts without guidance in determining what is "unfair" in precisely the manner Cel-Tech aimed to prevent. Because Plaintiff fails to state which specific provisions of the FDCPA or the Rosenthal Act DFS violated or essentially violated in order to trigger the UCL, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's UCL claims against DFS.[6]

### B.    Negligence

Plaintiff claims that DFS owed him a duty of care, which it breached by not accurately recording Plaintiff's debt and negligently selling the debt after it no longer existed. (FAC ¶¶ 66–68.) DFS moves to dismiss Plaintiff's negligence claim on the grounds that Plaintiff suffered no actual damages due to DFS's actions and that the two-year statute of limitations on the claim has run. (DFS MTD, at 12–13.) Plaintiff responds he suffered damages in attorney's fees he incurred defending the

---

[6] The Court need not address DFS's further arguments that Plaintiff has suffered no injury in fact under the UCL or that the UCL statute of limitations has run.

1  state collection action. (Opp. to DFS MTD, at 9.) Plaintiff concedes that the statute of limitations on the negligence claim is two years, but asserts that it did not begin to run until DFS sold the allegedly non-existent debt to Collins Financial, which occurred at a time as yet unknown to Plaintiff. (Id.)

#### 1.    Requirements to State a Claim for Negligence

In order to recover on a cause of action for negligence, a plaintiff must show (1) the defendant had a legal duty to use due care; (2) defendant breached that legal duty; (3) the breach proximately or legally caused the harm at issue; and (4) the breach of the duty of care resulted in actual loss or damage. Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996). DFS challenges the last two of these requirements, claiming that Plaintiff "has not pled any true damages as a result of DFS's conduct." (DFS MTD, at 12.)

Regarding the third requirement, once the existence of a duty of care has been established, the issue of proximate cause is typically a jury question. Hoyem v. Manhattan Beach City Sch. Dist., 22 Cal.3d 508, 520 (1978). Whether DFS's sale of a non-existent debt to Collins Financial was a proximate cause of an abusive state collection action against Plaintiff would therefore be a jury question, and not grounds for the Court to dismiss Plaintiff's negligence claim.

As to the fourth prong, "[r]ecovery for injury to one's economic interests, where it is the foreseeable result of another's want of ordinary care, should not be foreclosed simply because it is the only injury that occurs." J'Aire Corp. v. Gregory, 24 Cal.3d 799, 806 (1979). Attorney's fees necessitated to redress another party's tortuous conduct can count as harm for which a plaintiff can seek recovery. Brandt v. Superior Court, 37 Cal.3d 813, 817 (1985). Plaintiff, by claiming that he incurred legal fees defending against an allegedly abusive state collection action, has alleged actual loss or damage. (FAC ¶ 37). DFS has not shown that Plaintiff fails to fulfill any of the four requirements to state a claim for negligence.

#### 2.    Statute of Limitations

"The general rule for defining the accrual of a cause of action sets the date as the time when the cause of action is complete with all of its elements." Norgart v. Upjohn Co., 21 Cal.4th 383, 389 (1999). Thus, the statute of limitations "period begins to run, when plaintiff has suffered damages from the wrongful act." Lyles v. California, 153 Cal.App.4th 281, 287 (Cal. Ct. App. 2007) (citing Norgart, 21 Cal.4th at 397). "However, this rule has an important exception, referred to as the discovery rule

1  that postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the
2  cause of action." Id. (quotation omitted).  "A plaintiff has reason to discover a cause of action when
3  he or she has reason at least to suspect a factual basis for its elements." Fox v. Ethicon Endo-Surgery,
4  Inc., 35 Cal.4th 797, 807 (2005) (quotation omitted).

5       DFS claims that the statue of limitations began to run on Plaintiff's negligence claim when he
6  made the final payments on his debt in 2003.  (DFS MTD, at 12.)  DFS cites the "discovery rule" as
7  support for its proposed accrual date, but gives no explanation why Plaintiff should have suspected
8  anything was amiss when he allegedly made the last payment on his debt.  Nor would Plaintiff have
9  necessarily known that his information had been passed to Collins Financial.  Based on the facts as
10 Plaintiff alleges them, the first time he reasonably could become aware that his debt had been
11 mismanaged by DFS was when the state collection action was filed against him in 2007.  Since Plaintiff
12 filed the instant action in mid-2008, the two year statute of limitations on his negligence claim had yet
13 to run.  Because DFS has not demonstrated that Plaintiff fails to fulfill the negligence requirements or
14 that the statute of limitations has run, the Court **DENIES** DFS's motion to dismiss Plaintiff's
15 negligence claim.

16     **C.**    **Class Certification**

17      "At an early practicable time after a person sues or is sued as a class representative, the court
18 must determine by order whether to certify the action as a class action." Fed.R.Civ.P. 23(c)(1)(A).
19 However, "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a
20 claim." Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969).  District courts must take
21 a "close look" at the claims and evidence to determine the validity of a class certification. Amchem
22 Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997).  A separate hearing to determine class
23 certification thus respects the language of the FRCP and the precedents of the Supreme Court and Ninth
24 Circuit, as well as the value of class action litigation.  The Court **DENIES** DFS's motion to dismiss
25 the class allegations.

26 //
27 //
28 //

### IV. Leave to Amend

This Court must grant leave to amend unless it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." DeSoto, 957 F.2d at 658. In this case, it is clear that amendment of the complaint would not be futile. Therefore, the Court grants Plaintiff leave to amend.

### V. Defendant CIT Financial's Motion to Dismiss

On July 14, 2009, Defendant CIT Financial filed a motion to dismiss which is effectively identical to that filed by Defendant DFS. (Compare Doc. No. 40 with Doc. No. 57.) The Court has dismissed Plaintiff's complaint in part and allowed him to amend. Thus, the Court **DENIES** CIT's motion without prejudice. CIT may refile this motion if Plaintiff elects to not amend his complaint.

### CONCLUSION

For the reasons stated, CFNK's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, CFNK's motion to strike is **GRANTED IN PART** and **DENIED IN PART**, DFS's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and CIT's motion is **DENIED WITHOUT PREJUDICE**.

IT IS HEREBY ORDERED THAT

(1) Plaintiff's FDCPA § 1692g(a) notification claim is **DISMISSED WITHOUT PREJUDICE**;

(2) Plaintiff's Rosenthal Act claim against Nelson & Kennard is **STRICKEN**;

(3) Plaintiff's UCL claim against DFS is **DISMISSED WITHOUT PREJUDICE**;

(4) If Plaintiff elects to amend, he **SHALL FILE** the Second Amended Complaint within twenty one (21) days of the date this order is electronically docketed;

(5) The hearings set for August 13, 2009 and September 3, 2009 are hereby **VACATED**.

IT IS SO ORDERED.

DATED: August 6, 2009

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge