# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOURGEMAN,<br><br>                                                        Plaintiff,<br>  vs.<br><br>COLLINS FINANCIAL SERVICES, INC.; NELSON & KENNARD; DELL FINANCIAL SERVICES, L.P.; CIT FINANCIAL USA, INC; et al.,<br><br>                                                      Defendants. | CASE NO. 08-CV-01392 JLS (NLS)<br><br>**ORDER: GRANTING IN PART AND DENYING IN PART DELL FINANCIAL SERVICES' MOTION TO DISMISS**<br><br>(Doc. No.68) |

      Presently before the Court is Defendants Dell Financial Services ("DFS") and CIT Financial USA, Inc.'s ("CIT") motion to dismiss the complaint. (Doc. No. 68.) For the reasons set forth below, the Moving Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

      Plaintiff, a resident of Mexico, purchased a computer from Dell on or prior to November 19, 2001. (Second Amended Complaint ("SAC") ¶ 22.) Since Defendant was residing in Mexico, he had the machine shipped to his parents' house in Chula Vista, California. (*Id.*) The computer was financed through an oral agreement with DFS and CIT. (*Id.* ¶ 23.) Plaintiff pre-paid the full finance debt prior to August 2, 2003. (*Id.* ¶ 25.) DFS and CIT failed to process Plaintiff's payments and failed to register that he had paid in full. (*Id.* ¶¶ 26–27.) Consequently, the purported debt was sold

to Defendant Collins Financial. (<u>Id.</u> ¶ 27.) Collins Financial, acting through the law firm Nelson & Kennard, attempted to collect the purported debt from Plaintiff by filing a collection action in California state court. (<u>Id.</u> ¶ 30.) The state court action was dismissed before Plaintiff filed a response. (<u>Id.</u> ¶ 39.)

On July 31, 2008, Plaintiff filed the instant action. The first amended complaint ("FAC") was filed as a class action on April 6, 2009. On August 6, 2009, this Court dismissed the FAC in part and granted Plaintiff leave to amend. (Doc. No. 58 ("Prior Order").) Plaintiff filed a Second Amended Complaint ("SAC") on August 27, 2009. Subsequently, Moving Defendants filed this motion to dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – US —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1  (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must
2  be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts "'merely
3  consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting
4  *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained
5  in the complaint.  *Id.*  This review requires context-specific analysis involving the Court's "judicial
6  experience and common sense."  *Id.* at 1950 (citation omitted).  "[W]here the well-pleaded facts do
7  not permit the court to infer more than the mere possibility of misconduct, the complaint has
8  alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*

## ANALYSIS

**I.    Invasion of Privacy Claims**

11  The Moving Defendants first take issue with Plaintiff's invasion of privacy claims.  (Memo.
12  ISO Motion at 5–6.)  Plaintiff sets forth this claim in the fifth cause of action of the SAC.  (SAC ¶
13  73–78.)  After incorporating by reference the rest of his complaint, (*id.* ¶ 73) Plaintiff makes three
14  separate invasion of privacy claims.  First he alleges that the "Defendants willfully and intentionally
15  intruded into [his] solitude, seclusion, and private affairs . . . by repeatedly and unlawfully attempting
16  to collect a debt in violation of the FDCPA and the Rosenthal Act."  (*Id.* ¶ 75.)  Second, he claims that
17  they "also presented [him] in a false light to the public by causing the State Action to be filed in the
18  public courts . . . in which Defendants falsely represented that Plaintiff owed a debt and had failed to
19  pay the debt."  (*Id.*)  Finally, Plaintiff alleges invasion of privacy based on "publishing private facts
20  about [him] to the public and by placing [him] in a false light to the public."  (*Id.* ¶ 76.)  This final
21  violation includes "caus[ing] derogatory comments to be placed in Plaintiff's credit report."  (*Id.*)  In
22  Plaintiff's opposition, he argues that the SAC includes another factual basis for invasion of privacy.
23  (Opp. at 7–8.)  Citing to paragraph 28 of the SAC, Plaintiff claims that the "Debt Originator
24  Defendants violated Tourgeman's right to privacy by selling his private information to the Debt
25  Collector Defendants."  (*Id.* at 7.)

26  A "party claiming a violation of the constitutional right of privacy established in article I,
27  section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) a

1  reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy
2  interest." *Int'l Fed'n of Prof'l & Technical Eng'rs v. Superior Court*, 165 P.3d 488, 499 (Cal. 2007)
3  (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 39–40 (1994)); *cf. Sheehan v. S.F. 49ers,
4  Ltd.*, 201 P.3d 472, 477 (Cal. 2009) (These three "elements" "must be viewed simply as 'threshold
5  elements' that may be utilized to screen out claims that do not involve a significant intrusion on a
6  privacy interest protected by the state constitutional privacy provision." (quoting *Loder v. City of
7  Glendale*, 927 P.2d 1200, 1230 (Cal. 1997))). California courts have identified "[f]our distinct kinds
8  of activities" which result in tort liability based on an invasion of privacy: "(1) intrusion into private
9  matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4)
10 misappropriation of a person's name or likeness." *Moreno v. Hanford Sentinel, Inc.*, 91 Cal. Rptr. 3d
11 858, 862 (Cal. Ct. App. 2009).

12 Moving Defendants argue that regardless of Plaintiff's allegations, "DFS and CIT's alleged
13 reporting of information to a consumer reporting agency is . . . not actionable." (Memo. ISO Motion
14 at 6.)  They claim that this conduct is protected under California Civil Code § 1785.32. (*Id.*)  That
15 provision privileges the disclosure of information to and by credit reporting agencies except for "false
16 information furnished with malice or willful intent to injure." Cal. Civ. Code § 1785.32.  Thus, since
17 Plaintiff "does not allege that either [DFS or CIT] willfully or maliciously caused derogatory
18 comments to be placed on his credit report," "his cause of action for invasion of privacy on this
19 ground fails."[1]  (Memo. ISO Motion at 6.)

20 Plaintiff, for his part, claims that "[t]his case has nothing to do with furnishing information to
21 a credit reporting agency.  Instead, this case arises out of the wrongful sale of private financial
22 information to a **debt collector** who then misused that information by hiring a law firm to file a
23 frivolous lawsuit against Tourgeman." (Opp. at 8 (emphasis in original).)  Plaintiff argues that these
24 allegations state a claim for public disclosure of private facts.  (*Id.* at 7.)

25 To begin with, the Court notes that despite Plaintiff's protestations the SAC specifically

---

[1] Although the Moving Defendants argue that Plaintiff's punitive damages allegations are inadequate, the Court finds that this argument has been waived because it was first raised in the reply brief.

1  alleges that "Defendants caused derogatory comments to be placed in Plaintiff's credit report." (SAC
2  ¶ 76.) Because "Defendants" in this allegation is undifferentiated, the Court must assume that Plaintiff
3  raises this allegation against all Defendants sued. By referencing "comments . . . placed in Plaintiff's
4  credit report," this allegation implicates section 1785.32. Thus, to recover against the Moving
5  Defendants based on this credit report conduct, the SAC must contain allegations the information was
6  furnished with malice or willful intent to injure. Cal Civ. Code § 1785.32. Plaintiff has not done so.
7  Therefore, to the limited extent that Plaintiff alleges that the Moving Defendants put false information
8  in his credit report, Defendants' motion must be **GRANTED IN PART**.

9  As to the remainder of this claim, Plaintiff's motion must be **DENIED**. According to Plaintiff
10 (and as noted above) the primary basis of his invasion of privacy claim is the Moving Defendants' sale
11 of his private information to the Debt Collector Defendants. (Opp. at 7.) The Court applies the *Hill*
12 formulation to determine whether Plaintiff has adequately stated this claim: "(1) a legally protected
13 privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious
14 invasion of the privacy interest." *Int'l Fed'n of Prof'l & Technical Eng'rs*, 165 P.3d at 499.

15 On the first prong, Plaintiff has clearly stated a legally protected privacy interest. The
16 information at issue is Plaintiff's "private financial information, including his, (sic) account and credit
17 information and social security number." (SAC ¶ 28.) There can be little question that Plaintiff has
18 a legally protected privacy interest in his private financial information. *See, e.g.*, *Valley Bank of Nev.*
19 *v. Superior Court*, 542 P.2d 977, 979 (Cal. 1975) ("Although the amendment is new and its scope as
20 yet is neither carefully defined nor analysed by the courts, we may safely assume that the right of
21 privacy extends to one's confidential financial affairs as well as to the details of one's personal life.");
22 *Burkle v. Burkle*, 37 Cal. Rptr. 3d 805, 821 (Cal. Ct. App. 2006) ("The right to privacy extends to
23 one's personal financial information."); *Moskowitz v. Superior Court*, 187 Cal. Rptr. 4, 6 (Cal. Ct.
24 App. 1982) ("Personal financial information comes within the zone of privacy protected by article I,
25 section 1 of the California Constitution.").

26 Further, the second prong of this inquiry is plainly met on these allegations. "A 'reasonable'
27 expectation of privacy is an objective entitlement founded on broadly based and widely accepted
28 community norms." *Hill*, 7 Cal. 4th at 37. The decision in this case "must take into account any
'accepted community norms,' advance notice to [Plaintiff] . . ., and whether [Plaintiff] had the

opportunity to consent to or reject the very thing that constitutes the invasion." *TBG Ins. Servs. Corp. v. Superior Court*, 117 Cal. Rptr. 2d 155, 161 (Cal. Ct. App. 2002). Neither party advances an argument on this element of the inquiry. However, taking Plaintiff's allegations at face value he clearly had a reasonable expectation of privacy under the circumstances. As alleged, the relevant disclosure of his information did not occur until after Plaintiff had repaid his loan. (SAC ¶¶ 25–28.) Further, Plaintiff did not have the opportunity to consent to or reject this disclosure. Given all of the circumstances set forth in the SAC, Plaintiff had a reasonable expectation of privacy in the disclosed financial information.

Finally, Plaintiff has stated a "serious invasion of the privacy interest." "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy." *Hill*, 7 Cal. 4th at 37. In this case the Moving Defendants disclosed Plaintiff's private information to a debt collector whom they knew would pursue Plaintiff likely leading to further disclosures. Further, as a result of these Defendants' negligence, this information was related to a debt that no longer existed. The Court finds that this scenario involves a "serious invasion" of Plaintiff's privacy interest.

The Moving Defendants' only substantial counter-argument rests on the fact that "[a]uthorities have generally recognized that a creditor or his collection agent has a limited right to reveal to others the existence of a debtor's obligation in order to collect a debt."[2] *Timperley v. Chase Collection Serv.*, 77 Cal. Rptr. 782, 783 (Cal. Ct. App. 1969). However, that statement of the law presumes a debt. In this case, taking the SAC's allegations as true, Plaintiff did not actually owe a debt to the Moving Defendants at the time they sold his private financial information. (SAC ¶¶ 23–28.) Thus, the conduct is not protected by this narrow privilege.

In sum, the motion to dismiss is **GRANTED IN PART** as to Plaintiff's allegations that the Moving Defendants invaded his privacy by placing false information in his credit report. These

---

[2] Although Moving Defendants also argue that Plaintiff's "allegations of providing information to Collins, by themselves, are not sufficient to sustain an invasion of privacy claim," they do not explain why that is so. (Reply at 5.) Instead they provide the Court with a citation to an unpublished and irrelevant district court opinion granting summary judgment on intentional infliction of emotional distress and unfair competition claims. (Reply at 5 (citing *Johnson v. JP Morgan Chase Bank*, 2009 WL 382734, *8 (E.D. Cal. Feb. 13, 2009)).)

allegations are **DISMISSED** as to the Moving Defendants only. However, the motion is **DENIED IN PART** as to the remainder of Plaintiff's invasion of privacy claim.

**II.     Unfair Competition Law Claims**

Moving Defendants next challenge Plaintiff's California Unfair Competition Law (UCL) allegations. (Memo. ISO Motion at 7–10.) They first argue that Plaintiff's UCL claims must fail because they do not allege unfair, unlawful, or fraudulent conduct by the Moving Defendants. (*Id.* at 7–8.) Their second argument is that Plaintiff has not alleged an injury-in-fact sufficient to confer standing under the UCL. (*Id.* at 9–10.) Because neither of these arguments is correct, the motion is **DENIED** as to the UCL claims.

"California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code §§ 17200, *et seq.*). To state a claim, the plaintiff must allege that the defendant's acts were unlawful, unfair or fraudulent. *Id.* If a plaintiff has identified a violation of law, whether state or federal, he has almost certainly stated a basis upon which an unfair competition claim can be based. *Cal-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999). Where a plaintiff wishes to allege a violation based on "unfair" conduct, he must identify conduct that "violates or is comparable to a violation of—and is thus 'tethered' to—an underlying law." (Prior Order at 11.) Further, in order to have standing to sue under the UCL a Plaintiff must: (1) "ha[ve] suffered injury in fact," and (2) "ha[ve] lost money or property" (3) "as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204.

A.     The SAC Alleges Unfair, Unlawful, or Fraudulent Conduct

The SAC alleges that the Moving Defendants violated the UCL by violating Plaintiff's "right of privacy in the United States Constitution, Article I of the California Constitution and several federal and state statutes, including the Graham-Leach-Bliley Act (15 U.S.C. § 6801, *et seq.*) and the California Financial Information Privacy Act (Cal. Fin. C. § 4050, *et seq.*)." (SAC ¶ 63.)

Moving Defendants argue that Plaintiff "has again failed in the SAC to allege any unfair actions which are 'tethered to any constitutional, statutory or regulatory provision.'" (Memo. ISO Motion at 7.) However, this is simply incorrect. For a violation to be "tethered to" an underlying law, it must adequately allege violations of specific laws or conduct comparable to an actual violation.

1  (Prior Order at 12.) In this case, the SAC specifically invokes three separate bases for Plaintiff's UCL
2  claim: violation of Plaintiff's privacy rights, violations of the Graham-Leach-Bliley Act (GLBA), and
3  violations of the California Financial Information Privacy Act (CFIPA). (SAC ¶ 63.)

4         To begin with, regardless of whether Plaintiff has stated a valid UCL claim based on the
5  GLBA or CFIPA, this claim survives based on his invasion of privacy allegation. Plaintiff has
6  adequately pleaded at least one invasion of privacy theory in the SAC. (*See* Part I, *supra*.) This
7  "unlawful" conduct is sufficient to support Plaintiff's UCL claim. Moving Defendants' argument on
8  this point appears to depend entirely on their belief that the freestanding invasion of privacy claim is
9  deficient. (*See* Memo. ISO Motion at 7–8; Reply at 6 ("To the extent Plaintiff attempts to predicate
10 his unfair competition claim on an alleged invasion of privacy, such a claim fails because the
11 underlying invasion of privacy claim fails.").) This argument, however, fails in light of the Court's
12 conclusion above.

13        Moving Defendants next argue that the allegations regarding the CFIPA and GLBA are also
14 inadequate. First, they argue that these allegations "fail since both statutes address conduct by a
15 financial institution. [Plaintiff] has not alleged that either CIT or DFS comprise financial institutions
16 for purposes of attaching liability under these statutes." (Memo. ISO Motion at 8; Reply at 3.) Both
17 the GLBA and CFIPA apply to "financial institutions." *See* 15 U.S.C. § 6802(a); Cal. Fin. Code §
18 4052.5. Both statutes define "financial institution" as "any institution the business of which is
19 engaging in financial activities as described in" 12 U.S.C. § 1843(k). 15 U.S.C. § 6809(3)(A); Cal.
20 Fin. Code § 4052(c). That provision sets forth a number of activities which are financial in nature,
21 including, *inter alia*, "[l]ending, exchanging, transferring, investing for others, or safeguarding money
22 or securities." 12 U.S.C. § 1843(k)(4)(A).

23        However, the Court is not persuaded that the failure to explicitly allege that Defendants are
24 "financial institutions" is an adequate reason to dismiss this claim. The SAC states the CFIPA and
25 GLIBA "prevent financial institutions, (sic) from selling their customer's (sic) private financial
26 information to third parties for an improper purpose and without proper disclosure to, and consent
27 from, the customer." (SAC ¶ 63.) It would take an extremely wooden view of this statement not to
28 draw the obvious contextual allegation that the Moving Defendants are "financial institutions." The
Court will not adopt so narrow a view in light of the obvious and reasonable inferences to be drawn

1  from Plaintiff's allegations.

2  Defendants further argue that this claim fails because "it is unclear from the face of the SAC that either is in the business of lending money." (Reply at 3.)  The Court is also unmoved by this argument because one of the central allegations of the SAC is that the Moving Defendants loaned money to Plaintiff and failed to properly credit him when he repaid that loan.  (*See, e.g.*, SAC ¶¶ 23–25.)  Again, the Court will not adopt a view of the SAC which would require an explicit, rather than obviously implied, allegation that Defendants' business involved lending money.

The Moving Defendants make a final argument that Plaintiff's GLBA and CFIPA claims are preempted by federal law.  (Reply at 6.)

> Federal law may pre-empt state law in three different ways. First, Congress may preempt state law by so stating in express terms.  Second, preemption may be inferred when federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  In such cases of field preemption, the "mere volume and complexity" of federal regulations demonstrate an implicit congressional intent to displace all state law.  Third, preemption may be implied when state law actually conflicts with federal law.  Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Bank of Am. v. City and County of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002).  Moving Defendants do not explain the specific source of preemption in this case, but simply cite to *Vega v. JPMorgan Chase Bank*, — F. Supp. 2d —, 2009 WL 2731039 (E.D. Cal. Aug. 26, 2009).  However, that decision provides Moving Defendants' argument no support.

*Vega* speaks about preemption in very broad and conclusory terms.  However, the court found that the plaintiff's claims were preempted under the Home Owners' Loan Act of 1933 (HOLA).  *Id.*, at \*10; *see also Silvas v. E\*Trade Mrtgage Corp.*, 514 F.3d 1001, 1004–06 (9th Cir. 2008).  By occupying the relevant field, HOLA preempts state laws that interfere with, directly or in particular applications, certain types of lending matters.  *Silvas*, 514 F.3d at 1005.  Notably, this preemption only relates to "lending regulation for *federal savings associations*." 12 C.F.R. § 560.2(a) (emphasis added). Nothing in the SAC indicates that Moving Defendants are federal savings associations and therefore HOLA preemption is irrelevant.  *See* 12 U.S.C. § 1462(5) ("The term 'Federal savings association' means a Federal savings association or a Federal savings bank chartered under section 1464 of this title.").  Given Defendants' complete failure to persuasively explain why these UCL

1 claims are preempted, the Court rejects this argument.

2 In sum, none of the Moving Defendants' arguments demonstrate that the SAC fails to state a
3 UCL claim. Plaintiff has adequately pled unfair competition based on violations of GLBA and CFIPA
4 and invasion of privacy.

5       B.     Plaintiff has Alleged an Injury-In-Fact and has Standing to Sue

6 The Defendants further assert that Plaintiff has not alleged that he has suffered any injury in
7 fact or causation and therefore does not have standing to sue under California's UCL. (Memo. ISO
8 Motion at 9–10.) The Court disagrees.

9 As noted above, the UCL presents three requirements for standing: (1) injury in fact, (2) loss
10 of money or property and (3) causation. Cal. Bus. & Prof. Code § 17204. California courts have
11 noted that the "injury in fact" requirement for standing is the same as the "injury in fact" required for
12 standing under the United States Constitution. *Troyk v. Farmers Group, Inc.*, 90 Cal. Rptr. 3d 589,
13 623 (Cal. Ct. App. 2009). Thus, for Plaintiff "to have standing to prosecute the UCL claim in this
14 case, he must have personally suffered an invasion or injury to a legally protected interest." *Id.* "An
15 injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element
16 for standing." *Id.*

17 The SAC states that the complained-of events "caused Plaintiff to incur legal expenses in
18 defense of" the collection action filed in state court. (SAC ¶ 39.) "[O]ut-of-pocket expenses or *money*
19 *spent* [is] a financial harm that constitute[s an] 'injury in fact'" for purposes of standing under the
20 UCL and in federal court. *Troyk*, 90 Cal. Rptr. 3d at 623–24 (emphasis in original). Since Plaintiff's
21 legal defense fees are "out-of-pocket expenses," the Court concludes that he has adequately alleged
22 an injury in fact.

23 This same allegation also satisfies the second UCL standing requirement, loss of money or
24 property. Here, as was the case in *Troyk*, Plaintiff's "alleged 'injury in fact' and 'lost money' are one
25 and the same." *Id.* at 625.

26 Finally, Plaintiff has also adequately alleged causation. For purposes of UCL standing,
27 California courts have indicated that there needs to "be a causal connection between the harm suffered
28 and the unlawful business activity. That causal connection is broken when a complaining party would
suffer the same harm whether or not a defendant complied with the law." *Id.* (quoting *Daro v.*

*Superior Court*, 61 Cal. Rptr. 3d 716, 729 (Cal. Ct. App. 2007)).  The *Troyk* court further indicated where a defendant's conduct is "a substantial factor" in the harm, the causation requirement would be satisfied.  *Id.* at 626 n.33 (further noting that "'[a] substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm'").  Here, the chain of causation in the SAC leads directly to the Moving Defendants.  But for the sale of the nonexistent debt in violation of, *inter alia*, the GLBA, Plaintiff would not have been wrongfully sued and would not have had to incur the legal fees that constitute the injury in fact.

In sum, the motion to dismiss Plaintiff's UCL claims must be **DENIED**.  The SAC's allegations are adequate to state a claim against the Moving Defendants and set forth facts satsfying all three UCL standing requirements.

## CONCLUSION

For the reasons stated, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** to the extent that Plaintiff alleges invasion of privacy claims against the Moving Defendants based on information placed in his credit report.  The remainder of the motion is **DENIED**.

IT IS SO ORDERED.

DATED: November 23, 2009

Honorable Janis L. Sammartino
United States District Judge