DANIEL P. MURPHY (CA 153011)
dmurphy245@yahoo.com
4691 Torrey Circle, A306
San Diego, California 92130
Telephone: (619) 379-2460

JOHNSON BOTTINI, LLP
Francis A. Bottini, Jr. (CA 175783)
frankb@johnsonbottini.com
Brett M. Weaver (CA 204715)
brett@johnsonbottini.com
501 West Broadway, Suite 1720
San Diego, California 92101
Telephone: (619) 230-0063
Facsimile: (619) 238-0622

Attorneys for Plaintiff DAVID TOURGEMAN

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOURGEMAN, on Behalf of Himself and All Others Similarly Situated, | CASE NO.: 08-CV-1392-JLS(NLS) |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS** |
| vs. | |
| COLLINS FINANCIAL SERVICES, INC., a Texas corporation; NELSON & KENNARD, a California partnership; DELL FINANCIAL SERVICES, L.P., a Delaware limited partnership; CIT FINANCIAL USA, INC., a Delaware corporation; and DOES 1 through 10, inclusive, | Date: April 5, 2010 Time: 9:30 a.m. Courtroom: 1101 Judge: Hon. Nita L. Stormes |
| Defendants. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   SUMMARY OF FACTS AND PROCEDURAL HISTORY ..............................2

      A.    Background Facts ......................................................................................2

      B.    The Discovery Dispute .............................................................................3

III.  LEGAL ARGUMENT ..........................................................................................4

      A.    Standard For Motion To Compel.............................................................4

      B.    CFNK's Intentional Delays Have Prejudiced Tourgeman And Hindered The Discovery Process....................................................................................5

      C.    Collins Improperly Attempts To Shield Itself From Discovery By Hiding Behind Its Subsidiary, Paragon Way .....................................................7

      D.    CFNK's "Boilerplate" Objections Are Without Merit ............................8

      E.    CFNK Improperly Attempt To Narrow The Scope Of The Discovery Requests...................................................................................................11

      F.    Tourgeman's Discovery Requests Are Relevant And Reasonably Calculated To Lead To The Discovery Of Admissible Evidence ............................15

      G.    CFNK's Citation To Non Business Documents Under FRCP 33(d) Is Improper ..................................................................................................17

      H.    The Court Should Sanction CFNK For the Fees And Costs Tourgeman Incurred In Bringing This Motion ........................................................18

IV.   CONCLUSION ...................................................................................................19

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS

# TABLE OF AUTHORITIES

**CASES**

*Bible v. Rio Props., Inc.*, 246 F.R.D. 614 (C.D. Cal. 2007) ................................................ 11

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) ............................................... 5

*Bryant v. Ochoa*, 2009 U.S. Dist. LEXIS 42339 (S.D. Cal. 2009) ................................. 4, 5

*E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 2006 U.S. Dist. LEXIS 42069 (E.D. Cal. 2006) .......................................................................................................................... 8, 9

*Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir. 1998) ................................................. 4

*Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 17190 (C.D. Cal. 2005) ........................ 7

*Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652 (C.D. Cal. 2005) ................................... 9

*Mancini v. Ins. Corp.*, 2009 U.S. Dist. LEXIS 51321 (S.D. Cal. 2009) .............................. 10, 11, 17

*PostX Corp. v. Secure Data Motion*, 2004 U.S. Dist. LEXIS 24869 (N.D. Cal. 2004) .................... 10

*Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, 2007 U.S. Dist. LEXIS 31688 (N.D. Cal. 2007) ......................................................................................................... 10

*WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481 (S.D. Cal. 2007) .................. 5

**RULES**

Fed. R. Civ. P. 26 ............................................................................................................. 4

Fed. R. Civ. P. 33 ......................................................................................................... 9, 17

Fed. R. Civ. P. 37 .................................................................................................. 4, 8, 14, 18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS

I.    **INTRODUCTION**

Plaintiff David Tourgeman ("Tourgeman") has struggled at every juncture in this case to access even the most basic discovery from Defendants Nelson & Kennard ("Nelson") and Collins Financial ("Collins"), collectively "CFNK."  Tourgeman first served CFNK with discovery requests on April 2, 2009. From the beginning, CFNK's discovery responses were incomplete, frivolous, and contained meritless boilerplate objections.   For instance, when Tourgeman asked Nelson in Interrogatory No. **4** to state where Nelson was registered or licensed to do business, Nelson flippantly responded "It is licensed to do business where necessary." CFNK's incomplete responses were blatantly designed to prejudice Tourgeman and prevent this case from moving forward.

It is now nearly ten months later and, despite Tourgeman's good-faith attempts to meet and confer, CFNK has not provided meaningful discovery responses to Tourgeman's production requests and interrogatories.   While CFNK has now provided some supplemental responses after seven months of meet and confer discussions, the responses were incomplete, contained the same boilerplate objections, and were still deficient in material ways.  This Court's intervention is now sorely needed.

CFNK's intentional delays over the last seven months deprived Tourgeman of the opportunity to conduct meaningful depositions.  Since CFNK's initial discovery responses were grossly incomplete and CFNK failed to provide supplemental responses, Tourgeman was forced to cancel several depositions.  The January 21, 2010 deposition of Patricia Baxter, Collins's Senior Vice President and General Counsel, was taken off calendar because Collins failed to provide timely discovery.  The January 29, 2010 deposition of Jonathon Ayers, an attorney employed at Nelson, also was taken off the calendar because Nelson failed to provide timely discovery.

Additionally, Collins rejected Tourgeman's requests for documents and special interrogatories, frivolously denying that it is a debt collector. The truth is that Collins filed a debt collection lawsuit against Tourgeman in Collins's name, files lawsuits against other debtors in its name, and represents itself to the public as a debt collector. Even Nelson recognizes that Collins is a debt collector in Nelson's discovery responses.  Collins attempts to shield itself from discovery by

-1-

claiming that its subsidiary, Paragon Way, is the debt-collection entity responsible for pursuing Tourgeman and other debtors. This is improper for three reasons. First, Collins-not Paragon Way-sued Tourgeman to collect an alleged debt. Second, case law explicitly holds that a corporation must produce documents and provide information from its subsidiaries. Third, Tourgeman specifically defined Collins in the discovery requests to include *"anyone else acting on Collins Financial Services, Inc.'s behalf."* Thus, discovery requests properly accounted for Collins's subsidiary, Paragon Way, and Collins should have provided proper responses and responsive documents.

## II.     SUMMARY OF FACTS AND PROCEDURAL HISTORY
### A.     Background Facts

In November 2001, Tourgeman bought a computer from Dell, Inc. for his personal use. ¶ 22.[1] He financed the purchase through Dell and CIT Financial USA, Inc. ¶ 23. Since Tourgeman lives in Mexico, he had the computer shipped to his parents' residence in Chula Vista, California. ¶ 22. Tourgeman made his payments by phone, wire, bank transfer, Western Union, or a similar international electronic payment company. ¶ 24. On a couple of occasions when he was visiting his parents, Tourgeman gave his mother, Rebecca, cash and asked her to write Dell a check on his behalf. (Declaration of Brett Weaver at ¶1 "Weaver Dec.", Exhibit "A;" Tourgeman's Deposition Transcript at p.34:13).

By August 2003, Tourgeman had paid his debt in full. ¶ 25. Dell, however, did not have an efficient system set up to properly account for international payments and incorrectly continued to state that Tourgeman owed money for his computer. ¶ 26. Dell and CIT eventually sold the alleged debt to Defendant Collins Financial Services, Inc. ¶ 27.

Nearly seven years after Tourgeman purchased the computer, Collins hired a law firm, Defendant Nelson & Kennard, to file a frivolous collections lawsuit against Tourgeman in San Diego Superior Court. ¶ 30. Nelson served the state-court summons on Tourgeman's parents, Rebecca and Cesar, at their new residence in Chula Vista. (Exhibit "A," Tourgeman's Deposition

---

[1] All "¶" or "¶¶" references are to Tourgeman's Second Amended Complaint ("Complaint") unless otherwise noted.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS

1   Transcript at p.91:18).   Not understanding the summons, and fearing that their son was in trouble

2   with the law, Rebecca and Cesar frantically tried to track down Tourgeman in Mexico where he

3   resides. (Exhibit "A," Tourgeman's Deposition Transcript at p.92:03).   When Tourgeman finally

4   learned of the lawsuit, he hired a lawyer to dispute the allegations. (Exhibit "A," Tourgeman's

5   Deposition Transcript at p.39:25).

6        Tourgeman's lawyer informed Nelson that its lawsuit lacked merit and that Tourgeman had

7   not been served with the summons.   Even after Nelson was advised that the summons and

8   complaint had not been served on Tourgeman, Nelson continued take action to seek a default

9   judgment against Tourgeman. ¶ 31.

10   **B.   The Discovery Dispute**

11        Tourgeman first served CFNK with discovery requests on April 2, 2009. (Weaver Dec. ¶2,

12   Exhibit "B").   Nearly one month later, on May 5, 2009, CFNK responded with insufficient answers

13   and boilerplate objections, and refused to produce responsive documents to a majority of the

14   requests. (Weaver Dec. ¶3, Exhibit "C").   To resolve these issues, on June 24, 2009, Tourgeman

15   sent CFNK a letter for the purpose of meeting and conferring regarding the inadequacy of their

16   responses.   (Weaver Dec. ¶4, Exhibit "D").   The letter explained, in detail, the reasons why

17   CFNK's responses were deficient.   CFNK failed to respond to that letter and ignored Tourgeman's

18   attempts to meet and confer.   (Weaver Dec. ¶5).   Instead, CFNK insisted that Tourgeman's

19   discovery requests were premature until the court ruled on their motions to dismiss.   (Weaver Dec.

20   ¶5).   After the court ruled in Tourgeman's favor, CFNK then insisted discovery was premature

21   until the court ruled on a not yet filed motion for summary judgment, which motion the court

22   denied. (Weaver Dec. ¶5).   Tourgeman sent CFNK a letter on December 4, 2009, reiterating his

23   request for supplemental responses. (Weaver Dec. ¶6, Exhibit "E").   CFNK responded about two

24   weeks later with many of the same responses and objections.   (Weaver Dec. ¶7, Exhibit "F").

25   Tourgeman sent a third meet and confer letter on December 29, 2009, outlining in detail the

26   deficiencies in CFNK's continued objections.   (Weaver Dec. ¶8, Exhibit "G").   The parties then

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS

conducted a nearly two hour telephone conversation on January 7, 2010, in a continued effort to address CFNK's deficient responses and objections to Tourgeman's discovery requests. (Weaver Dec. ¶9). While CFNK agreed to produce supplemental responses to a limited number of discovery requests, the parties were largely unable to resolve the major differences. The next day, Tourgeman sent CFNK a fourth meet and confer letter, memorializing the previous day's discussion and requesting supplemental responses. (Weaver Dec. ¶10, Exhibit "H"). CFNK responded one week later with a cryptic letter, denying many of the agreements reached during the January 7, 2010 telephone conversation. (Weaver Dec. ¶11, Exhibit "I"). Finally, on January 26, 2010, seven months after Tourgeman's first meet and confer letter, CFNK provided a handful of supplemental responses.[2] (Weaver Dec. ¶12, Exhibit "J"). These responses, however, contained the same meritless "boilerplate" objections and were still deficient in material ways.

In light of his inability to resolve this discovery dispute through the meet and confer process, Tourgeman has no option other than to file this motion to compel.[3]

## III.   LEGAL ARGUMENT

### A.   Standard For Motion To Compel

The Federal Rules of Civil Procedure allow for broad discovery in civil actions. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle,* 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing

---

[2] Nelson provided supplemental responses to Request Nos. **3-6**, **27**, and **29**, and to Interrogatory Nos. **1**, **2**, **4**, **5**, **7**, and **16**. Collins provided supplemental responses to Request Nos. **3**, **4**, **14**, **21** and **27**, and to Interrogatory Nos. **3**, **7**, **11**, **13**, **15**, **17**, and **20**. These will be the operative responses for purposes of this motion.

[3] As a general matter, this motion identifies the deficiencies in CFNK's discovery responses. For a detailed analysis of each of CFNK's deficient responses, please see the Separate Statement of Material Facts in support of Motion to Compel.

- 4 -

discovery has the burden of showing that discovery should be prohibited, and the burden of. . . clarifying, explaining or supporting its objections." *Bryant v. Ochoa,* 2009 U.S. Dist. LEXIS 42339, *3 (S.D. Cal. 2009). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975); *WebSideStory, Inc. v. NetRatings, Inc.,* 2007 U.S. Dist. LEXIS 20481, *5-6 (S.D. Cal. 2007).

Federal Rule of Civil Procedure 37(a) authorizes this court to require CFNK to produce information or materials discoverable under Rule 26(b)(1).

**B.   CFNK's Intentional Delays Have Prejudiced Tourgeman And Hindered The Discovery Process**

**1.   CFNK has persistently evaded Tourgeman's attempts to meet and confer for the last seven months**

CFNK has repeatedly failed to respond to Tourgeman's meet and confer attempts. Tourgeman first served CFNK with discovery requests on April 2, 2009. (Weaver Dec. ¶2). CFNK responded with insufficient answers and boilerplate objections, and refused to produce responsive documents to almost all the requests. Tourgeman sent a meet and confer letter on June 24, 2009, which Defendants ignored. (Weaver Dec. ¶5). Tourgeman then sent a second meet and confer letter on December 4, 2009, which CFNK ignored again. (Weaver Dec. ¶6). After two additional follow-up emails to CFNK's counsel, Tourgeman finally received CFNK's first written response regarding discovery requests. (Weaver Dec. ¶17).

**2.   CFNK routinely concocted hollow arguments to purposefully avoid Tourgeman's discovery requests**

CFNK has continuously concocted hollow arguments as to why Tourgeman's discovery requests were premature. First, CFNK claimed that Tourgeman was not entitled to any discovery until the court ruled on their motions to dismiss. After the court ruled in Tourgeman's favor, CFNK manufactured a class certification argument, refusing to answer questions because they purportedly involved "class issues" that should wait until the class was certified. Then, as a last resort, CFNK

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS

1  argued that discovery was premature until the court ruled on a not yet filed motion for summary

2  judgment.  The Court denied this motion on November 24, 2009.  CFNK has run out of excuses.

### 3. Tourgeman was forced to cancel several depositions because CFNK failed to provide supplemental responses and responsive documents

5  CFNK intentionally delayed discovery and deprived Tourgeman of the opportunity to

6  conduct meaningful depositions.  Tourgeman originally noticed the deposition of Patricia Baxter,

7  Collins's Senior Vice President and General Counsel, for Thursday, January 21, 2010, in Austin,

8  Texas.  CFNK didn't provide relevant documents related to this deposition until late in the afternoon

9  on Thursday, January 14, 2010.  Because that left Tourgeman's counsel with just one business day to

10  prepare because Monday, January 18, 2010 was a holiday, Plaintiff's counsel was flying to Austin

11  on Tuesday, January 19, 2010 and the deposition of DFS's employee was scheduled for Wednesday

12  January, 20, 2010. Because Collins failed to provide supplemental responses and responsive

13  documents, Tourgeman was forced to cancel the deposition.  (Weaver Dec. ¶16).  The January 29,

14  2010 deposition of Jonathon Ayers, an attorney employed at Nelson, was also taken off the calendar

15  because Nelson failed to provide verified supplemental discovery responses.  (Weaver Dec. ¶16).  If

16  CFNK had provided complete discovery responses from the outset, or provided the requested

17  supplemental responses in a timely manner, Tourgeman would have been able to conduct the

18  scheduled depositions.

### 4. CFNK took seven months to provide only a handful of supplemental responses, which contained similar boilerplate objections and deficient answers

21  CFNK has had over seven months since Tourgeman initiated the meet and confer process on

22  June 24, 2009, to provide supplemental responses.  CFNK finally agreed to provide supplemental

23  responses in their meet and confer letter dated December 17, 2009, one month before depositions

24  were scheduled to begin. (Weaver Dec. ¶7).  CFNK dragged their feet for an additional five weeks

25  before providing only a handful of supplemental responses on January 26, 2010.   In total,

26  Tourgeman sent four meet and confer letters, two emails, and participated in a two hour telephonic

27

28
- 6 -

discussion solely for the purpose of requesting supplemental responses. And those supplemental responses were incomplete, contained the same boilerplate objections, and were deficient in material ways. CFNK had no intention of providing meaningful discovery responses.

### C.   Collins Improperly Attempts To Shield Itself From Discovery By Hiding Behind Its Subsidiary, Paragon Way

Collins sued Tourgeman in San Diego Superior Court under its own name to collect on an alleged debt. In fact, Collins has filed more than 300 cases under its own name during the class period in the San Diego Superior Court alone. (Weaver Dec. ¶14). Collins retained Nelson to bring suit against Tourgeman for an alleged debt. Collins also retains Nelson to bring suits against other alleged debtors. Based on this information, Tourgeman propounded document requests and special interrogatories on Collins. But in its discovery responses, Collins engages in the fiction that it is not a debt collector. (*See* Response to Request No. **9**, Exhibit "C"). In fact, all of Collins's discovery responses contain similarly misleading answers.

Based on recent discussions with Collins's counsel, Tourgeman has learned that Collins's subsidiary, Paragon Way, collects debts on its behalf. (Weaver Dec. ¶15). While Tourgeman does not dispute that Paragon Way is the entity tasked with collecting debts on Collins's behalf, Collins cannot use its subsidiary to shield itself from discovery. Collins's responses are improper for two reasons.

First, case law directly refutes Collins's position. "The discovery rules require that a corporation furnish such information as is available from the corporation itself or from sources under its control. If the corporation can obtain the information from sources under its control, it may not avoid answering by alleging ignorance." *Goodrich Corp. v. Emhart Indus.,* 2005 U.S. Dist. LEXIS 17190, *9 (C.D. Cal. 2005). Here, Paragon Way is a subsidiary directly under Collins's control and thus Collins has no basis for withholding information related to Paragon Way.[4]

---

[4] During the parties' telephonic meet and confer discussion, Collins agreed to provide supplemental responses related to Paragon Way. (Weaver Dec. ¶15). Nearly three weeks after that discussion, Collins referenced Paragon Way in only two supplemental responses - Special Interrogatory Nos. **13** and **20**. Thus, Collins continues to obstruct the discovery process by hiding behind Paragon Way.

- 7 -

Second, Tourgeman specifically defined Collins in the discovery requests to include "anyone else acting on Collins Financial Services, Inc.'s behalf." Because Paragon Way was acting to collect debts on Collins's behalf and is Collins's subsidiary, the document requests and interrogatories accounted for Paragon Way. Additionally, Collins, as the principal corporation, has control and access to Paragon Way's documents. For instance, Collins agreed in its supplemental response to Interrogatory Nos. **13** and **20** to produce certain documents from Paragon Way. This confirms Collins has access to documents and information from Paragon Way (as any parent corporation would).

Nelson---Collins's own attorneys in the collection matter---even acknowledges that Collins is a debt collector. According to supplemental response to Interrogatory No. **7**, Nelson sends letters to alleged debtors communicating that ***Collins*** may recover its attorney's fees and court costs if Nelson files suit against the debtor. It is clear CFNK is representing to the public that Collins is a debt collector. Further, CFNK retained the same counsel, Simmonds & Narita, to defend this case. Narita's position that Collins is not a debt collector is belied by Nelson's supplemental response to Interrogatory No. **7**. Thus, Collins's discovery responses and supplemental responses are deficient.

Accordingly, Tourgeman requests that this Court order Collins to provide supplemental responses to Request Nos. **1-16** and **19-28** and produce any documents improperly withheld from production. Tourgeman also requests that this Court order Collins to provide supplemental responses to Interrogatory Nos. **1**, **3-10**, **12**, **14**, and **16-19**.

**D.    CFNK's "Boilerplate" Objections Are Without Merit**

For document requests, Federal Rule of Civil Procedure 34(b)(2)(C) requires that "[a]n objection to part of a request must specify the part and permit inspection of the rest."; *see also E. & J. Gallo Winery v. Cantine Rallo, S.p.A.,* 2006 U.S. Dist. LEXIS 42069, *3-4 (E.D. Cal. 2006) ("If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts. The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any

- 8 -

1  failure to permit inspection as requested."). In *E. & J. Gallo Winery*, the court ordered the defendant

2  to provide supplemental responses because the defendant's original responses contained imprecise,

3  boilerplate objections:

> Defendant's responses do not allow for meaningful evaluation.
> Plaintiff and the Court are unable to determine, with certainty, the
> requests for which Defendant is producing documents, the requests for
> which Defendant is withholding documents and on what basis, and the
> requests for which it has no responsive documents. Defendant cites
> boilerplate general objections, and does not explain why the objection
> applies to the response or whether documents were withheld pursuant
> to the stated objections.

*Id.* at *4-5.

Federal Rule of Civil Procedure 33 governs the use of interrogatories during discovery. Rule

33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered

separately and fully in writing under oath." Further, all grounds for objection to an interrogatory

must be stated "with specificity." Fed. R. Civ. P. 33(b)(4).

### 1.   CFNK's objections that the discovery requests are overbroad, unduly burdensome, and irrelevant are unfounded

Nelson objects to Request Nos. **3**, **5-7**, **10**, **12-15**, **17**, **19-21**, **23**, **25**, **26**, and **29**, and

Interrogatory Nos. **1**, **2**, **4**,[5] **5**, **7**, **10**, **11**, **14**, and **16** on the basis that they are "overbroad, unduly

burdensome and oppressive" and "not relevant to the subject matter of this lawsuit, nor reasonably

calculated to lead to the discovery of admissible evidence." But Nelson fails to provide any

meaningful explanation for these objections. *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D.

652, 655-56 (C.D. Cal. 2005) ("The party who resists discovery has the burden to show discovery

should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.").

Moreover, because Nelson's responses are so broad and unspecific, it is impossible to tell whether

---

[5] Nelson objected to Interrogatory No. **4** in its supplemental response only on the basis that the information sought "is not relevant to the subject matter of this lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence."

documents are being withheld on the basis of the stated objections, and/or whether responsive documents even exist.

Similarly, Collins objects to Request Nos. **3**, **4**, **11**, **25**, and **27**, and to Interrogatory Nos. **4**, **5**, and **15**, on the basis that the requests are "overbroad, unduly burdensome and oppressive" and "not relevant to the subject matter of this lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence." Under the authorities listed above and because Collins has offered little to no meaningful facts to support the stated objections, the responses are insufficient under the Federal Rules of Civil Procedure.

### 2. CFNK fails to demonstrate how the discovery requests are vague and ambiguous

Nelson objects to Request Nos. **3**, **5**, **8**, **9**, **11**, **15**, **23**, **25**, and **28**, and to Interrogatory Nos. **5**, **7**, **10**, **13**, **18**, and **19** on the basis that the requests are "vague and ambiguous." Nelson, however, has failed to exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in discovery. *Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.,* 2007 U.S. Dist. LEXIS 31688 (N.D. Cal. 2007). Further, Nelson offers little to no meaningful facts to support the stated objections. Thus, this boilerplate objection cannot be sustained.

Similarly, Collins objects to Request Nos. **3**, **4**, **8**, **10**, **11**, **14**, and **21**, and to Interrogatory Nos. **4** and **5** on the grounds that the requests are "vague and ambiguous." Under the authorities listed above and because Collins has offered little to no meaningful facts to support the stated objections, the responses are insufficient under the Federal Rules of Civil Procedure.

### 3. CFNK's responses contain unsupported claims of attorney-client privilege and attorney work product protection

Federal Rule of Civil Procedure 26(b)(5) provides that a party claiming a privilege must "describe the nature of the documents, communications, or things not produced or disclosed[.]"; *see also PostX Corp. v. Secure Data Motion,* 2004 U.S. Dist. LEXIS 24869, *4 (N.D. Cal. 2004). "A privilege log should contain the following information: (1) the identity and position of its author; (2)

- 10 -

the identity and position of the recipient(s); (3) the date it was prepared or written; (4) the title and description of the document; (5) the subject matter addressed; (6) the purposes for which it was prepared or communicated; (7) the document's present location; and (8) the specific privilege or other reason it is being withheld." *Mancini v. Ins. Corp.*, 2009 U.S. Dist. LEXIS 51321, *10 (S.D. Cal. 2009). When asserting the attorney-client privilege, "[t]he party asserting the privilege bears the initial burden of demonstrating that the communication falls within the privilege." *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 620 (C.D. Cal. 2007).

Here, Nelson asserts the attorney-client privilege and attorney work product protection to Request Nos. **1-3, 5,** and **6**, and to Interrogatory Nos. **5, 7, 10, 11,** and **14**. The objection is stated simply as "seek[ing] information subject to the attorney-client privilege or the attorney work product doctrine." (*See e.g.*, Response to Interrogatory No. **10**, Exhibit "C"). Such a blanket assertion of the attorney-client privilege or work product doctrine is insufficient to enable the propounding party to assess the applicability of the privilege or protection to the specific facts of the interrogatory in question. Further, Nelson failed to produce a privilege log containing any of the above-described information as required by Federal Rule of Civil Procedure 26(b)(5). (Weaver Dec. ¶13). Consequently, the privilege claims cannot be properly evaluated.

Similarly, Collins asserts the attorney-client privilege and work product protection to Request Nos. **1, 3,** and **4**, and to Interrogatory Nos. **4** and **5** without specifying the nature of the communications. As explained above, however, documents alleged to be protected by the attorney-client privilege and work product doctrine must be accounted for in a privilege log. Collins provided no such privilege log. (Weaver Dec. ¶13). Consequently, Collins's objections cannot be sustained.

**E.    CFNK Improperly Attempts To Narrow The Scope Of The Discovery Requests**

       **1.    This is a class action lawsuit challenging Nelson's debt collection practices**

Nelson improperly narrows the scope of Request Nos. **7** and **15** and attempts to limit production to documents related only to Tourgeman. The Complaint, however, does not limit Nelson's alleged improper debt collection practices to debt collected only on Collins's behalf. Indeed, the Complaint includes class allegations and a class comprised of:

- 11 -

1
2
3

> All consumers residing in the United States and abroad who, during the period within one year of the date of the filing of the complaint, were contacted or sued in the United States by either Collins Financial or Nelson & Kennard in an effort to collect an alleged debt.

Further, the Complaint contains numerous allegations that Nelson improperly initiates collections and unlawfully files lawsuits against debtors. In particular, the Complaint explicitly alleges that Nelson "fails to take the time and effort to verify the alleged debts or ensure that the lawsuits it files are legitimate and accurate." ¶32. The Complaint also specifies that Nelson "attempts to quickly obtain default judgments against consumers without having original or copies of original agreements to prove the existence, terms, and amount of the debt, and in many cases without having proper information regarding the location of the debtor, thus obtaining default judgments without effectuating proper service." ¶32. The Complaint also notes that "Nelson & Kennard rely on affidavits signed by individuals who the collection law firms know have no knowledge of the underlying facts and file verified complaints in which they attest to the truthfulness and accuracy of the information regarding the alleged debt." ¶35. In other words, regardless of whether the alleged creditor is Collins or the alleged debtor is Tourgeman, Nelson does not verify information before it initiates collections and files lawsuits. As such, Nelson's entire debt collection practices are at issue.

Part of Nelson's improper practices involves its communications with alleged debtors. Therefore, all form letters, form complaints, and other form documents are relevant to showing how Nelson conducts its debt collection practices. Similarly, Nelson's policies and guidelines for collecting debt further illustrate Nelson's debt collection practices. Because this is a class action lawsuit challenging Nelson's business practices, Nelson's offer to produce document related only to Tourgeman and his account is insufficient. Thus, Requests Nos. **7** and **15** are relevant and cannot be narrowed.

Similarly, Nelson's supplemental response to Interrogatory No. **7** attempts to limit the response to Collins. But, as stated above, this is a class action lawsuit challenging Nelson's debt

- 12 -

1  collection practices as a whole. Therefore, Nelson's procedures and policies for filing a debt-related
2  lawsuit on behalf of all clients, not just Collins, are relevant here.

3       **2.     This is a class action lawsuit challenging Collins's debt collection**
4            **practices**

5       Request No. **27** seeks all documents that relate to the contractual relationship between
6  Collins and Dell. The documents sought reveal how debt collection activities were conducted and
7  how Collins was incentivized to pursue certain alleged debtors. To the extent this request seeks
8  confidential information, Tourgeman has offered to sign a protective order. Collins ignored this
9  offer. (Weaver Dec. ¶19).

10      Now, Collins's supplemental response to Request No. **27** offers to produce a copy of the
11 purchase and sale agreement relating to Tourgeman's account. But this is inadequate and
12 improperly restricts the scope of the request. Indeed, the Complaint includes class allegations and a
13 class comprised of:

14            All consumers residing in the United States and abroad who, during the
15            period within one year of the date of the filing of the complaint, were
              contacted or sued in the United States by either Collins Financial or
16            Nelson & Kennard in an effort to collect an alleged debt.

17      Further, the Complaint alleges that Collins "is a debt collector" that "routinely attempts to
18 collect consumer debts without spending the requisite time to verify the debts and ensure the
19 accuracy of information pertaining to the alleged debts." ¶33. The Complaint also alleges that
20 Collins is not "meaningfully engaged" in the collection of debts. ¶30. Collins's contractual
21 arrangement with Dell evidences Collins's debt collection practices. Since Collins's debt collection
22 practices are at issue, this request is relevant and reasonably calculated to lead to the discovery of
23 admissible evidence.

24      Collins also attempts to limit Interrogatory No. **7** to the demand made in the collection
25 complaint filed against Tourgeman. This response improperly narrows the scope of the request and
26 misconstrues the allegations in the Complaint. The Complaint contains well-pleaded allegations that
27 Collins engages in improper debt collection practices. Thus, Collins's procedures and policies for

28                                    - 13 -

determining the debt amount Collins demands from alleged debtors is relevant and reveals an aspect of Collins's debt collection practices.

### 3. Nelson's offer to produce documents related to the bona fide error defense does not satisfy the discovery requests

Nelson improperly attempts to limit Request Nos. **19** and **20** to documents that relate to the bona fide error defense. This response is insufficient and does not satisfy Nelson's discovery obligations. Request No. **19** seeks documents related to Nelson's policies for avoiding violations of the Fair Debt Collection Practices Act and the Rosenthal Act. Request No. **20** seeks training materials regarding the Fair Debt Collection Practices Act and the Rosenthal Act. Put differently, these requests seek information on how Nelson trains its employees to collect debts and are not limited to just the bona fide error defense. Nelson cannot shelter its debt collection techniques from scrutiny by producing only documents related to the bona fide error defense.

### 4. Nelson's argument that requests related to class allegations are premature is improper and was previously rejected by this court

In September 2009, this court rejected CFNK's argument that discovery related to "class issues" was premature until the class was certified. Nelson still claims in its supplemental responses that Interrogatory Nos. **1**, **2**, and **16** are premature because Tourgeman may not pursue this case as a class action. Nelson's claims are inappropriate, especially since Nelson provided the supplemental responses on January 26, 2010, nearly four months after this court rejected Nelson's contention.

Further, Nelson continues to ignore the allegations in the Complaint. As explained above, this is a class action lawsuit, alleging Nelson engages in improper debt collection activities. Originally, Nelson outright refused to answer Interrogatory Nos. **1**, **2**, and **16**. During the meet and confer discussions, Tourgeman explained that Interrogatory Nos. **1**, **2**, and **16** were relevant to the core issues involved in this case and to establishing the number of class members. Now, Nelson's supplemental responses fail to specify an exact number, merely stating the answer is "more than forty." Under Federal Rule 37, an "evasive or incomplete disclosure, answer, or response" is equivalent to "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

- 14 -

Lastly, Nelson erroneously contends that "[p]laintiff is attempting to impose undue burden and expense on Defendant." *See, e.g.* Supplemental Response to Interrogatory No. **1**. Interrogatory Nos. **1**, **2**, and **16**, however, are narrowly tailored as they seek the ***number*** of persons contacted for debt collection, the ***number*** of persons sued for the purposes of debt collection, and the ***number*** of demand letters sent to alleged debtors. These interrogatories do not require Nelson to engage in burdensome data gathering of personal contact information. Rather, the interrogatories merely seek a ***number***.

### 5.    Nelson's supplemental responses are still improper because the responses attempt to narrow the scope of the discovery requests

Nelson originally tried to restrict the scope of Request No. **3** to documents related only to Collins. During the meet and confer process, Tourgeman vigorously contested Nelson's position that only documents related to Collins would be produced. Nelson has now abandoned that position, but still attempts to narrow the scope of the request by agreeing to produce only documents related to the duties and procedures of the persons who *upload the account data received from clients*. Request No. **3**, however, was intended to be much broader. Request No. **3** seeks documents showing the duties and responsibilities of ***all*** the Nelson employees who receive data relating to alleged debts. These documents are highly relevant because they demonstrate how Nelson's employees conduct their debt collection practices. And since there are several Nelson employees who may receive the debt related information and participate in the debt collection process, Nelson's supplemental response is insufficient.

### F.    Tourgeman's Discovery Requests Are Relevant And Reasonably Calculated To Lead To The Discovery Of Admissible Evidence

Nelson erroneously claims that Request Nos. **10** and **12-14** are not relevant. The Complaint, however, contains class allegations that Nelson engages in improper debt collection activities. Request No. **10** seeks complaints filed by Nelson on Collins's behalf; Request No. **12** seeks documents related to the number of alleged debtors that Nelson filed complaints against; Request No. **13** seeks documents related to the number of alleged debtors Nelson mailed letters to requesting

- 15 -

payment of an alleged debt; and Request No. **14** seeks documents related to 1692g notices that Nelson sent to alleged debtors.  These requests establish the number of class members, indicate whether Nelson files legitimate and accurate lawsuits, and demonstrate Nelson's overall debt collection techniques.  In other words, these requests seek evidence which goes to the heart of this dispute: whether Nelson engages in proper debt collection practices.

Additionally, Nelson contends there is no legitimate basis for Request Nos. **23** and **25**. Request No. **23** seeks documents related to Nelson's procedures for verifying alleged debts received from debt collector clients and Request No. **25** seeks documents related to Nelson's policies and procedures for settling debts with debtors.  Since Nelson's debt collection practices are being challenged in this class action lawsuit, these requests are relevant to showing how Nelson files and settles debt related lawsuits.

Nelson also objects to Interrogatory Nos. **11** and **14** on relevancy grounds, arguing that "there is no basis for identifying other creditors that did not extend credit to Plaintiff."  Nelson is wrong. Interrogatory No. **11** seeks the identity of all creditors that retained Nelson, from July 31, 2006 to the present, to collect a debt.  These creditors may have information regarding Nelson's debt collection activities and could potentially testify as witnesses.  Moreover, Nelson attached a loan agreement from the wrong creditor when it sued Tourgeman, making the identity of all creditors relevant. Interrogatory No. **14** asks for a description of the compensation agreements between Nelson and any creditor that used Nelson to file a complaint.  Compensation agreements with other creditors evidences Nelson's incentive structure, reveals how Nelson prioritizes its efforts against certain debtors, indicates the level of involvement it has in preparing of lawsuits, and further explains the extent of Nelson's debt collection activities.  Since Nelson's debt collection activities are directly at issue here, these Interrogatories are within the scope of the Federal Rules of Civil Procedure.

Lastly, Collins objects to Request Nos. **3** and **16**, and Interrogatory No. **10** on relevancy grounds.  Request No. **3** seeks documents concerning the duties and responsibilities of Collins employees who receive, maintain, and send data regarding alleged debts.  The Complaint contains well-pleaded allegations that Collins engages improper debt collection practices. These documents

- 16 -

1   demonstrate the scope of Collins's debt collection practices and will reveal potential deponents.

2   Request No. **16** asks for all copies of complaints filed against Collins alleging violations of the Fair

3   Debt Collection Practices Act and the Rosenthal Act.   Complaints filed by other debtors against

4   Collins evidences Collins's debt collection practices and will reveal potential witnesses who can

5   testify about Collins's business practices.   Interrogatory No. **10** seeks the identity of debt collection

6   violation lawsuits that Collins is or has been a party to since July 31, 2006.   Other lawsuits against

7   Collins, especially for violations of the FDCPA and the Rosenthal Act, are relevant, may reveal

8   potential witnesses, and demonstrate whether Collins engages in a pattern of improperly filing

9   lawsuits against alleged debtors.

10   **G.       CFNK's Citation To Non Business Documents Under FRCP 33(d) Is Improper**

11        Nelson agrees to produce records in lieu of a response to Interrogatory Nos. **5** and **13,** and

12   Collins agrees to produce records in lieu of a response to Interrogatory Nos. **4, 5,** and **14**.   While

13   CFNK agrees to produce records under Fed. R. Civ. P. Rule 33(d), they fail to specify which

14   records.   If the served party chooses to respond to an interrogatory by producing business records,

15   the served party must specify, in detail, the records from which the answer may be derived or

16   ascertained and afford the party serving the interrogatory reasonable opportunity to examine, audit,

17   or inspect the record. *See* Fed. R. Civ. P. 33(d); *Mancini,* 2009 U.S. Dist. LEXIS 51321.

18        The citation to and production of records as an alternate means for responding to

19   interrogatories is proper so long as the documents produced are the party's "business records" and

20   the description of the records produced is sufficiently detailed to enable the propounding party to

21   locate them.   Here, CFNKs' citation to and alleged agreement to produce documents does not satisfy

22   these two requirements.   For example, in response to Interrogatory No. **14,** Collins states "pursuant

23   to Federal Rule of Civil Procedure 33(d), Defendant will produce non-privileged, responsive

24   documents in its possession, custody, or control."   This response is insufficient for two reasons.

25   First, it does not direct Tourgeman to any "business records."   Second, even assuming these

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR SANCTIONS

1   documents are business records, this response lacks the required specificity.  CFNK must at least

2   provide the titles of the documents or Bates numbers of the documents responsive to this request.

3   **H.    The Court Should Sanction CFNK For the Fees And Costs Tourgeman Incurred
        In Bringing This Motion**

4

5   Federal Rule of Civil Procedure 37(a)(5)(A) states that if a Court grants a motion to compel,

6   it must award "reasonable expenses incurred in making the motion, including attorney's fees."

7   Here, CFNK imposed an undue burden on Tourgeman by failing to provide meaningful

8   discovery responses.  CFNKs' counsel further exacerbated this burden by ignoring and evading

9   Tourgeman's attempts to meet and confer over a seven month period.  Rather than providing

10  supplemental responses to Tourgeman's discovery requests, CFNK forced Tourgeman to incur

11  unnecessary attorney's fees and costs in filing this motion.  And, Tourgeman was forced to cancel

12  several depositions.

13  Accordingly, the court should sanction CFNK for the attorney's fees and costs that

14  Tourgeman incurred in bringing this motion.  Tourgeman will calculate the attorney's fees and costs

15  incurred after filing a reply and attending the oral argument.  With this court's permission,

16  Tourgeman will serve and file a memorandum, supported by the affidavit of counsel, establishing the

17  amount of attorney's fees and costs incurred in filing this motion.

18

19

20

21

22

23

24

25

26  //

27  //

28

- 18 -

1   IV.   **CONCLUSION**

2        Tourgeman seeks supplemental responses from Nelson to Request Nos. **1-3**, **5-15**, **17**, **19-21**,

3   **23**, **25**, **26**, **28**, and **29**, and to Interrogatory Nos. **1**, **2**, **4**, **5**, **7**, **10**, **11**, **13**, **14**, **16**, **18**, and **19**.

4   Tourgeman also seeks supplemental responses from Collins to Request Nos. **1-16** and **19-28**, and to

5   Interrogatory Nos. **1**, **3-10**, **12**, **14**, and **16-19**.   Based on the foregoing reasons, as well as those that

6   may be offered in the reply brief and at oral argument, Tourgeman respectfully requests the court

7   grant his Motion to Compel Further Responses and For Sanctions.

8

9   Dated: March 5, 2010                    JOHNSON BOTTINI, LLP

10                                          FRANCIS A. BOTTINI, JR.
                                            BRETT M. WEAVER

11

12                                   By:   _____
                                                 /s/ Brett Weaver
13                                               BRETT WEAVER

14                                          501 West Broadway, Suite 1720
                                            San Diego, California  92101
15                                          Telephone:  (619) 230-0063
                                            Facsimile:   (619) 238-0622
16
                                            Attorneys for Plaintiff David Tourgeman
17

18

19

20

21

22

23

24

25

26

27

28                                          - 19 -