# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOURGEMAN,<br><br>          Plaintiff,<br><br> vs.<br><br>COLLINS FINANCIAL SERVICES, INC.;<br>NELSON & KENNARD; DELL<br>FINANCIAL SERVICES, L.P.; et al.,<br><br>          Defendants. | CASE NO. 08-CV-1392 JLS (NLS)<br><br>**ORDER: (1) GRANTING PLAINTIFF'S EX PARTE APPLICATION TO STRIKE ERIN TOWNS'S DEPOSITION TESTIMONY AND (2) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**<br><br>(Doc. Nos. 125, 141) |

  Presently before the Court is Plaintiff's motion for leave to file a third amended complaint. (Doc. No. 125; *see* Doc. No. 125-1 (Mem. ISO Mot. to Amend).) Also before the Court are Defendants Collins Financial Services (Collins) and Nelson & Kennard's (N&K) notice of non-opposition (Doc. No. 133), Defendant Dell Financial Services' (DFS) opposition (Doc. Nos. 135 (Opp'n to Mot. to Amend)), and Plaintiff's reply (Doc. No. 138 (Reply)). Plaintiff has also moved ex parte to strike portions of Erin Towns's deposition errata sheet, which DFS relies upon in opposition to Plaintiff's motion for leave to amend. (Doc. No. 141 (Mem. ISO Mot. to Strike).) DFS opposes Plaintiff's ex parte application. (Doc. No. 150 (Opp'n to Mot. to Strike).) Having reviewed the parties' arguments and the law, the Court **GRANTS** Plaintiff's ex parte application to strike and **GRANTS** Plaintiff's motion for leave to amend.

# BACKGROUND

On July 31, 2008, Plaintiff filed a complaint against, *inter alia*, Collins, N&K, and DFS alleging violations of the Fair Debt Collection Practices Act (FDCPA) and California Rosenthal Act, invasion of privacy, and negligence. (Doc. No. 1 (Compl.).) On April 6, 2009, Plaintiff amended his complaint to add class allegations and a claim for violation of California Business and Professions Code § 17200 (UCL claim). (Doc. No. 34 (FAC).) Plaintiff amended his complaint again on August 27, 2009 to, *inter alia*, tether its UCL claim to alleged violations of the FDCPA and Rosenthal Act. (Doc. No. 60 (SAC); *see also* Doc. No. 58, at 11–12 (dismissing without prejudice Plaintiff's UCL claim against DFS for failure to state specific provisions of the FDCPA or Rosenthal Act that DFS allegedly violated to trigger UCL).)

More than a year later, on October 4, 2010, Plaintiff filed the present motion for leave to amend to change the proposed class definition, allege additional facts, and add defendants.[1] (*See* Mem. ISO Mot. to Amend 1; *see also* Doc. No. 137-1 (Proposed TAC).) Plaintiff wishes to allege newly discovered facts regarding DFS' alleged sale of nonexistent debts to Collins. (Mem. ISO Mot. to Amend 3–4; *see* Proposed TAC ¶¶ 20–22.) Plaintiff also wishes to join as defendants Collins Financial Services USA, Inc. (Collins USA) and Paragon Way, Inc., which Plaintiff claims are alter egos of Collins. (Mem. ISO Mot. to Amend 4–5; *see* Proposed TAC ¶¶ 7–8.) Finally, Plaintiff wishes to amend its class allegations to incorporate newly discovered facts. (*See* Proposed TAC ¶¶ 35–53.)

# DISCUSSION

**1.  Motion to Strike Portions of Erin Towns's Errata Sheet**

Plaintiff's motion for leave to amend depends, at least in part, on Ms. Towns's deposition errata sheet. (*See* Opp'n to Mot. to Amend 5–6, 13.) Accordingly, the Court first addresses Plaintiff's motion to strike portions of that errata sheet.

On September 8, 2010, Plaintiff deposed Ms. Towns, DFS' "senior recovery manager," in

---

[1] The most recent scheduling order to address the issue set a January 5, 2009 deadline for motions to join parties and amend the pleadings. (Doc. No. 77, at 1.)

Austin, Texas. (Mem. ISO Mot. to Strike 1; *see* Doc. No. 147-1 (Towns Dep.).)[2] During the deposition, Ms. Towns testified that loans DFS sold to Collins consisted entirely of loans originated by CIT Online Bank (CIT). (*E.g.*, Towns Dep. 56:21–57:2; 84:19–23.) On October 3, 2010—the day before Plaintiff moved to amend his complaint—Ms. Towns submitted an errata sheet purporting to correct the original deposition transcript. (Doc. No. 147-2 (Errata Sheet).) The changes range from corrections of transcription errors to outright contradictions. (*See id.*) Relevant here, Ms. Towns changed her testimony to say that CIT, DFS, and American Investment Bank originated the loans DFS sold to Collins, rather than just CIT. (*Compare, e.g.*, Towns Dep. 56:19–21 ("[Question:] To your knowledge, were any debts besides those originated by CIT included in this portfolio? [Answer:] My understanding, they were CIT loans."), *with* Errata Sheet 1 ([Page/Line:] 56:21 [Change & Reason:] "To my understanding it consisted of AIB, CIT[,] and DFS loans.").)

Federal Rule of Civil Procedure 30(e) allows changes to deposition testimony "in form or substance" if made within thirty days of being notified that the transcript is available and accompanied by a statement of the reasons for making them.[3] Although the Rule, by its terms, allows changes "in form or substance," Fed. R. Civ. P. 30(e)(1)(B), Ninth Circuit authority limits the Rule's application to "corrective, and not contradictory, changes," *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005). "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. . . . A deposition is not a take home examination." *Garcia*

---

[2] The Court's citations to Plaintiff's memorandum in support of its application to strike portions of Ms. Towns's deposition testimony and the exhibits thereto refer to the unredacted application filed under seal. (*See* Doc. No. 140 (Plaintiff's motion to file portions of application under seal); Doc. No. 142 (Order granting Plaintiff's motion to file portions of application under seal); Doc. No. 147 (unredacted version of application).) A redacted version of the application is available at docket number 141.

[3] Rule 30(e)(1) provides:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in the form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1).

*v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)); *accord Bartos v. Pennsylvania*, 2010 WL 1657284, at *5–6 (M.D. Pa. Apr. 23, 2010); *Citgo Petroleum Corp. v. Ranger Enters., Inc.*, 632 F. Supp. 2d 878, 883–84 (W.D. Wis. 2009); *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296–97 (D. Md. 2008); *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, at *5 (D. Del. Sept. 22, 2006); *Adams v. Allied Sec. Holdings*, 236 F.R.D. 651, 652 (C.D. Cal. 2006).

Further, Rule 30(e) requires that any changes to deposition testimony be accompanied by a statement of reasons explaining the changes. Fed. R. Civ. P. 30(e)(1)(B); *accord Hambleton Bros.*, 397 F.3d at 1224. Courts insist on strict compliance with Rule 30(e)'s technical requirements, including the requirement of a statement of reasons. *Hambleton Bros.*, 397 F.3d at 1224–26; *Bartos*, 2010 WL 1657284, at *5 (collecting cases); *Brokaw v. Qualcomm, Inc.*, 2003 U.S. Dist. LEXIS 26519, at *26 (S.D. Cal. Mar. 4, 2003); *Holland v. Cedar Creek Mining*, 198 F.R.D. 651, 653 (S.D. W. Va. 2001). Without a statement of reasons, a reviewing court cannot determine "whether the alterations have a legitimate purpose." *Hambleton Bros.*, 397 F.3d at 1224–25.

Having analyzed Ms. Towns's proposed changes, it is apparent that her errata sheet runs afoul of Rule 30(e)'s procedural and substantive requirements. First, as a procedural matter, the errata sheet is not accompanied by a statement of reasons explaining the changes.[4] This alone justifies striking the errata sheet.[5] *See, e.g.*, *Hambleton Bros.*, 397 F.3d at 1224–26. Second and more troubling is the substance of Ms. Towns's changes. Although some of the changes merely correct typographical errors (*see* Errata Sheet 1), others directly contradict Ms. Towns's sworn deposition testimony (*see* Mem. ISO Mot. to Strike 2–3 (summarizing contradictory changes)). Changing "yes" to "no" and "correct" to "no not correct" are paradigmatic examples contradiction, rather than correction. *Hambleton Bros.*,

---

[4] Ms. Towns arguably does explain some of her changes inasmuch as her errata sheet identifies "Typo[s]" in the original transcription. (*See* Errata Sheet 1.) However, Ms. Towns does not attempt to justify the contradictory changes that Plaintiff and the Court are concerned with here.

[5] DFS' statement that it "is willing to provide an errata sheet delineating the reason for Ms. Towns'[s] corrections" is unavailing. (Opp'n to Mot. to Strike 6.) Rule 30(e) required DFS to submit a statement of reasons along with the original errata sheet, and the time for submitting a statement of reasons has since elapsed. *See* Fed. R. Civ. P. 30(e)(1) (allowing deponent thirty days to submit corrections); Errata Sheet 2 (dated October 3, 2010); *see also Blackthorne v. Posner*, 883 F. Supp. 1443, 1454 n.16 (D. Or. 1995) (excluding untimely errata sheet).

1  397 F.3d at 1226.  Contradiction is not a proper use of an errata sheet.

2  DFS' arguments in opposition to Plaintiff's motion to strike are thoroughly unavailing.  First, DFS contends that the Court may strike an errata sheet under *Hambleton Brothers* only if the deponent attempts to use the errata sheet to manufacture a genuine issue of material fact to defeat summary judgment. (Opp'n to Mot. to Strike 3.)  Thus, DFS contends, the Court should not strike Ms. Towns's errata sheet because "[n]o dispositive motion is presently on file." (*Id.*)  The Court, however, does not read *Hambleton Brothers* so narrowly.  Courts strike errata sheets in contexts beyond summary judgment.  *See, e.g.*, *Bartos*, 2010 WL 1657284, at *8 (striking errata sheets for all purposes); *Wyeth*, 252 F.R.D. at 295 (precluding use of errata sheet at trial).  The Court sees DFS' reliance on Ms. Towns's errata sheet in opposition to Plaintiff's motion for leave to amend as analogous to the use of a contradictory errata sheet to create a factual dispute to defeat summary judgment.  (*See* Opp'n to Mot. to Amend 5 (arguing that "the facts refute" that CIT originated all of the loans DFS sold to Collins and citing Ms. Towns's errata sheet); *id.* at 13 (arguing that "[t]he accounts sold to Collins included accounts from CIT, AIB, and DFS" and citing Ms. Towns's errata sheet).)  Accordingly, the Court agrees with Plaintiff that *Hambleton Brothers* controls.

Second, DFS contends that the Court should not strike Ms. Towns's errata sheet because witness and documentary evidence corroborates Ms. Towns's changes to her deposition testimony. (Opp'n to Mot. to Strike 4–5.)  Whether or not DFS is correct, this argument misses the point.  DFS chose Ms. Towns as its Rule 30(b)(6) designee and should have prepared her accordingly.  (*See id.* at 2 (noting that DFS designated Ms. Towns to speak to DFS' business relationship with Collins, CIT, and AIB).)  DFS produced documents during Ms. Towns's deposition—documents that DFS contends corroborate Ms. Towns's errata sheet changes—that Ms. Towns should have reviewed. (*Id.* at 5; Doc. No. 150-1 (Ammerman Decl. in Opp'n to Mot. to Strike) Ex. B.)  DFS had an opportunity to cross examine Ms. Towns to clear up any inaccuracies. *See* Fed. R. Civ. P. 30(c)(1).  To allow the proposed changes now would undermine the Rule 30(b)(6) deposition and convert it to a "take home examination." *Greenway*, 144 F.R.D. at 325.

Third, DFS contends that Plaintiff's requested relief—striking the contradictory portions of Ms. Towns's errata sheet—is not necessary because Plaintiff can impeach Ms. Towns using her

original deposition testimony. (Opp'n to Mot. to Strike 6.) But the Court does not see why DFS should suffer no penalty for its misuse of Rule 30(e). Contrary to DFS' apparent suggestion, it will not lose its only bite at the apple if the Court disallows the contradictory portions of Ms. Towns's errata sheet. DFS may, consistent with the rules of procedure and rules of evidence, present to the trier of fact the changes and additions that DFS seeks to make to Ms. Towns's testimony through the errata sheet. Further, imposing no remedy at all for DFS' clearly improper use of an errata sheet would render null Rule 30(e)'s procedural and substantive requirements.

Accordingly, Plaintiff's motion to strike is **GRANTED**. The Court **STRIKES** and deems inadmissible for all further proceedings the following portions of Ms. Towns's errata sheet: 56:21, 56:23, 57:2, 84:9, 84:13–14, 84:17–18, 84:21, 84:23, and 105:9.

**2.     Motion for Leave to File a Third Amended Complaint**

*A.     Legal Standard*

Leave to amend the complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But while Rule 15 should be interpreted liberally, leave to amend should not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). A trial court may deny leave to amend if permitting an amendment "would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." *Id.*

If there is a deadline for amendment set by a scheduling order, and the deadline has passed, an amendment to the pleadings requires that the scheduling order be modified. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). The scheduling order may be modified by leave of court on a showing of good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4).

*B.     Analysis*

Plaintiff's proposed amendments to the complaint are purportedly the products of information disclosed during recent depositions. (Mem. ISO Mot. to Amend 2–5; Doc. No. 125-2 (Weaver Decl. ISO Mot. to Amend) ¶¶ 2–5.) The Court addresses each category of proposed amendments in turn.

*(1)     Additional Facts*

Plaintiff wishes to allege additional facts relating to his recent discovery that CIT Online Bank was the creditor on 85,292 allegedly unpaid accounts that DFS sold to Collins, Plaintiff's among them.

1  (Mem. ISO Mot. to Amend 1, 3–4; *see* Proposed TAC ¶¶ 21–22, 36–37.)  Plaintiff also wishes to
2  allege facts regarding DFS' alleged creation of "10,000 American Investment Bank loan agreements
3  that did not actually exist."  (Mem. ISO Mot. to Amend 4; *see* Proposed TAC ¶ 36.)

4  DFS, for its part, asserts that "the new allegations are not new information" (Opp'n to Mot.
5  to Amend 3, 11–13) and that it will be unduly prejudiced by an amendment alleging additional facts
6  (*id.* at 3–4, 9–11).  DFS also contends that the allegations in the Proposed TAC are futile.  (*Id.* at
7  13–19.)

8  (a)  Undue Delay

9  DFS' contention that the new allegations are not new information appears to be premised upon
10 the fact that Plaintiff's FAC dismissed AIB and named CIT as a defendant.  (Opp'n to Mot. to Amend
11 12.)  At that time, however, Plaintiff believed that "[Collins' and N&K's] naming of the wrong
12 original creditor was an isolated incident that resulted from [their] lack of meaningful involvement
13 in the collection of debts."  (Reply 2.)  Until Ms. Towns's deposition, Plaintiff had no reason to
14 believe that Collins' and N&K's naming of the wrong creditor resulted from DFS' alleged creation
15 of 10,000 AIB accounts that never actually existed.  (*See* Weaver Decl. ISO Mot. to Amend ¶ 5.)
16 Accordingly, DFS' contention that "Plaintiff has known about the AIB/CIT mix up since at least
17 January 2009" lacks merit.  (Opp'n to Mot. to Amend 3.)

18 Nor is the Court persuaded that Plaintiff's recent discovery of the subject information resulted
19 from undue delay.  DFS contends that Plaintiff delayed in taking Ms. Towns's deposition "because
20 Plaintiff was in a discovery dispute with Collins and N&K, not with DFS."  (Opp'n to Mot. to Amend
21 12.)  The facts do not bear DFS' contention out.  As Plaintiff's counsel's declaration summarizes,
22 Plaintiff's multiple postponements of DFS' deposition largely resulted from DFS' refusals to respond
23 to written discovery.[6]  (*See* Doc. No. 138-1 (Weaver Decl. ISO Reply) ¶¶ 2–5.)  Plaintiff did not act

---

[6] In summary, Plaintiff propounded its first set of written discovery on DFS and originally noticed DFS' deposition in April 2009.  (Weaver Decl. ISO Reply ¶¶ 2, 3.)  DFS generally refused to respond to written discovery while dispositive motions were pending.  (*Id.* ¶ 2.)  Accordingly, Plaintiff had to postpone DFS' deposition.  (*Id.* ¶ 3.)  On November 23, 2009, the Court granted in part and denied in part DFS' motion to dismiss and denied Defendants' motions for summary judgment.  (Doc. Nos. 89, 90.)  Plaintiff then asked DFS to supplement its discovery responses and re-noticed its deposition for late January 2010.  (Weaver Decl. ISO Reply ¶ 2.)  As of January 14, 2010, DFS had not responded to Plaintiff's discovery requests, and Plaintiff was again forced to postpone DFS'

unreasonably in waiting to conduct DFS' deposition until DFS responded to written discovery.

(b)   Prejudice

DFS also argues that Plaintiff's proposed amendments would prejudice DFS because "Plaintiff's proposed amendments are tantamount to bringing a new class action lawsuit." (Opp'n to Mot. to Amend 9.)  The Court disagrees.  Plaintiff has long contended that DFS sold inaccurate account information to Collins. (*See, e.g.*, FAC ¶ 24 ("As a result of its failure to process payments properly, Defendants [DFS] and CIT falsely indicated the existence of an alleged debt by Plaintiff, which alleged debt Defendants [DFS] and/or CIT subsequently sold to Defendant Collins . . . .").)  Plaintiff's proposed amendments simply allege newly discovered facts that explain *why* DFS sold inaccurate account information to Collins. (*See* Proposed TAC ¶¶ 20–22, 35–36.)  Notably, Plaintiff does not seek to allege any new causes of action.  *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of motion for leave to amend to add claim under Racketeer Influenced and Corrupt Organizations Act).  Accordingly, the Court is not convinced that allowing Plaintiff's proposed amendments would "greatly alter[] the nature of the litigation." *Id.*

DFS also notes that Plaintiff's motion for leave to amend "comes on the eve of the discovery cut-off[,] leaving Defendants without the time or allowable written discovery available to inquire into this new case." (*Id.* at 10.)  Courts do not look favorably on motions for leave to amend made at or near the close of discovery. *See, e.g.*, *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998).  Here, however, the late hour of Plaintiff's motion for leave to amend does not reflect a lack of diligence on Plaintiff's part.  Rather, it was DFS' obstreperousness in discovery that prevented Plaintiff from learning the facts that give rise to his proposed amendments.  This fact warrants an exercise of discretion in Plaintiff's favor.[7]

(c)   Futility of Amendment

DFS also argues that the Court should deny Plaintiff leave to amend because the Proposed

---

deposition. (*Id.* ¶ 3 & Ex. 1.)  In April 2010, Plaintiff propounded a second set of discovery requests on DFS. (*Id.* ¶ 4.)  After the parties met and conferred, DFS produced documents and supplemented its discovery responses in June 2010 and July 2010, respectively. (*Id.*)  With those documents and responses in hand, Plaintiff re-noticed DFS' deposition for September 2010. (*Id.* at ¶ 5.)

[7] Nevertheless, the Court will permit a limited extension of the discovery deadline and pretrial dates to allow the parties to conduct additional discovery on Plaintiff's new allegations.

TAC's allegations are futile. (*See* Opp'n to Mot. to Amend 13–19.) "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

First, DFS argues that amendment of Plaintiff's negligence claim would be futile because DFS owed Plaintiff no independent duty of care. (Opp'n to Mot. to Amend 16–17.) At this stage and with limited briefing, the Court is reluctant to hold as a matter of law that DFS owed Plaintiff no duty of care. Plaintiff cites persuasive authority suggesting that DFS, as a creditor, owed Plaintiff, its customer and debtor, "a duty of reasonable care in the handling of his account, which includes the collection of his debt." *Colo. Capital v. Owens*, 227 F.R.D. 181, 188 (E.D.N.Y. 2005). Accordingly, the Court cannot conclude that amendment of Plaintiff's negligence claim would be clearly futile.

Second, DFS argues that Plaintiff's amended negligence claim would be time-barred. (Opp'n to Mot. to Amend 17–19.) The Court disposed of DFS' statute of limitations defense in ruling on DFS' motion to dismiss Plaintiff's FAC:

> Based on the facts as Plaintiff alleges them, the first time he reasonably could [have] become aware that his debt had been mismanaged by DFS was when the state collection action was filed against him in 2007. Since Plaintiff filed the instant action in mid-2008, the two[-]year statute of limitations on his negligence claim had yet to run.

(Doc. No. 58, at 14.) The same holds true here. (*See* Proposed TAC ¶ 29.) DFS' argument to the contrary demonstrates remarkable bad faith.

DFS also contends that the Proposed TAC's allegations do not relate back to the original complaint. "The relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original complaint." *Norgart v. Upjohn Co.*, 981 P.2d 79, 96 (Cal. 1999). As discussed above, Plaintiff has long contended that DFS sold inaccurate account information to Collins and that Plaintiff suffered injury from DFS' sale of inaccurate account information. (*See* FAC ¶ 24.) The Proposed TAC's allegations do not materially differ in this respect. Accordingly, the proposed amendments relate back.

Third, DFS argues that Plaintiff lacks standing to bring a claim under California Business and

Professions Code section 17200 (the UCL) because Plaintiff is a resident of Mexico. (Opp'n to Mot. to Amend 19.) "[S]ection 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000). Here, Plaintiff's claim unquestionably has a nexus with California—Plaintiff alleges that (1) his computer was shipped to a California address, (2) DFS provided Collins with a California address for Plaintiff, (3) Defendants sent letters to Plaintiff at California addresses, (4) N&K filed suit against Plaintiff in California state court, and (5) N&K served process on Plaintiff's father in California. (Proposed TAC ¶¶ 16, 24, 27, 29, 31.) Plaintiff also proffers evidence that "California was 'in the top five' when it came to the number of alleged debtors in the debt portfolio DFS sold to Collins." (Weaver Decl. ISO Reply ¶ 8.) Accordingly, the Court is unconvinced that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim" under the UCL.[8] *Miller*, 845 F.2d at 214; *see Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 339–40 (N.D. Cal. 2010) (applying UCL where nineteen percent of defendant's sales occurred in California, seventy-six percent of defendant's products were partially manufactured in California, and three percent of defendant's products were manufactured exclusively in California).

*(2)   Joinder of Collins USA and Paragon Way*

Federal Rules of Civil Procedure 19 and 20 govern who may be joined as a party. Rule 20(a)(2) allows for the permissive joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Plaintiff proposes to join Collins USA and Paragon Way as defendants because newly

---

[8] DFS' cited authorities do not convince the Court otherwise. *See Churchill Vill.*, 169 F. Supp. 2d at 1126–27; *Norwest Mortg., Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 23–25 (Cal. Ct. App. 1999). In *Churchill Village*, the court held that in-state sales alone did not establish a nexus with California because only ten percent of the defendant's total sales occurred in California. 169 F. Supp. 2d at 1127. In *Norwest Mortgage*, the court held the UCL inapplicable to non-California residents for whom the Defendant's conduct occurred in states other than California. 85 Cal. Rptr. at 23–25. DFS has given the Court no reason to believe Plaintiff can prove no set of facts that would establish his and the class members' standing to pursue claims under the UCL.

discovered facts suggest that the proposed defendants are alter egos of Collins. (Mem. ISO Mot. to Amend 4–5; Weaver Decl. ISO Mot. to Amend ¶ 5.) Notably, Collins does not oppose the proposed amendment. (Doc. No. 133.) DFS, in a footnote, contends that "the additions of Collins USA and Paragon Way adds nothing to the Complaint. If what Plaintiff alleges is true, that these entities are alter egos of the already existing Defendant Collins . . . , adding these defendants is a sham." (Opp'n to Mot. to Amend 13 n.1.)

Based upon the facts Plaintiff cites in support of the alleged alter ego relationship and the Proposed TAC's allegations, the Court finds that Collins USA and Paragon Way can be properly joined as defendants in this action. (*See* Weaver Decl. ISO Mot. to Amend ¶ 5 & Ex. C; Proposed TAC ¶¶ 7–9, 13, 15; Fed R. Civ. P. 20(a)(2).) Plaintiff's claims against Collins USA and Paragon Way arise from the same series of transactions as its claims against Collins, N&K, and DFS—DFS' sale of charged off debts to Collins and Collins' attempt to collect on those debts. (*See* Compl. ¶¶ 9, 13, 15.) Plaintiff's claims will require the Court to determine whether Defendants' actions violated California and federal law. Joinder of Collins USA and Paragon Way is therefore permissible.[9]

*(3)     Class Definitions*

Finally, DFS argues that "the class definitions in the [Proposed TAC] are incomprehensible, overbroad, and have no nexus whatsoever with the alleged wrongdoing by DFS." (Opp'n to Mot. to Amend 15.) Class allegations are rarely tested at the pleading stage. *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969). Rather, Courts test class allegations through a motion for class certification. *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). As the Court stated in its order denying DFS' motion to dismiss Plaintiff's FAC:

> District courts must take a "close look" at the claims and evidence to determine the validity of a class certification. A separate hearing to determine class certification thus respects the language of the [Federal Rules of Civil Procedure] and precedents of the Supreme Court and Ninth Circuit, as well as the value of class action litigation.

(Doc. No. 58, at 14 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)) (citation

---

[9] The Court also gives great weight to the acquiescence of Collins, which presumably has the most to lose from Collins USA and Paragon Way's joinder. (*See* Doc. No. 133.) As to DFS' unsupported, two-sentence opposition to the proposed defendants' joinder, the Court can neither conceive of a legitimate reason for DFS to oppose the joinder of Collins USA and Paragon Way nor understand why these companies statuses as Collins' alter egos renders their joinder a "sham."

omitted).) DFS' challenge to the class definitions in the Proposed TAC is therefore premature. DFS may challenge the class allegations at the class certification stage.

## CONCLUSION

For the reasons stated, Plaintiff's ex parte application to strike Ms. Towns's errata sheet is **GRANTED**. (Doc. No. 141.) Plaintiff's motion for leave to file a third amended complaint is also **GRANTED**, and the scheduling order is **MODIFIED** accordingly. (Doc. No. 125.) Plaintiff shall file his third amended complaint <u>within seven days of the date that this Order is electronically docketed</u>. <u>Within seven days of the date Plaintiff files his amended complaint</u>, the parties **SHALL SUBMIT** to Judge Stormes a joint motion to extend the pretrial dates to accommodate a limited reopening of discovery to investigate Plaintiff's new allegations.

IT IS SO ORDERED.

DATED: November 22, 2010

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge