JOHNSON BOTTINI, LLP
Frank J. Johnson (CA 174882)
frankj@johnsonbottini.com
Brett M. Weaver (CA 204715)
brett@johnsonbottini.com
Keith M. Cochran (CA 254346)
keithc@johnsonbottini.com
501 West Broadway, Suite 1720
San Diego, CA  92101
Telephone: (619) 230-0063
Facsimile: (619) 238-0622

DANIEL P. MURPHY (CA 153011)
dmurphy245@yahoo.com
4691 Torrey Circle, A 306
San Diego, California 92130
Telephone: (619) 379-2460

*Attorneys for Plaintiff DAVID TOURGEMAN*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID TOURGEMAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>COLLINS FINANCIAL SERVICES, INC., (d/b/a Precision Recovery Analytics, Inc.) a Texas corporation; COLLINS FINANCIAL SERVICES USA, INC., (d/b/a Precision Recovery Analytic International, Inc.); PARAGON WAY, INC., a Texas corporation; NELSON & KENNARD, a California partnership; DELL FINANCIAL SERVICES, L.P., a Delaware limited partnership,<br><br>        Defendants. | Case No.:    08-CV-1392 JLS (NLS)<br><br>**DECLARATION OF DANIEL P. MURPHY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:        July 14, 2011<br>Time:       1:30 p.m.<br>Courtroom:  6<br>Judge:      Hon. Janis L. Sammartino<br><br>**Special Briefing Schedule and Page Limit Ordered** |

I, Daniel P. Murphy, declare as follows:

1.      I am an attorney licensed to practice law in the State of California since 1991.  I graduated Yale College with a B.A in Economics in 1987, and graduated from the UCLA School of Law with a J.D. degree in 1990.  I am experienced with the FDCPA and the Rosenthal Act as a result of my former employment as the Assistant General Counsel at Encore Capital Group ("Encore") for approximately two years.  Encore, together with its subsidiary Midland Credit Management Group and other subsidiaries, purchases charged-off consumer receivable portfolios and analyzes the portfolios to determine how to maximize collections, or in common parlance, a debt collector.  I gained further experience with the FDCPA and Rosenthal Act because I managed our litigation department and all of our litigation attorneys reported to me directly or indirectly for much of my time at Encore.  Encore (together with its subsidiaries) would have approximately 30-80 lawsuits alleging violations of the FDCPA and or the Rosenthal Act pending at any given time.

2.      On or about October 22, 2007, I received a phone call from Mr. David Tourgeman regarding a lawsuit that had been served on his parents.  I am an acquaintance of Mr. Tourgeman and his family, and have known Mr. Tourgeman and his family for years on a social and professional basis as a result of my representation and involvement with companies in the cigar industry with whom Mr. Tourgeman has done business.  Mr. Tourgeman explained that he was in Mexico, and that his parents had frantically tried to contact him because the lawsuit was dropped off with his father at his parents' house.  Mr. Tourgeman stated that he did not know what it was about, and asked if I could help him.  After reading the complaint, I called the legal counsel listed on the complaint, Nelson & Kennard, and was told the case was being handled by Mr. Jonathan Ayers.  Because Mr. Ayers was not available, I left Mr. Ayers a message asking him to call me.

3.      On or about October 29, 2007, I received a phone call from Mr. Ayers, who explained to me what the lawsuit was about.  I told Mr. Ayers that I wanted to get to the bottom of things, but that there were several apparent defects with the complaint, including among other things, that Mr. Tourgeman was not served, but that his father was served.  I told

Mr. Ayers that Mr. Tourgeman lived in Mexico, and was in Cancun at the time the summons and complaint was served on his parents.  I asked Mr. Ayers if he could provide me with any information to back up the claims in the lawsuit, including the original contract.  Mr. Ayers asked me for a communication from Mr. Tourgeman showing that I was authorized to communicate on his behalf, which I subsequently provided to him with a letter I faxed on November 6, 2007. In that letter, I also stated that I wanted to determine the facts underlying the complaint before proceeding any further, and confirmed that Mr. Ayers had said that he would request media (account information) and call me to discuss further.

4.       On November 7, I once again phoned Mr. Ayers to discuss the matter with him, but did not reach him and instead left him a message asking me to call him.  Over the following week, I called Mr. Ayers two or three more times but did not reach him, and left voicemails asking him to return my calls.  In a voicemail message I left for Mr. Ayers on November 13, 2007, I stated I was concerned about him moving for a default judgment, and that because of timing I would be forced to draft a counterclaim for FDCPA and state law violations, including serving the complaint on the wrong party, if I did not hear from him shortly.

5.       On November 16, 2007, I received an email from Mr. Ayers confirming a voicemail message that he left earlier in the week that stated he would not apply for a default judgment without giving me ten days notice of his intent to do so.  The email also stated, among other things, that he expected to receive the proof of service and account history within the next week, and asked if I could provide him any evidence substantiating that Mr. Tourgeman maintains his actual residence in Mexico.

6.       On November 29, I made another call to Mr. Ayers to find out if he was able to obtain the account information, but was unable to reach him and left him a voicemail.

7.       On December 14, 2007 I spoke with Mr. Ayers by telephone.  Later that day, I forwarded Mr. Ayers telephone and electric bills for Mr. Tourgeman in Cancun, Mexico.  Mr. Ayers was still unable to provide me with any account information regarding the lawsuit and Mr. Tourgeman's account.

8.     Other than perhaps one other phone conversation with Mr. Ayers at some point in December, I did not receive any account information or the original contract, nor did I hear from Mr. Ayers again until May 10, 2008, when I received a letter from him dated May 8, 2009 that threatened to take a default judgment by May 23, 2008 unless Mr. Tourgeman paid $1,200.00 to settle the action, or unless I filed an answer to the complaint.

9.     Because I did not want to allow a default judgment to be taken, I drafted a letter to Mr. Ayers dated May 16, 2008 informing him that, among other things, I would begin to draft an answer and a counterclaim in response to his threat to take a default judgment.  I sent the letter to Mr. Ayers via email and U.S. mail, and received an out of office message from Mr. Ayers informing recipients that he was on vacation and would not return until Wednesday, May 21, 2008, shortly before the threatened date of default of May 23, 2008.  The out of office email message also instructed recipients to email Gloria Zarco on any urgent legal matter.  I therefore re-mailed my letter dated May 16, 2008 to Ms. Zarco.

10.    On May 19, 2008, I received a voicemail from Ms. Zarco informing me that no one at the firm other than Mr. Ayers had authority to refrain from taking a default judgment, and that Mr. Ayers would have to handle the matter on his return

11.    On May 27, 2009, I received a fax from Mr. Ayers that contained seven pages, five of which were an "Order Inquiry" that only appeared to show the breakdown in costs for the computer order, and two pages of which were some information regarding account payment history.  I still had not received a copy of the loan agreement, the actual contract.  Mr. Ayers also sent me the same information the following day via email.  In several subsequent communications, Mr. Ayers agreed to withhold from taking a default judgment if I chose not to file the answer and cross-complaint, so that he could discuss the matter further with his client.

12.    On July 1, 2008, I sent Mr. Ayers a letter to follow-up on the status of the matter before filing a responsive pleading and a cross-complaint.  I also questioned several perceived discrepancies I noticed in the account information that I had received, including why the principal amount that was claimed as owed in the complaint was $1,145.93, when the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1  account information that he had sent me showed payments received for all but $360.52 of the

2  total amount of the original order.  I also noted that the complaint stated that late charges and

3  interest were in addition to, and not included in, the claimed principal amount.

4      13.    Subsequent to July 1, 2008, I was informed by Mr. Ayers that his client had

5  decided to dismiss the complaint that it had filed in California Superior Court.  Because I

6  hadn't received any confirmation of dismissal, I finalized the preparation of an answer and

7  counterclaim with the intention of filing.  As I was driving to the courthouse to file the answer

8  and counterclaim, I called Mr. Ayers to inform him of my intent to file.  Mr. Ayers told me

9  that he had dismissed the complaint, but had not received confirmation from the Court.  After

10  speaking with Mr. Ayers, I called the courthouse and was able to confirm that the dismissal

11  had been filed.

12      14.    I was never provided a copy of the loan agreement by Mr. Ayers.  I finally

13  received an unsigned copy of the original agreement nearly one year after requesting it.  I

14  received the agreement on September 10, 2008, which was sent to me via email attached to a

15  letter dated September 9, 2008 from Lisa Wegner, counsel to Dell Financial Services.  The

16  loan agreement showed the lender on that agreement as CIT and/or CIT Online Bank, and not

17  American Investment Bank, the party listed as a plaintiff assignor in the original complaint

18  filed by Collins Financial Services, and the party shown on the "exemplar" loan agreement

19  filed as an exhibit to such complaint.

20      15.    Since filing this lawsuit, Mr. Tourgeman and I have routinely communicated

21  about this lawsuit, including by phone, e-mail, and in person.

22      16.    If appointed lead counsel, I will continue to vigorously represent the interests of

23  the Class.

24      Executed this 18th day of April 2011, in San Diego, California.

25

26                 s/ Daniel P. Murphy
                  DANIEL P. MURPHY

27                 *Attorney for Plaintiff*
                  *DAVID TOURGEMAN*

28

-4-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION