# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOURGEMAN,<br><br>                            Plaintiff,<br><br>  vs.<br><br>COLLINS FINANCIAL SERVICES, INC.;<br>NELSON & KENNARD; DELL<br>FINANCIAL SERVICES, L.P.; PARAGON<br>WAY, INC.; COLLINS FINANCIAL<br>SERVICES USA, INC.; et al.,<br><br>                            Defendants. | CASE NO. 08-CV-1392 JLS (NLS)<br><br>**ORDER: GRANTING IN PART AND DENYING IN PART DEFENDANTS COLLINS FINANCIAL SERVICES, INC.; COLLINS FINANCIAL SERVICES USA, INC.; PARAGON WAY, INC.; AND NELSON & KENNARD'S MOTIONS TO DISMISS**<br><br>(ECF Nos. 165, 166) |

      Presently before the Court are two motions to dismiss Plaintiff's third amended complaint (TAC). The first is brought by Defendants Collins Financial Services, Inc.; Collins Financial Services USA, Inc.; and Paragon Way, Inc. (collectively, Collins). (Collins Mot., ECF No. 165.) The second is brought by Defendant Nelson & Kennard. (N&K Mot., ECF No. 166.) Also before the Court are Plaintiff's oppositions and Defendants' respective replies. (Opp'n to Collins Mot., ECF No. 175; Opp'n to N&K Mot., ECF No. 176; Collins Reply, ECF No. 179;[1] N&K Reply, ECF No. 180.) Having considered the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions.

---

[1] The Court notes that Collins's reply exceeds the page limit set by the Local Rules. *See* S.D. Cal. Civ. R. 7.1(h); Collins Reply. Collins is on notice that future noncompliance with the Local Rules will result in appropriate sanctions under Civil Rule 83.1.

## BACKGROUND[2]

On or about November 19, 2001, Plaintiff purchased a Dell computer for shipment to his parents house on Port Renwick in Chula Vista, California. (TAC ¶ 16, ECF No. 157.) At the time—and at all times relevant to this litigation—Plaintiff resided in Mexico. (*Id.* ¶¶ 5, 16.) Defendant Dell Financial Services, L.P. (DFS) arranged for Plaintiff to finance the purchase through CIT Online Bank (CIT). (*Id.* ¶ 17.) Thereafter, Plaintiff made payments as required under the financing agreement and paid the obligation in full before the maturity date. (*Id.* ¶¶ 17–18.) According to Plaintiff, however, DFS "failed to implement a system for receipt of payments, failed to process payments properly and accurately, and failed to properly indicate when an obligation had been paid in full. As a result of its failure to process payments properly, DFS falsely indicated that Plaintiff owed approximately $1,145." (*Id.* ¶ 18.)

In approximately July 2006, DFS sold a portfolio of 85,292 charged-off debts—including Plaintiff's purported debt—to Collins Financial Services, Inc. (Collins Financial). (*Id.* ¶¶ 20–22.) As part of the sales process, DFS provided Collins Financial with a blank exemplar loan agreement that identified American Investment Bank, N.A. (AIB) as the original creditor for every account in the portfolio. (*Id.* ¶ 21.) According to Plaintiff, Collins Financial did nothing to verify the original creditors for the debts contained in the portfolio. (*Id.* ¶ 22.)

Collins Financial then placed the debts with its sister company, Paragon Way, Inc., which also did not attempt to verify the original creditors for the debts contained in the portfolio. (*Id.* ¶ 23.) Paragon Way sent a validation letter to Plaintiff's parents' house on Port Renwick, despite that DFS identified Plaintiff's last known address as Parker Mountain Road in Chula Vista. (*Id.* ¶ 24.) According to Plaintiff, the validation letter stated that Plaintiff owed Collins Financial $1,619.52 and identified AIB as the original creditor. (*Id.*)

A few months later, Paragon Way referred Plaintiff's account to Nelson & Kennard. (*Id.* ¶ 25.) Like Collins Financial and Paragon Way, Nelson & Kennard did nothing to verify the original creditors for the debts contained in the portfolio. (*Id.* ¶ 26.) Nelson & Kennard also sent Plaintiff a

---

[2] For the purposes of these motions, the facts alleged in the complaint are taken as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

validation letter that identified AIB as the original creditor. (*Id.* ¶ 27.) According to Plaintiff, Nelson & Kennard sent the letter to an address on J Street in San Diego, California. (*Id.*)

About a month later, Nelson & Kennard ran a credit bureau inquiry regarding Plaintiff, which was reviewed by the non-lawyer account representative handling Plaintiff's account for the firm. (*Id.* ¶ 28.) According to Plaintiff, the inquiry (1) identified a debt to "DFS/CIT" in the amount that DFS charged off, (2) identified Parker Mountain Road as Plaintiff's current address, and (3) did not identify any debts to AIB. (*Id.*)

Undeterred by the result of the credit bureau inquiry, Nelson & Kennard filed a lawsuit against Plaintiff on Collins Financial's behalf on or about August 2, 2007. (*Id.* ¶ 29.) The complaint averred that Plaintiff entered into a financing agreement with AIB, and a copy of the blank exemplar AIB loan agreement that Collins Financial received from DFS was attached to the complaint. (*Id.*) Nelson & Kennard's process server served a copy of the summons and complaint on Plaintiff's father at his residence on Lawn View Drive in Chula Vista. (*Id.* ¶ 31.) According to Plaintiff, the process server then filed a proof of service falsely stating that Plaintiff had been personally served. (*Id.*)

After Plaintiff received a copy of the summons and complaint, he retained counsel to obtain information about the lawsuit. (*Id.* ¶ 32.) Plaintiff's counsel contacted Nelson & Kennard and informed it of the defective service and other defects in the complaint. (*Id.*) Unable to withdraw the original proof of service, Nelson & Kennard allegedly directed its process server to prepare an amended proof of service indicating that it had executed substituted service on Plaintiff at Plaintiff's father's residence. (*Id.* ¶ 33.)

Plaintiff's counsel spent the next several months attempting to persuade Nelson & Kennard to dismiss the suit or provide media showing that Plaintiff did in fact owe the debt. (*Id.* ¶ 34.) According to Plaintiff, only after his counsel threatened to sue Nelson & Kennard for violating the Fair Debt Collection Practices Act (FDCPA) did Nelson & Kennard dismiss its suit. (*Id.*)

On July 31, 2008, Plaintiff filed the present action against, *inter alia*, Collins Financial, Nelson & Kennard, and DFS alleging violations of the FDCPA and the California Rosenthal Act, invasion of privacy, and negligence. (Compl., ECF No. 1.) After multiple rounds of motions and extensive discovery, the Court granted Plaintiff's contested motion for leave to file the operative third amended

1  complaint. (Order, 22, 2010, ECF No. 156.) In addition to the original complaint's claims, the TAC
2  accuses Defendants of violating California Business and Professions Code section 17200 and contains
3  class allegations. (TAC ¶¶ 44–53, 61–68.) The TAC also adds Collins Financial Services USA, Inc.
4  (Collins USA) and Paragon Way as defendants. (*See id.* ¶¶ 7–8.)

## LEGAL STANDARD

6        Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that
7  the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a
8  motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and
9  sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
10 statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not
11 require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-
12 unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009)
13 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's
14 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
15 conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,
16 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice
17 if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949
18 (citing *Twombly*, 550 U.S. at 557).

19       "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
20 as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at
21 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible if the facts pleaded "allow[] the
22 court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,
23 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be
24 probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*
25 Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.
26 *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions"
27 contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's
28 "judicial experience and common sense." *Id.* at 1950 (citation omitted). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

### ANALYSIS[3]

Although Collins's and Nelson & Kennard's motions are nominally separate, Collins and Nelson & Kennard each join in the other's motion. (*See* Collins Mot. 3; N&K Mot. 1.) Accordingly, the Court addresses the motions jointly.

**1.    FDCPA and Rosenthal Act Claims**[4]

Collins raises several arguments in support of its motion to dismiss Plaintiff's FDCPA and Rosenthal Act claims. (*See* Collins Mot. 7–20.) The Court addresses most of these arguments below.

*A.    Validation Letters*

Plaintiff bases his FDCPA and Rosenthal Act claims, in part, on Defendants' alleged mailing of validation letters that named the wrong original creditor on his debt.[5] (*See* TAC ¶¶ 24, 27, 39, 55(e), 55(f), 55(j).) According to Collins, however, the TAC fails to state a claim based on this conduct because (1) Plaintiff does not allege that he received the letters, (2) naming the wrong original creditor was not a "material" misstatement, and (3) the statute of limitations bars claims based on the letters. (Collins Mot. 10–16.) The Court addresses each argument in turn.

*(1)    Receipt of the Letters*

First, Collins argues that the claims based on the validation letters fail because Plaintiff does not allege that he received the letters, and letters that are never received do not constitute "communications" necessary to trigger liability under the FDCPA. (*Id.* at 14–15; Collins Reply 5–7.)

The FDCPA prohibits debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995);

---

[3] Unless otherwise noted, all statutory citations in this section are to Title 15 of the United States Code.

[4] The Court's analysis of these claims mostly focuses on the FDCPA, but it applies equally to the Rosenthal Act, which incorporates the relevant FDCPA provisions. *See* Cal. Civ. Code § 1788.17 ("[E]very debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C. §§ 1692b through 1692j], inclusive of, and shall be subject to the remedies in [15 U.S.C. § 1692k].").

[5] Plaintiff brings his claims based on the validation letters under, "at a minimum," 15 U.S.C. §§ 1692e(2), 1692e(10), 1692f(1), and 1692g(a)(1). (Opp'n to Collins Mot. 7.)

1 *see, e.g.*, § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt"); § 1692f (prohibiting the use of any "unfair or unconscionable means to collect or attempt to collect any debt"). "[T]he purpose of the FDCPA is to protect consumers broadly from improper practices and the statute is to be interpreted liberally for this purpose." *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1305 (E.D. Cal. 2009) (citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171, 1175 (9th Cir. 2006)). It is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Recihert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)) (internal quotation marks omitted). Proof of actual damages is not required for recovery under the FDCPA. *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998).

Clearly, the FDCPA's focus is on a debt collector's conduct, and not on whether a consumer suffers actual damages or is misled. *Cf. Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) (holding that, where FDCPA expressly requires debt collector to send validation of debt notice, receipt of notice is not required). Sections 1692e forbids a debt collector from using "false, deceptive, or misleading" representations or means to collect a debt, including falsely representing the legal status of the debt. And § 1692f broadly proscribes "unfair and unconscionable means to collect a debt," including attempting to collect a debt that is not authorized by law. These statutes don't prohibit debt collectors from making false, deceptive, or misleading representations *to consumers*—they prohibits them from making such representations *at all*. Thus, if a consumer's claim is based on "misstate[ments] or micharacteriz[ations]" in a letter from a debt collector, whether the consumer received the letter is irrelevant. (TAC ¶ 55(f); *see Herrera v. LCS Fin. Servs. Corp.*, — F.R.D. —, 2011 WL 2149084, at *7 (N.D. Cal. June 1, 2011) ("[T]he simple act of mailing letters with allegedly misleading information constitutes a use of such prohibited language, and actual receipt is irrelevant to liability under the FDCPA." (internal quotation marks and citation omitted)); *Irwin v. Mascott*, 96 F. Supp. 2d 968, 976 (N.D. Cal. 1999) ("A debt collector violates the FDCPA by *sending* a notice containing unlawful provisions. Whether the notice is received is irrelevant to the issue of liability.").) Strict liability attaches when the debt collector mails the letter and makes the representation. *See Donohue*, 531 F.3d at 1005; § 1692e(10) (prohibiting the use of any false

representation to "*attempt to collect* any debt").

Collins's reliance on *Seaworth v. Messerli*, 2010 WL 3613821, at *5 (D. Minn. Sept. 7, 2010), is misplaced. There, the court concluded that a letter never received did not constitute a "communication" under a provision of the FDCPA not at issue here, § 1692c(a)(1). Sections 1692e and 1692f, by contrast, do not require a "communication"—a mere misleading representation or unconscionable method suffices to establish a debt collector's liability.[6]

The cases cited in Collins's reply also do not "presuppose[] that a 'communication' was received by a consumer," as Collins argues. (Collins Reply 5 (citing, *inter alia*, *Donohue*, 592 F.3d at 1033).) These cases hold that the impact of language alleged to violate the FDCPA is judged according to an objective "least sophisticated debtor" standard. *Donohue*, 592 F.3d at 1033; *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005); *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). Thus, the subjective impact of an allegedly misleading representation on a consumer is irrelevant. If the subjective impact on a consumer is irrelevant, it follows that whether the consumer received the representation is also irrelevant.

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936–38 (9th Cir. 2007), and the cases it relied on are also inapposite. In *Guerrero*, the Ninth Circuit held that the FDCPA does not apply to communications between a debt collector and a consumer's attorney. *Id.* at 938. The court observed that when an attorney is interposed between the consumer and a debt collector, the attorney, rather than the FDCPA, will protect the consumer from the debt collector's fraudulent or harassing behavior. *Id.* at 937. Contrary to Collins's assertion, *Guerrero* does not stand for the proposition that representations never received by a consumer are not subject to the FDCPA. Rather, *Guerrero* simply holds that direct representations to attorneys cannot support FDCPA liability because attorneys are not likely to be misled. *See id.* at 938 ("[A] debtor's attorney does not require the same protections as a debtor himself."). Where, as here, the debt collector attempts to make an allegedly misleading representation directly to a consumer, the "limited exception" that the Ninth Circuit outlined in *Guerrero* simply does not apply. *Donohue*, 592 F.3d at 1032.

---

[6] The Court recognizes that another provision of the FDCPA under which Plaintiff brings his claim based on Defendants' alleged mailing of validation letters does require a "communication. (TAC ¶ 55(f) (citing § 1692g).) This provision is addressed *infra*.

Defendants allegedly attempted to use false and misleading representations to collect a debt from Plaintiff. The Court cannot hold, as a matter of law, that Defendants are free from liability under the FDCPA because, by chance, their representations never reached Plaintiff. Accordingly, the Court finds that the TAC states a claim under §§ 1692e and 1692f even though Plaintiff does not allege that he received the allegedly misleading validation letters.

*(2)    Materiality*

Second, Collins argues that the claims fail because, "even if Defendants misidentified the original creditor in their letters . . , this was not a 'material' misrepresentation in connection with collecting a debt." (Collins Mot. 11.)

An allegedly false or misleading representation is not actionable under the FDCPA unless it is material. *Donohue*, 592 F.3d at 1033 (citing *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)). A representation is material if "the least sophisticated debtor would likely be misled by a communication." *Id.* The materiality requirement is "not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 1034. Materiality is a fact-specific issue that should ordinarily be left to the trier of fact. *In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989).

The Court cannot hold, as a matter of law, that the hypothetical least sophisticated debtor would not be misled by a letter misstating the name of the original creditor. The misstatement here, unlike the misstatement in *Donohue*, was more than a "mere technical falsehood." 592 F.3d at 1034. "To preserve the protections and policies of the FDCPA, it is important to know the proper identity of the creditor. Knowing a creditor's identity allows the 'least sophisticated consumer' to make more informed decisions on how to communicate with the creditor and avoid being misled." *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 996 (D. Ariz. 2010). Plaintiff knew that he had an account with CIT. Thus, it would be important for the least sophisticated debtor in Plaintiff's shoes to know whether Paragon Way and Nelson & Kennard were trying to collect on a debt arising out of an account with CIT or another creditor. If the former, the least sophisticated debtor would have gathered available proof to establish that he had paid the obligation in full. If the latter, the least

sophisticated debtor may have assumed that the collection attempts were mistakes on Paragon Way's and Nelson & Kennard's parts and simply ignored them. Thus, misstating the original creditor unquestionably could "frustrate a consumer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034.

Collins attempts to distinguish the cases cited in Plaintiff's opposition by noting that, there, the debt collectors misrepresented the identity of the *current creditor*, whereas here, "Defendants' letters . . . correctly identified the current creditor." (Collins Reply 9.) The Court sees this as a distinction without a difference. In fact, the identity of the original creditor is arguably more important, for the Court can conceive of nary a situation more confusing than receiving a dunning letter identifying an original creditor to whom the consumer never was indebted. Accordingly, the Court concludes that the TAC contains sufficient allegations of materiality to submit the question to a jury.

*(3)   Statute of Limitations*

Third, Collins argues that the claims fail because, "[e]ven if [Plaintiff] had received the letters, any claims based on the letters would be barred by the one year statute of limitations." (Collins Mot. 15.)

A one-year statute of limitations applies to FDCPA and Rosenthal Act claims. § 1692k(d); Cal. Civ. Code § 1788.30(f). The discovery rule applies to claims under the FDCPA, so the limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Magnum v. Action Collection Serv.*, 575 F.3d 935, 940 (9th Cir. 2009) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998)) (internal quotation marks omitted).

Based on the facts as Plaintiff alleges them, the first time that he reasonably could have become aware of the allegedly false and misleading representations in Defendants' letters was when his father was served with summons and complaint in the state court lawsuit in October 2007. (TAC ¶ 31.) At that point, Plaintiff was on notice that Defendants were attempting to collect a debt that Plaintiff purportedly owed to AIB, and an investigation likely would have revealed—and in fact did reveal—Defendants' letters. Accordingly, Plaintiff's claims based on the letters, as alleged in the

TAC, were timely when filed in July 2008.

For the reasons stated, the Court finds that the TAC states a claim under, at a minimum, §§ 1692e and 1692f based on Defendants' alleged mailing of validation letters that named the wrong original creditor on his debt. Collins's motion to dismiss the TAC to that extent is **DENIED**.

**B.     Section 1692g**

Plaintiff also alleges that Collins violated § 1692g "by sending validation letters to debtors that misstate or mischaracterize the original debt, including naming the wrong original creditor." (TAC ¶ 55(f).) Collins argues that the claims under this provision fail because Plaintiff has not identified an "initial communication" sufficient to trigger § 1692g. (Collins Mot. 16–17.)

"Within five days after the *initial communication* with a consumer in connection with the collection of any debt," the debt collector must send the consumer a validation letter containing certain information regarding the debt. § 1692g(a) (emphasis added). This information includes the amount of the debt, the name of the creditor, and various statements regarding procedures for verifying or disputing the debt. § 1692g(a)(1)–(5). "Communication" as used in the FDCPA means "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2).

Here, Plaintiff alleges that Paragon Way unsuccessfully attempted to contact him by telephone on July 17, 2006. (TAC ¶ 24.) And Plaintiff alleges that Nelson & Kennard first attempted to contact him by unsuccessfully sending a validation letter. (*Id.* ¶ 27.) But because Plaintiff did not receive either Paragon Way's unsuccessful telephone call or Nelson & Kennard's unsuccessful validation letter, neither "convey[ed] . . . information regarding a debt directly or indirectly to" Plaintiff. § 1692a(2); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 273 (11th ed. 2007) (defining "convey" as "to impart or communicate by statement"). Hence, they were not "initial communication[s]" under the statute. § 1692g(a); *see Seaworth*, 2010 WL 3613821, at *5. As such, § 1692g's validation of debt requirement was never triggered, and Plaintiff cannot pursue claims regarding the validation letters' content under that provision.[7] Because the TAC fails to state a claim under § 1692g, Collins's

---

[7] As stated *supra*, Plaintiff nevertheless can pursue claims regarding the validation letters' content under §§ 1692e and 1692f.

motion to dismiss the TAC to that extent is **GRANTED**.

C.     **State Court Complaint**

Plaintiff also bases his FDCPA and Rosenthal Act claims, in part, on Defendants' filing and service of the state court complaint. According to Plaintiff, this conduct violated "[a]t a minimum . . . § 1692e(2), "which prohibits the false representation of . . . the character, amount, or legal status of any debt." (Opp'n to Collins Mot. 14.) According to Collins, however, the TAC fails to state a claim based on this conduct because (1) Defendants did not directly serve Plaintiff with the summons and complaint, and (2) Defendants cannot be liable for the process server's allegedly improper conduct. The Court addresses each argument in turn.

*(1)     Receipt of the Complaint*

First, Collins argues that the claims based on the state court complaint fail because Plaintiff does not allege that he was served with the complaint, and "[w]here a consumer is not served with a document . . , that document cannot constitute a communication for the purposes of the FDCPA." (Collins Mot. 17.)

Collins's argument is based on the same overly narrow reading of the FDCPA that the Court identified above. Section 1692e makes debt collectors strictly liable for "false, deceptive, or misleading representations . . . in connection with the collection of any debt," regardless of whether the targeted consumer receives the representations. Section 1692f similarly focuses on a debt collector's conduct. Thus, strict liability attached when Collins served the complaint on Plaintiff's father and made the allegedly false representations contained therein. Accordingly, the Court finds that the TAC states a claim under §§ 1692e and 1692f even though Plaintiff does not allege that he was served with the complaint.

*(2)     Process Server's Conduct*

Second, Collins argues that the claim based on service of the state court complaint fails because "[t]he process server was not acting as a 'debt collector' and cannot be held liable under the FDCPA for delivering the complaint to [Plaintiff's] father." (Reply 11.) Because the process server cannot be held liable under the FDCPA or the Rosenthal Act, Collins reasons, "Defendants cannot be held vicariously liable" under either statute for the process server's conduct. (*Id.*)

Contrary to Collins's argument, however, Plaintiff does not seek to hold Defendants vicariously liable for the process server's conduct. Rather, Plaintiff alleges that Defendants improperly communicated with Plaintiff's father by directing service of the state court complaint on him at an address where Plaintiff never resided. (TAC ¶¶ 28, 31, 33, 55(a); *see* § 1692c(b) (prohibiting communication with third parties in connection with the collection of any debt); Cal. Civ. Code § 1788.12(b) (same).) Because "the FDCPA defines a 'communication' broadly, as 'the conveying of any information regarding a debt' directly *or indirectly* to any person through any medium,'" the Court concludes that the TAC states a claim under § 1692c and California Civil Code section 1788.12(b) based on Nelson & Kennard's alleged indirect communication with Plaintiff's father.[8] (Order 4, Aug. 6, 2009, ECF No. 58.)

For the reasons stated, the Court finds that the TAC states a claim under §§ 1692c, 1692e, and 1692f of the FDCPA and section 1788.12 of the Rosenthal Act based on Defendants' alleged filing and service of the state court complaint. Collins's motion to dismiss the TAC to that extent is **DENIED**.

Plaintiff also alleges that Defendants violated § 1692b "as a result of communications with members of the Class, the Class members' families, and third parties." (TAC ¶ 55(a).) However, Plaintiff does defend this claim against Collins's motion to dismiss, and the Court construes his silence as a concession. Accordingly, Collins's motion to dismiss the § 1692b claim is **GRANTED**.

### D.    *California Civil Code Section 1788.15(a)*

Plaintiff also alleges that Defendants violated section 1788.15(a) of the Rosenthal Act "by pursuing legal actions even though service of process had not been legally effected." (TAC ¶ 58(b).) Collins moves to dismiss this claim because Plaintiff "fails to identify any judicial proceedings that Collins initiated after his attorney made contact with Nelson & Kennard." (Collins Mot. 20.)

Contrary to Collins's argument, the TAC does allege that Defendants "attempt[ed] to collect a consumer debt by means of judicial proceedings when [Defendants knew] that service of process . . .

---

[8] Even assuming, *arguendo*, that Defendants had a "legitimate business need" to effect substituted service on Plaintiff (*see* Collins Mot. 19 (citing Cal. Civ. Code § 1788.12(e)), Plaintiff alleges that Defendants knew or should have known that Plaintiff did not reside with his parents (*see* TAC ¶¶ 28, 31, 33). It follows that Defendants had no legitimate business need to communicate with Plaintiff's father at the Lawn View Drive address to effect substituted service.

1  [had] not been legally effected." Cal. Civ. Code § 1788.15(a). Specifically, the TAC alleges that,
2  after being informed of the defective service, Nelson & Kennard directed the process server to
3  "prepare an amended proof of service declaring, under penalty of perjury, that Plaintiff had been sub-
4  served." (TAC ¶ 33.) By doing so, Nelson & Kennard allegedly attempted to maintain a judicial
5  proceeding to collect a debt even though it knew that service of process had not been legally effected.
6  Accordingly, Collins's motion to dismiss the claim under section 1788.15(a) of the Rosenthal Act is
7  **DENIED**.

### E. *Meaningful Involvement*

Plaintiff also alleges that Defendants violated the FDCPA and Rosenthal Act "[b]y failing to be meaningfully engaged in the collection of debts." (TAC ¶¶ 38, 55(I).) According to Collins and Nelson & Kennard, the Court should dismiss this claim because the Ninth Circuit has not adopted the "meaningful involvement" rule and, even if it had, the TAC's allegations do not support a meaningful involvement claim.[9] (Collins Mot. 13–14; N&K Mot. 12–14.)

The Court previously abstained from deciding whether to adopt the meaningful involvement rule. (Order 8–9, Aug. 6, 2009.) At this juncture, the Court does not have that luxury. Because Nelson & Kennard has not identified a single authority *rejecting* the meaningful involvement rule, and in light of the persuasive authority on the subject, the Court adopts the rule "that an attorney must have meaningful involvement if he or she signs a collection letter." *Palmer v. Stassinos*, 2009 WL 86705, at *6 (N.D. Cal. Jan. 9, 2009).

Section 1692e(3) proscribes "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." Generally, this provision "prohibits a debt collector from using an attorney's status to add to the force of its collection letters, unless the attorney is actually involved in the collection effort to the extent implied by the letter." *Irwin v. Mascott*, 112 F. Supp. 2d 937, 948 (N.D. Cal. 2000); *see Avila*, 84 F.3d at 228–29 (holding that mailing of dunning

---

[9] Nelson & Kennard further argues that the Court should dismiss the meaningful involvement claim because Plaintiff does not allege that Defendants violated § 1692e(3)—the provision from which the meaningful involvement doctrine springs. (N&K Mot. 12; *see Avila v. Rubin*, 84 F.3d 222, 228–29 (7th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314, 1320–21 (2d Cir. 1993).) However, the Court finds Plaintiff's allegation that Defendants violated the FDCPA and Rosenthal Act "[b]y failing to be meaningfully engaged in the collection of debts" sufficient to put Defendants on notice that he was bringing a meaningful involvement claim. (TAC ¶¶ 38, 55(I).)

1 letters on attorney's letterhead violated, *inter alia*, § 1692e(3) where attorney did not have personal involvement in mailing of letters or review debtors' files); *Clomon*, 988 F.2d at 1320 (finding violation of § 1692e(3) where "collection letters were not 'from' [attorney] in any meaningful sense of that word"); *Holsinger v. Wolpoff & Abramson, LLP*, 2006 WL 2092632, at *12 (N.D. Cal. July 27, 2006) (denying summary judgment on § 1692e(3) claim where defendant failed to present evidence that attorney reviewed debtor's file and gained knowledge about his debt). However, whether an attorney's lack of meaningful involvement in the collections process violates the FDCPA depends on the facts and circumstances of the individual case. *See Taylor v. Quall*, 471 F. Supp. 2d 1053, 1061 (C.D. Cal. 2007) (rejecting contention that "there is some general standard under the FDCPA for adequate attorney involvement in debt collection actions").

Here, the TAC alleges that "Nelson & Kennard's attorneys are not meaningfully involved in the collection process." (TAC ¶ 42.) Specifically, Plaintiff avers that Nelson & Kennard prepares lawsuits and collection letters "en masse," and its attorneys "sign the lawsuits and collections letters without doing anything to verify that the information contained therein is true and correct." *Id.* Thus, the TAC alleges that letters mailed and lawsuits filed under Nelson & Kennard's cover are "not 'from' [Nelson & Kennard's attorneys] in any meaningful sense of that word." *Clomon*, 988 F.2d at 1320.

Taking these allegations as true, as the Court must at the pleading stage, they make out a prototypical claim for violation of § 1692e(3) against Nelson & Kennard. Accordingly, Nelson & Kennard's motion to dismiss the meaningful involvement claim is **DENIED**. However, because Plaintiff does not defend this claim as to Collins, Collins's motion to dismiss the meaningful involvement claim against it is **GRANTED**.

**2.   Other State-Law Claims**

Besides the FDCPA and Rosenthal Act claims, the TAC asserts claims for violation California Business and Professions Code section 17200, invasion of privacy, and negligence. Nelson & Kennard variously asserts that these claims fail because (1) they are barred by the litigation privilege, (2) Nelson & Kennard acted reasonably in handing Plaintiff's account, and (3) Defendants never contacted Plaintiff or furnished inaccurate information about him to credit reporting agencies. (N&K Mot. 6–11.) The Court addresses each of these arguments in turn.

A.     *Litigation Privilege*

First, Nelson & Kennard asserts that Plaintiff's state-law claims fail because they "all arise out of communications made by Nelson & Kennard in anticipation of or during the state court collection action." (N&K Mot. 6.) Consequently, Nelson & Kennard submits that the claims are barred by the litigation privilege. (*Id.* at 6–9.)

Plaintiff concedes that "Nelson & Kennard's filing of the state-court complaint is probably an act protected by the litigation privilege." (Opp'n to N&K Mot. 4 n.2.) Nevertheless, Plaintiff maintains that Nelson & Kennard's debt collection letters do not fall within the litigation privilege. (*Id.* at 5 (citing *Welker v. Law Office of Horwitz*, 626 F. Supp. 2d 1068, 1073 (S.D. Cal. 2009).) Apparently conceding that its debt collection letters are not privileged, Nelson & Kennard rejoins that Plaintiff's claims based on the letters fail because the TAC does not allege any injury arising out of the letters. (N&K Reply 3–5.)

The problem with the latter contention is that Nelson & Kennard raised it for the first time in its reply, thereby depriving Plaintiff of an opportunity to respond. Accordingly, the Court considers the argument waived and declines to address it here. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."). However, because Plaintiff grudgingly concedes that the litigation privilege protects Nelson & Kennard's filing of the state court complaint, Nelson & Kennard's motion to dismiss the state-law claims to that extent is **GRANTED**.

B.     *Negligence*

Next, Nelson & Kennard moves to dismiss Plaintiff's negligence claim on the ground that it "acted reasonably and did not breach any duty of care owed to [Plaintiff]." (N&K Mot. 9.) Nelson & Kennard contends that it did not owe Plaintiff any duty of care to "independently verify the validity of his debt before attempting to collect." (*Id.* at 10.)

Contrary to Nelson & Kennard's argument, this Court has previously identified persuasive authority for the proposition that debt collectors owe consumers a duty of reasonable care in the handling of their accounts, which includes the collection of their debts. (Order 9, Nov. 22, 2010 (citing *Colo. Capital v. Ownes*, 227 F.R.D. 181, 188 (E.D.N.Y. 2005)).) Although Nelson & Kennard

1  cites various cases suggesting that *the FDCPA* does not create such a duty (*see* N&K Mot. 10 (citing,
2  *inter alia*, *Clark*, 460 F.3d at 1176–77)), these cases do not speak to whether the facts and
3  circumstances of this case favor imposition of a duty under *California law*, *see Laabs v. S. Cal. Edison*
4  *Co.*, 97 Cal. Rptr. 3d 241, 250 (Cal. Ct. App. 2009). On that basis, Nelson & Kennard's motion to
5  dismiss the negligence claim is **DENIED**.

### C. *Invasion of Privacy*

Finally, Nelson & Kennard contends that Plaintiff's invasion of privacy claim fails to the extent that it is based on intrusion on seclusion and false light theories because Nelson & Kennard never contacted him or furnished inaccurate information about him to credit reporting agencies. (N&K Mot. 10–11.)

Plaintiff's opposition does not offer a defense of these theories, and he therefore concedes the theories by his silence. Rather, Plaintiff defends the invasion of privacy claim only to the extent that it is based on a publication of private facts theory. (Opp'n to N&K Mot. 8–9.) The elements of the public disclosure tort are: "'(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern.'" *Shulman v. Group W Prods., Inc.*, 955 P.2d 469, 478 (Cal. 1998) (quoting *Diaz v. Oakland Tribune, Inc.*, 188 Cal. Rptr. 762, 768 (Cal. Ct. App. 1983)).

Here, Plaintiff alleges that Defendants disclosed private facts about him by mailing a validation letter to his parents' house on Port Renwick. (Opp'n to N&K Mot. 9 (citing TAC ¶ 24).) The problem with this argument is that the TAC does not allege that Plaintiff's parents actually *read* the letter, and accordingly, the first element of the disclosure tort—public disclosure—is not met.[10] (*See* TAC ¶ 24 (alleging that Paragon way "supposedly sent" a validation letter to Plaintiff's parents' house).) Because the TAC fails to state an invasion of privacy claim under any theory, Nelson & Kennard's motion to dismiss the invasion of privacy claim is **GRANTED**.

//

---

[10] Indeed, if the TAC did allege that Plaintiff's parents read Paragon Way's July 2006 letter, it would undermine the Court's conclusion both above and in prior Orders that the earliest Plaintiff could have become aware of the allegedly false and misleading statements in Defendants' letters was when his father was served with summons and complaint in the state court lawsuit in October 2007. (*See supra* Part 1.A.3; Order 9, Nov. 22, 2010; Order 14, Aug. 6, 2009.)

**CONCLUSION**

For the reasons stated, Defendants' motions to dismiss are **GRANTED** as to the following claims, which are **DISMISSED WITH PREJUDICE**: (1) Plaintiff's claims under 15 U.S.C. §§ 1692b and 1692g; (2) Plaintiff's claim that Collins violated the FDCPA and Rosenthal Act by failing to be meaningfully involved in the collection of debts; (3) Plaintiff's claims against Nelson & Kennard for violation of California Business and Professions Code section 17200 and negligence, to the extent that they are based on Nelson & Kennard's filing of the state court complaint; and (4) Plaintiff's invasion of privacy claim. As to their remainder, Defendants' motions are **DENIED**.

**IT IS SO ORDERED.**

DATED: July 26, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge