1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| DAVID TOURGEMAN, | CASE NO. 08-CV-1392 JLS (NLS) |
| Plaintiff, | **ORDER: DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| vs. | |
| COLLINS FINANCIAL SERVICES, INC.; NELSON & KENNARD; DELL FINANCIAL SERVICES, L.P.; PARAGON WAY, INC.; COLLINS FINANCIAL SERVICES USA, INC.; et al., | (ECF No. 183) |
| Defendants. | |

18        Presently before the Court is Plaintiff David Tourgeman's motion for class certification.  (ECF

19   No. 183.)  Plaintiff seeks to certify four subclasses variously alleging claims for negligence, invasion

20   of privacy, violation of California Business and Professions Code section 17200, violation of

21   California's Rosenthal Act, and Violation of the Fair Debt Collection Practices Act against all or some

22   of Defendants Collins Financial Services, Inc.; Collins Financial Services USA, Inc.; Paragon Way,

23   Inc.; Nelson & Kennard; and Dell Financial Services, L.P..  (*See* Mem. ISO Class Cert. Mot. 21–22,

24   ECF No. 183-1.)  The claims arise from Dell Financial Services' sale of certain charged-off debts to

25   Collins Financial Services, and Collins Financial Services, Collins Financial Services USA, Paragon

26   Way, and Nelson & Kennard's efforts to collect those debts.  (*See generally* TAC ¶¶ 16–43, ECF No.

27   157.)  Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's motion.

28

**FACTUAL BACKGROUND**[1]

1.     **Debt Sale and Portfolio**

Defendant Dell Financial Services (DFS) is a Delaware limited liability corporation with its principal place of business in Texas.  (Towns Decl. ISO DFS' Opp'n ¶ 3, ECF No. 201.)  DFS arranges for and services the financing for customers who wish to purchase Dell-branded computers on credit.  (*Id.*)

In July 2006, DFS sold a portfolio of 85,292 charged-off debts—including Plaintiff's purported debt—to debt-collection firm Collins Financial Services (Collins) for pennies on the dollar.  (Pl.'s Notice of Lodgment (NOL) Ex. 7, at 7.2, ECF No. 183-11; *id.* Ex. 8, at 8.29, ECF No. 183-12.)  As part of the sale, DFS electronically provided Collins with demographic information regarding the accounts in the portfolio.  (Collins Dep. 26–27, ECF No. 183-37; Towns Dep. 160–61, Feb. 16, 2011, ECF No. 183-43; *see* Pl.'s NOL Ex. 10.)  However, the electronic media did not identify the original creditor for any account in the portfolio.  (Collins Dep. 26–27; Towns Dep. 160–61, Feb. 16, 2011.)

Various people involved in the debt sale had various understandings regarding the identity—or identities—of the original creditor—or creditors—for the accounts in the portfolio.  As part of the sales process, DFS advertised that DFS "with CIT Bank" (CIT) originated the accounts in the portfolio.  (Pl.'s NOL Ex. 9, at 9.2.)  Collins's current general counsel, Patricia Baxter, testified that she understood that American Investment Bank, N.A. (AIB) was the original creditor for every account in the portfolio because DFS provided Collins Services with a blank exemplar loan agreement listing AIB as the issuing bank.  (Baxter Dep. 64–65, ECF No. 183-44.)  Walt Collins testified that he understood that DFS originated every account in the portfolio.  (Collins Dep. 27–28.)  And Erin Towns, DFS' senior recovery manager (Towns Decl. ISO DFS' Opp'n ¶ 2), testified that the portfolio contained accounts originated by DFS, CIT, and AIB (Towns Dep. 156, Feb. 16, 2011).

The account purchase agreement between Collins and DFS allowed Collins to request limited account media—applications, agreements, terms and conditions, and the like—for a limited period of time.  (Pl.'s NOL Ex. 8, at 8.12 to .13.)  As Collins received media, it noticed "major red flags" in

---

[1]  The Court has discussed the factual underpinnings of Plaintiff's individual claims at length.  (*See, e.g.*, Order 2–4, July 26, 2011, ECF No. 230.)  Accordingly, they are not repeated here.

1   the portfolio.  (Collins Dep. 57.)  These red flags included (1) inclusion of accounts in the portfolio

2   that were part of a class action, (2) DFS' reporting of inaccurate information to credit bureaus,

3   (3) DFS' mailing of letters stating incorrect balances, (4) "an inordinate amount of debtor discontent,"

4   and (5) incorrectly identified originators."  (*Id.* at 65.)  DFS also provided Collins with inaccurate

5   media, including loan agreements misidentifying AIB as the originator of numerous debts.[2]  (Towns

6   Dep. 106–08, Sept. 8, 2010, ECF No. 183-41; Towns Dep. 179, Feb. 16, 2011; Pl.'s NOL Exs. 12–13,

7   ECF Nos. 183-16 to -17.)  Paragon Way was told that DFS misidentified the originator of some 3200

8   accounts.  (Pl.'s NOL Ex. 11, at 11.2, ECF No. 183-15.)

9       Eventually, senior management at Collins and DFS met to discuss the problems with the

10  portfolio.  (Collins Dep. 36–38.)  After the meeting, on January 25, 2007, DFS provided Collins with

11  the criteria that it used to determine the originators of the accounts in the portfolio.  (Pl.'s NOL Ex.

12  15.)  And the parties ultimately entered into a settlement and release agreement whereby DFS agreed

13  to pay Collins $200,000 and increase the amount of free account media available to Collins.  (Pl.'s

14  NOL Ex. 17, at 17.1 , 17.66 to .67, ECF No. 183-21.)

15  **2.       Collection Efforts**

16      Before the debt sale closed, Collins transferred the account information it received from DFS

17  to Paragon Way (Knauer Dep. 23-24, ECF No. 183-45), Collins's debt collection arm (Collins Dep.

18  35).  Paragon Way sent 256,458 letters to 49,939 account holders, all stating that AIB was the original

19  creditor on the accounts.  (Levy Dep. 19, 25–26, ECF No. 183-46; *see, e.g.*, Alsdorf Decl. ISO DFS'

20  Opp'n Exs. C–E, ECF Nos. 202-3 to -5 (Paragon Way's letters to Plaintiff).)

21      Paragon Way spent between six months and a year trying to collect the accounts in the

22  portfolio, after which Paragon Way referred the uncollectible accounts to law firms.  (Knauer Dep.

23  74–75.)  Paragon Way then referred "slightly over" 2000 accounts to Nelson & Kennard.  (Kennard

24  Dep. 53, Sept. 17, 2010, ECF No. 183-38.)  Nelson & Kennard attempted to collect the accounts for

25  Collins by sending letters to account holders and filing collection lawsuits.  (*See* Pl.'s NOL Exs. 5,

26  _____

27      [2] It is unclear whether DFS incorrectly identified CIT accounts as AIB accounts (Towns Dep.
    106–08, Sept. 8, 2010, ECF No. 183-41) or whether DFS incorrectly identified AIB accounts as CIT
28  accounts (Towns Dep. 179, Feb. 16, 2011).  Ms. Towns, it seems, can never keep her story straight.
    (*See* Order 2–6, Nov. 22, 2010 (striking Ms. Towns's deposition errata sheet).)

1  22–26, ECF Nos. 11, 26–30.)

2  **PROCEDURAL BACKGROUND**

3  On July 31, 2008, Plaintiff filed the present action against, *inter alia*, Collins, Nelson &

4  Kennard, and DFS alleging violations of the FDCPA and the California Rosenthal Act, invasion of

5  privacy, and negligence. (Compl., ECF No. 1.)  After multiple rounds of motions and extensive

6  discovery, the Court granted Plaintiff's contested motion for leave to file the operative third amended

7  complaint. (Order, Nov. 22, 2010, ECF No. 156.)  In addition to the original complaint's claims, the

8  TAC accuses Defendants of violating California Business and Professions Code section 17200 (the

9  UCL) and contains class allegations. (TAC ¶¶ 44–53, 61–68, ECF No. 157.)  The TAC also adds

10  Collins Financial Services USA (Collins USA) and Paragon Way as defendants. (*See id.*)

11  Soon after Plaintiff filed the TAC, the Collins, Collins USA, Paragon Way, and Nelson &

12  Kennad (collectively, the Debt Collectors) moved to dismiss the TAC.[3] (ECF Nos. 165, 166.)  Before

13  the hearing on the instant motion, the Court issued a written order granting the motions to dismiss in

14  part and denying them in part. (Order, July 26, 2011.)  Specifically, the Court dismissed Plaintiff's

15  negligence and UCL claims to the extent that they were based on Nelson & Kennard's filing of the

16  state court complaint; dismissed Plaintiff's FDCPA and Rosenthal Act claims to the extent that they

17  were based on 15 U.S.C. §§ 1692b and 1692g; dismissed Plaintiff's meaningful involvement claim

18  against Collins, Collins USA, and Paragon Way; and dismissed Plaintiff's invasion of privacy claim

19  in its entirety. (*Id.* at 17.)

20  **LEGAL STANDARD**

21  Class actions are governed by Federal Rule of Civil Procedure 23.  A party seeking to certify

22  a class bears the burden of demonstrating that each of the four requirements of Rule 23(a) and at least

23  one of the requirements of Rule 23(b) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

24  1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified only if:

25  
26  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

27  _____

28  [3] The Debt Collectors actually filed two separate motions.  One motion was filed by Collins, Collins USA, and Paragon Way. (Collins Mot., ECF No. 165.)  The other was filed by Nelson & Kennard. (N&K Mot., ECF No. 166.)

1   representative parties will fairly and adequately protect the interests of the class.

2   While Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule

3   implies this requirement. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal.

4   2010).   Additionally, a proposed class must satisfy one of the three subdivisions of Rule 23(b).

5   Relevant here, Rule 23(b)(3) permits certification if "questions of law or fact common to class

6   members predominate over any questions affecting only individual class members," and "a class

7   action is superior to other available methods for fairly and efficiently adjudicating the controversy."

8        "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must

9   affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that

10   there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart*

11   *Stores, Inc. v. Dukes*, — U.S. —, 131 S. Ct. 2541, 2551 (2011).  Although these inquiries "might

12   properly call for some substantive inquiry," the court may not go so far as to judge the validity of the

13   moving party's claims. *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Service*

14   *Workers Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).  "However,

15   although the [c]ourt may not require preliminary proof of the claim[s], it need not blindly rely on

16   conclusory allegations which parrot Rule 23 requirements."  *In re TFT-LCD*, 267 F.R.D. at 299

17   (internal quotation marks omitted).  If the court concludes that the moving party has carried its burden,

18   then the court has "broad discretion" to certify the class. *Zinser*, 253 F.3d at 1186.

19                                      **ANALYSIS**

20   **1.      Rule 23(a) Requirements**

21   *A.      Class Definitions*

22        Although it is not explicitly spelled out in Rule 23, an adequate class definition is a

23   prerequisite to class certification. *In re TFT-LCD*, 267 F.R.D. at 299.  "A class definition is sufficient

24   if the description of the class is 'definite enough so that it is administratively feasible for the court to

25   ascertain whether an individual is a member.'"  *Id.* (quoting *O'Connor v. Boeing N. Am., Inc.*, 184

26   F.R.D. 311, 319 (C.D. Cal. 1998)).  This ascertainability requirement is met "if [the class's] members

27   can be determined by reference to objective criteria." *Id.* (quoting *Zapka v. Coca-Cola Co.*, 2000 WL

28   1644539, at *2 (N.D. Ill. Oct. 27, 2000)) (internal quotation marks omitted).  However, if the court

must make a determination of the merits of individual claims to determine a class's membership, the class definition is inadequate. *Herrera v. LCS Fin. Servs. Corp.*, — F.R.D. —, 2011 WL 2149084, at *3 (N.D. Cal. June 1, 2011).

As noted above, Plaintiff seeks to certify four subclasses. (Mem. ISO Class Cert. Mot. 21–22.) The proposed subclasses and their definitions are as follows:

1. **Negligence class (against all Defendants)**:[4] All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during the period of two years of the date of the filing of this lawsuit, paid money or incurred expenses in response to a collection letter or lawsuit stating that American Investment Bank was the original creditor for the loan.

2. **The UCL class (against all Defendants)**: All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during the period of four years of the date of the filing of this lawsuit, paid money or incurred expenses in response to a collection letter or lawsuit stating that American Investment Bank was the original creditor for the loan.

3. **The FDCPA/Rosenthal Act I Class (against Collins, Collins USA, and Paragon Way)**: All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during the period of one year of the date of the filing of this lawsuit, received a collection letter or were named in a lawsuit stating that American Investment Bank was the original creditor for the loan.

4. **The FDCPA III Class (against Nelson & Kennard)**: All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during the period of one year of the date of the filing of this lawsuit, received a collection letter from Nelson & Kennard or were named in a lawsuit filed by Nelson & Kennard stating that American Investment Bank was the original creditor for the loan.

*(1)* *Overbreadth*

DFS argues that the proposed negligence and UCL classes are impermissibly overbroad "because they include persons . . . who undeniably were *not* harmed by any misidentification" of AIB as their original creditor. (DFS' Opp'n 17, ECF No. 199; *see, e.g., Mazur v. eBay, Inc.*, 257 F.R.D.

---

[4] In Plaintiff's motion, he refers to the first subclass as the "negligence/invasion of privacy class." (Mem. ISO Class Cert. Mot. 21.) Because the Court dismissed Plaintiff's invasion of privacy claim with prejudice after his class certification motion was filed (Order 17, July 26, 2011), Plaintiff cannot represent an invasion of privacy class. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) ("When a named plaintiff has no cognizable claim for relief, 'she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.'" (quoting *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003))). Accordingly, the Court refers to the first subclass as, simply, the "negligence class."

- 6 -

08cv1392

1   563, 567 (N.D. Cal. 2009) (rejecting as imprecise and overbroad class definitions that included non-

2   harmed auction winners).) Specifically, DFS points out that the definitions of the proposed negligence

3   and UCL classes do not distinguish between members of the class who "paid money or incurred

4   expenses" in response to collection letters or lawsuits because they recognized that they still owed

5   money for their purchases, and those who paid only because they were confused by the

6   misidentification of AIB as their original creditor. (DFS' Opp'n 17.)

7          *Mazur* is instructive. There, the plaintiffs filed a putative class action for, *inter alia*, violation

8   of California's Consumer Legal Remedies Act arising out of the defendants' alleged "shill" bidding

9   practices at "live" auctions. 257 F.R.D. at 565, 567. The class was defined as "all persons who won

10  auctions managed by the Seller Defendants and operated through eBay Live Auctions during the class

11  period." *Id.* at 567. The court observed that some of the putative class members may have used

12  eBay's Live Auction service for business purposes, "thereby precluding them from bringing causes

13  of action under the . . . Consumer Legal Remedies Act." *Id.*; *see* Cal. Civil Code § 1761(d). Because

14  the class as defined included non-harmed auction winners, the court concluded that the class definition

15  was both imprecise and overbroad. *Mazur*, 257 F.R.D. at 567; *see also Wolph v. Acer Am. Corp.*, 272

16  F.R.D. 477, 483 (N.D. Cal. 2011) (concluding that class definition was overbroad because it included

17  purchasers who had returned or otherwise disposed of offending product).

18         Here, some of the putative negligence class members may have paid money in response to

19  collection letters because they recognized that they still owed money for their Dell purchases. Those

20  class members were not injured by any misidentification of the original creditor because they would

21  have paid money in response to the collection letters regardless of whether the letters correctly

22  identified the original creditor.[5] Because they were not injured, they cannot bring negligence claims.

23  *See Lopez v. City of L.A.*, 126 Cal. Rptr. 3d 706, 714 (Cal. Ct. App. 2011) ("The elements of a

24

25         [5] In response to another of Defendants' arguments, Plaintiff contends that "every class
    member that paid the Debt Collector Defendants or incurred expenses[] suffered damages because
26  they paid to satisfy a debt, or incurred expenses fighting a debt, that did not exist." (Reply 9.) But
    this is a non sequitur. It is entirely possible that a putative class member (1) received a letter
27  misidentifying AIB as his original creditor, (2) recognized that the letter referred to money he still
    owed for his Dell purchase, and (3) paid money in response to the letter. In that case, so long as
28  Defendants credited the class member's CIT account, the class member paid to satisfy a debt that *did*
    exist and was not damaged.

1   negligence cause of action are duty to use due care and breach of duty, which proximately causes

2   injury."). Accordingly, because the negligence class as currently defined would include non-injured

3   consumers, the class definition is both imprecise and overbroad.

4          Contrary to DFS' argument, however, the proposed UCL class is not overbroad because it

5   includes class members who were not injured by any misidentification of the original creditor. *See*

6   *Cole v. Asurion Corp.*, 267 F.R.D. 322, 332–33 (C.D. Cal. 2010) (rejecting contention that UCL class

7   definition was overbroad because it included non-injured class members). Although "lost money or

8   property" is an element of the putative class members' standing under the UCL, *Kwikset Corp. v.*

9   *Superior Court*, 246 P.3d 877, 885 (Cal. 2011) (citing Cal. Bus. & Prof. Code § 17204), the UCL's

10  standing requirements "are applicable only to the class representative, and not all absent class

11  members," *In re Tobacco II Cases*, 207 P.3d 20, 25 (Cal. 2009); *see Stearns v. Ticketmaster Corp.*,

12  — F.3d —, 2011 WL 3659354, at *5 (9th Cir. Aug. 22, 2011) (approving *Tobacco II* and noting that

13  Ninth Circuit law "keys on the representative party, not all of the class members, and has done so for

14  many years").

15         In *Sevidal v. Target Corp.*, 117 Cal. Rptr. 3d 66, 81–85 (Cal. Ct. App. 2010), which DFS cites

16  in its opposition, the named plaintiff sought to represent a class consisting of "any California

17  consumer who purchased any product from Target.com on or after November 21, 2003 which was

18  identified on Target.com as 'Made in USA,' when such product was actually not manufactured or

19  assembled in the United States." *Id.* at 71. The California Court of Appeal concluded that the

20  plaintiff's proposed class was overbroad because a majority of the class members did not click on an

21  "Additional Info" icon, and thus were never exposed to the alleged misrepresentation. *Id.* at 83.

22  Accordingly, in the language of California Business and Professions Code section 17203, with respect

23  to a majority of the proposed class, "there [was] no doubt [Target] did not obtain any money by means

24  of the alleged UCL violation." *Id.*

25         Here, by contrast, each of the proposed UCL class members, by definition, "paid money or

26  incurred expenses in response to a collection letter or lawsuit [misidentifying] American Investment

27  Bank was the original creditor for the loan." (Mem. ISO Class Cert. Mot. 22.) Each of these class

28  members is "entitled to restitution for money or property 'which may have been acquired' by means

1    of [Defendants' allegedly] unlawful or unfair practice." *Sevidal*, 117 Cal. Rptr. 3d at 82 (quoting Cal.

2    Bus. & Prof. Code § 17203).  And as discussed *infra*, the non-representative class members may

3    recover without individual proof of injury.  Accordingly, the UCL class is not overbroad because it

4    includes non-injured class members.

5    *(2)*    *Ascertainability*

6          DFS also argues that the proposed negligence and UCL classes are unascertainable "because

7    Plaintiff cannot identify with *objective criteria* the class of individuals who, if Plaintiff can prove his

8    allegations, would be entitled to recover from DFS." (DFS' Opp'n 18.)  According to DFS, "Plaintiff

9    has presented no evidence—and there is none—to identify *particular* accounts or groups of accounts,

10   if any, where DFS actually told Collins that a CIT account had been originated by AIB."  (*Id.*)

11         Plaintiff's theory, apparently based on Patricia Baxter's deposition testimony, is that DFS told

12   Collins that every account in the portfolio—and thus every CIT account—had been originated by AIB.

13   (*See* Baxter Dep. 64–65; *see also* Levy Dep. 19, 25–26 (testifying that 49,939 account holders

14   received a letter identifying AIB as the original creditor).  *But see* Pl.'s NOL Ex. 11 (e-mail stating

15   that "over 3,200 accounts"—considerably less than the 85,292 accounts in the portfolio—were

16   misidentified).)  DFS cannot refute this theory because it concedes that it "did not keep records of the

17   'media' (loan documentation) that it supplied to the Debt Collectors post sale."  (DFS' Opp'n 18.)

18   Thus, by applying the criteria that DFS used to determine the originator of the accounts in the

19   portfolio (Pl.'s NOL Ex. 15), it is theoretically possible to determine which CIT accounts that DFS

20   misidentified to Collins as AIB accounts, namely, every CIT account in the portfolio.

21         That it is possible to determine which CIT accounts were misidentified as AIB accounts is but

22   one aspect of the ascertainability analysis, however.  Plaintiff also must identify some method of

23   ferreting out which CIT account holders "paid money or incurred expenses in response to a collection

24   letter or lawsuit stating that American Investment Bank was the original creditor for the loan." (Mem.

25   ISO Class Cert. Mot. 21–22.)  This is problematic because Plaintiff has neither proposed a method for

26   determining nor provided evidence of which CIT account holders fit within the class definition.  *See*

27   *Mazur*, 257 F.R.D. at 567–68 (disavowing reliance on self-identification of class members, "given that

28   plaintiffs were unable to devise any sort of objective system for screening out such persons . . .

themselves").

Nevertheless, whether a putative class member paid money or incurred expenses in response to a collection letter or lawsuit is an objective inquiry that can be answered by asking class members "a single question to determine whether they are entitled to relief." *Wilkerson v. Bowman*, 200 F.R.D. 605, 610 (N.D. Ill. 2001). The question is whether a collection letter or lawsuit from Defendants caused the class member to open his wallet. "This is hardly the kind of 'significant inquiry' that renders a class definition insufficient." *Herrera*, 2011 WL 2149084, at *5 (citing *Deitz v. Comcast Corp.*, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007) (finding class unascertainable where determining membership would require "answering numerous individualized fact-intensive questions")); *see Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 479 (D.N.J. 2009) (finding class unascertainable where determining membership would require court to establish whether potential class members were "billed for an amount that was not due and owing," and would force court "to consider evidence and make credibility determinations regarding the Defendants' intent"). Accordingly, the negligence and UCL classes are ascertainable with respect to whether the class members paid money or incurred expenses in response to a collection letter misidentifying AIB as the original creditor for the loan.

**B.    *Numerosity***

To satisfy Rule 23(a)(1), Plaintiff must show that "the class is so numerous that joinder of all members is impracticable." This provision "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Col. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). "'[W]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *Charlebois v. Angels Baseball, L.P.*, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011) (quoting *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)); *accord Westways Worl Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 233–34 (C.D. Cal. 2003) ("Plaintiffs are not required to quantify with precision the number of class members[.] . . . Plaintiffs may rely on reasonable inferences drawn from the available facts in estimating the size of the class."). As a general rule, classes of forty or more are considered sufficiently numerous. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988).

Defendants contend that Plaintiff has not provided sufficient evidence of numerosity to make the threshold showing that Rule 23(a)(1) requires.  (DFS' Opp'n 16–17; Debt Collectors' Opp'n 6–9, ECF No. 196).  According to Defendants, even if Plaintiff proves his assertion that "the original creditor was misidentified in '[over] 3,200a' of the 85,292 accounts" (Mem. ISO Class Cert. Mot. 24 (quoting Pl.'s NOL Ex. 11)), this does nothing to establish the number of class members who actually received erroneous letters or lawsuits, or who paid money or incurred expenses in response to those letters or lawsuits (DFS' Opp'n 16; Debt Collectors' Opp'n 6–7.)

As to the first three classes—the negligence class, the UCL class, and the FDCPA class against Collins, Collins USA, and Paragon Way—Plaintiff must first demonstrate that numerous consumers for whom CIT was the original creditor on their account received a collection letter or were named in a lawsuit stating that AIB was the original creditor for the loan.  Although the evidence tends to demonstrate that DFS misidentified AIB as the original creditor for "over 3200 accounts" (Pl.'s NOL Ex. 11) and that each account holder would have received at least one collection letter from Paragon Way (Collins Dep. 35–36), there is no evidence regarding how many of the allegedly misidentified accounts—if any—were originated by CIT.  In fact, Plaintiff has made no showing of how many accounts in the *total portfolio* were originated by CIT, let alone how many CIT account holders received a collection letter or were named in a lawsuit misidentifying AIB for their loan.  Without at least some evidence of how many CIT accounts the portfolio contained, the Court cannot reasonably infer that the numerosity requirement is satisfied.

As to the negligence and UCL classes, Plaintiff must make a second showing—that numerous of the CIT account holders that received a collection letter or lawsuit misidentifying AIB as their original creditor also "paid money or incurred expenses in response to" the letter or lawsuit.  But other than himself, Plaintiff has not identified a single such consumer.  Rather, Plaintiff rests on the assertion that "the only reasonable inference from the evidence is that a considerable portion of the more than $15 million that the Debt Collector Defendants collected on the portfolio came from at least 40 people who took out loans from CIT but received a collection letter or lawsuit falsely identifying AIB as the original creditor."  (Reply 2.)

But this is not "the only reasonable inference."  It is equally reasonable to assume that many

1   or most of the CIT account holders who received the offending letters or lawsuits ignored the letters

2   or lawsuits because they did not recognize the original creditor for the subject debt.  Although Plaintiff

3   has not identified how many CIT accounts the portfolio contained, it is likely possible that most or all

4   of the $15 million the Debt Collector Defendants collected came from accounts that DFS and AIB

5   originated.  Simply put, unsupported conjecture is insufficient to boost Plaintiff over the relatively low

6   hurdle set by Rule 23(a)(1).  *See Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999)

7   ("Plaintiffs must show some evidence of or reasonably estimate the number of class members.  Mere

8   speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1).").

9        Finally, as to the FDCPA/Rosenthal Act class against Nelson & Kennard, Plaintiff must show

10   that numerous CIT account holders "received a collection letter from Nelson & Kennard or were

11   named in a lawsuit filed by Nelson & Kennard stating that [AIB] was the original creditor for the

12   loan." (Mem. ISO Class Cert. Mot. 22.)  Again, Plaintiff does not identify a single consumer, other

13   than himself, who received such a collection letter.  At most, the evidence establishes that Paragon

14   Way placed "slightly over" 2000 accounts from the portfolio with Nelson & Kennard for collection.

15   (Kennard Dep. 53.)  However, there is no evidence of which of those 2000 account holders received

16   a case-initiating document or collection letter from Nelson & Kennard, or even which of those 2000

17   account holders were named in a lawsuit or sent a letter.  Nor is there any evidence of which account

18   holders received a letter or complaint misidentifying AIB, rather than CIT, as the original creditor for

19   their account.  Without Plaintiff's assistance, the Court cannot conclude the FDCPA/Rosenthal Act

20   class against Nelson & Kennard is "so numerous that joinder of all members is impracticable."  Fed.

21   R. Civ. P. 23(a)(1).

22        Rule 23(a)(1) does not set a high bar, but it requires more than speculation.  Because Plaintiff

23   has failed to provide evidence regarding critical aspects of his four proposed classes, the Court cannot

24   conclude that the numerosity requirement is satisfied.

25   **C.    *Commonality***

26        Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

27   "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same

28   injury.'"  *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157

1   (1982)).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a

2   common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150

3   F.3d at 1019.

4          Even though the class members need not "share every fact in common or completely identical

5   legal issues," *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010), "[t]heir claims must depend

6   upon a common contention," *Wal-Mart*, 131 S. Ct. at 2551.  "That common contention, moreover,

7   must be of such a nature that it is capable of classwide resolution—which means that determination

8   of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

9   stroke."  *Id.*  Although for purposes of Rule 23(a)(2) [e]ven a single [common] question will do," *id.*

10  at 2556 (alterations in original) (internal quotation marks omitted), "what matters to class

11  certification . . . is not the raising of common questions—even in droves—but, rather, the capacity of

12  a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation," *id.*

13  at 2551 (alteration in original) (internal quotation marks omitted).

14         As to the negligence and UCL classes, the class members have all suffered the same

15  injury—they "paid money or incurred expenses in response to a collection letter or lawsuit stating that

16  [AIB] was the original creditor for the loan." (Mem. ISO Class Cert. Mot. 21–22.) Further, there exist

17  common questions that are capable of classwide resolution and depend on common answers: whether

18  Defendants owed a duty of care in handling the class members' accounts; whether DFS breached that

19  duty in the course of the debt sale by misidentifying CIT accounts as AIB accounts; whether the Debt

20  Collectors breached that duty of care by sending letters or lawsuits misidentifying the original creditor

21  for the class members' accounts; and whether DFS' alleged negligence and the Debt Collectors'

22  alleged negligence, FDCPA violations, and Rosenthal Act violations constituted "unfair" or

23  "unlawful" conduct in violation of the UCL.  Accordingly, as to the negligence and UCL classes,

24  Plaintiff has satisfied the commonality requirement.

25         Similarly, the members of the FDCPA and Rosenthal Act classes have all suffered the same

26  injury—they "received a collection letter or were named in a lawsuit stating that American Investment

27  Bank was the original creditor for the loan." (Mem. ISO Class Cert. Mot. 22.)  As above, these claims

28  depend on common contentions that are capable of classwide resolution: whether the Debt Collectors

1  letters and lawsuits to the class members misidentified the original creditor on the class members'

2  accounts; whether Nelson & Kennard failed to be meaningfully involved in the collection of debts;

3  and whether the Debt Collectors' conduct violated the FDCPA and Rosenthal Act.

4       The Debt Collectors contend that Plaintiff "has not shown that common questions of law or

5  fact exist." (Debt Collectors' Opp'n 9.) But much of the Debt Collectors' argument regarding Rule

6  23(a)(2)'s commonality requirement does not focus on commonality at all; rather, it mostly focuses

7  on ascertainability.[6] (*See, e.g.*, *id.* at 11 ("Tourgeman does not explain how the purported class

8  members class members could be identified without conducting an account-by-account examination

9  of all the collection records, pleadings and payment histories relating to each account.").)  That

10  identification of the class members would require an in-depth examination of Defendants' records is

11  a contention addressed *supra*.

12       The Debt Collectors come closest to broaching the commonality issue in their notice of

13

_____

14      [6] *Parkis v. Arrow Financial Servs., LLS*, 2008 WL 94798 (N.D. Ill. 2008), one of the only
cases that the Debt Collectors properly cite for their contention that commonality is not satisfied, is

15  inapposite. There, the plaintiffs alleged that "Defendants sued for debts after the five year statute of
limitations period had expired and omitted information from court filings regarding the date when the

16  alleged failure to pay occurred . . . in violation of the FDCPA." *Id.* at *4. The court concluded that
the commonality requirement was not satisfied:

17

18       In order to resolve this question of fact, this court would have to look into the payment
     history of each putative class member to determine whether the last payment date or

19       charge-off date was more than five years prior to the filing of the debt-collection suit.
     Because the payment timing and history will be different for each putative class

20       member, his would involve an individualized inquiry for each potential member.

21  *Id.* Here, in contrast, the Court need not conduct an individualized inquiry for each potential class
member in ruling on the merits of their claims. This is because receipt of a collection letter or lawsuit

22  misidentifying AIB as the original creditor for the loan is *an element* of Plaintiff's class definitions.
Thus, every class member will *necessarily* have received such a letter. That the Court must conduct

23  an individualized inquiry to determine who is a *member* of the class is a separate issue relevant to
ascertainability, not commonality.

24      *Wilhelm v. Credico Inc.*, 2008 WL 5110938 (D.N.D. Dec. 2, 2008), is similarly inapposite.
There, the issue was whether the defendant intended to sue plaintiff and the putative class members

25  when it sent them "Notice of Lawsuit" letters. *Id.* at *4. Distinguishing cases in which the plaintiffs
alleged that "the language of the actual letters violated the [FDCPA]," the Court concluded that the

26  commonality requirement was not met because determining whether the defendant violated the
FDCPA would require an individual inquiry into the defendant's intent when it sent each letter. *Id.*

27  Here, at least as to the FDCPA and Rosenthal Act classes, no such inquiry into Defendants' intent is
required—Plaintiff alleges that Defendants are liable for the mere act of sending letters and lawsuits

28  misidentifying AIB as the original creditor for the debt. And as to the negligence class, the Court
concludes *infra* that the presence of some individual issues does not defeat commonality.

1   supplemental authority.  (*See* DFS' Suppl. Mem., ECF No. 228.)  Specifically, the Debt Collectors

2   contend that "[e]ven if Tourgeman had evidence of the identity of debtors who made payments . . .

3   it would be impossible to know why the payments were made, or whether the name of the creditor

4   listed in a letter or a lawsuit from the Defendants was a factor, absent an individualized inquiry into

5   the circumstances of each account."  (*Id.* at 2.)  As to the negligence and UCL classes only, the Debt

6   Collectors' point is well-taken—to determine whether Defendants' alleged breach of duty caused the

7   class members' injury would require an individual inquiry into *why* the class members' paid money

8   or incurred expenses in response to the Debt Collectors' letters.  But the mere presence of some

9   individual issues does not defeat commonality.[7]  *See Wal-Mart*, 131 S. Ct. at 2556 ("[F]or purposes

10  of Rule 23(a)(2) [e]ven a single [common] question will do." (alterations in original).)

11      **D.      Typicality**

12      To satisfy Rule 23(a)(3), Plaintiff must show that his claims are typical of the claims of the

13  class.  The typicality requirement is "permissive" and requires only that the named plaintiff's claims

14  "are reasonably coextensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d

15  1011, 1020 (9th Cir. 1998).  "The test . . . is whether other members have the same or similar injury,

16  whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

17  class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976

18  F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985))

19  (internal quotation marks omitted).  However, "a named plaintiff's motion for class certification

20  should not be granted if there is a danger that absent class members will suffer if their representative

21  is preoccupied with defenses unique to it." *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill*

22  *Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)) (internal quotation marks

23  omitted).

24      The Court concludes that Plaintiff's claims are typical of the claims of the FDCPA and

25  Rosenthal Act classes. Like the class members, Plaintiff financed a computer through CIT.  (TAC

26  ¶ 17.)  And like the class members, the Debt Collectors sent Plaintiff a letter or lawsuit misidentifying

27  ─────────────────

28      [7]  The presence of individual issues is salient, however, to the Court's inquiry under Rule 23(b)(3). *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry[ is] the balance between individual issues.").

1    AIB as the original creditor for his loan.  (*Id.* ¶¶ 24, 27, 29.)

2          Defendants identify various factors that supposedly render Plaintiff's claims atypical of the

3    FDCPA and Rosenthal Act class members' claims.  Defendants point out that Plaintiff did not receive

4    the Debt Collectors' letters (DFS' Opp'n 19; Debt Collectors' Opp'n 13), that he was never served

5    with the summons and complaint in the state court lawsuit (Debt Collectors' Opp'n 13), and that he

6    never made any payments to Defendants (*id.* at 14 n.12).[8]  But these facts do not make Plaintiff

7    atypical because his claims are "reasonably co-extensive" with those of the class members.  *Hanlon*,

8    150 F.3d at 1020.  Moreover, it is not necessary that "all class members suffer the same injury as the

9    class representative."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).

10         As to the negligence and UCL classes, Defendants emphasize Plaintiff's allegation that he paid

11   his debt in full.  (Debt Collectors' Opp'n 14; DFS' Opp'n 20.)  This allegation is troublesome because

12   it suggests that Plaintiff "did not incur expenses because of any confusion caused by the name of the

13   creditor." (Debt Collectors' Opp'n 14.)  It suggests, instead, that Plaintiff incurred expenses to defend

14   against a claim on a debt that he allegedly had satisfied.  (*See* TAC ¶ 32 ("Plaintiff's lawyer quickly

15   contacted Nelson & Kennard and informed them of the defective service and other defects with the

16   complaint, *including that Plaintiff had paid his debt in full . . . .*" (emphasis added).)  Defendants'

17   misrepresentation of the original creditor's identity is central to Plaintiff's claims that Defendants

18   breached a duty of care owed to the class members (TAC ¶¶ 70, 72), and that they acted unfairly and

19   unlawfully in violation of the UCL (TAC ¶¶ 64, 66).  If Plaintiff incurred expenses for reasons

20   unrelated to Defendants' misrepresentation of the original creditor's identity, he would be subject to

21   a unique defense that Defendants' breach of duty and unfair and unlawful conduct did not cause his

22   injury.

23         Because of Plaintiff's unique circumstances, "it is predictable that a major focus of the

24   litigation will be on a defense unique to him."  *Hanon*, 976 F.2d at 509.  Accordingly, as to the

25

26

27

28         [8] The Debt Collectors also assert that Plaintiff would be subject to "unique defenses" based
on these facts. (Debt Collectors' Opp'n 13.)  However, the Court conclusively rejected these defenses
in ruling on Collins's motion to dismiss.  (*See* Order 5–8, 11, July 26, 2011.)

negligence and UCL claims, where causation is at issue,[9] Plaintiff fails to satisfy the typicality requirement of Rule 23(a)(3). *See Deitz*, 2007 WL 2015440, at *5 (finding named representative atypical because he would be subject to the unique defense that he had not read "the very documents [that he claimed] were misleading to Comcast subscribers").

**E.   Adequacy**

Rule 23(a)(4) requires that the named representative must fairly and adequately protect the interests of the class.  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1011.  Although honesty, conscientiousness, and other affirmative personal qualities bear on whether a named individual is an adequate class representative, "unsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation. " *Herrera*, 2011 WL 2149084, at *11 (quoting *Byes v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421, 427 (E.D. La. 1997)) (internal quotation marks omitted).

As to the negligence and UCL classes only, the Court must answer the first *Hanlon* question in the affirmative.  This is because, as discussed above, Plaintiff is subject to the unique defense that Defendants' misidentification of the original creditor for his debt did not cause his injury.  This defense gives rise to a conflict of interest that prevents Plaintiff from adequately representing the interests of the class.  *See Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 557 (D. Idaho 2010) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) (internal quotation marks omitted))).

As to the remaining classes, DFS contends that Plaintiff would face "intense scrutiny" for his various "fabrications and exaggerations." (DFS' Opp'n 20.) DFS claims that Plaintiff has "credibility

---

[9]  Causation is an element of Plaintiff's negligence claim, *Lopez*, 126 Cal. Rptr. 3d at 714 (noting that negligence requires breach of duty "which proximately causes injury"), and it is a necessary prerequisite to Plaintiff's standing under the UCL, *Kwikset*, 246 P.3d at 887 ("Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair competition . . . ." (citing Cal. Bus. & Prof. Code § 17204)); *Tobacco II*, 207 P.3d at 25–26 (holding that class representative must comply with Proposition 64's standing requirement).

1  problems" because (1) "he falsely told DFS he lived in Chula Vista so they would ship him a computer

2  on credit"; (2) his father denies that he suffered distress after being served by a uniformed officer;

3  (3) he cannot document any payments that DFS failed to record; and (4)  his damages claims are

4  "doubtless inflated."  (*Id.* at 20–21.)

5          Contrary to DFS' contention, Plaintiff's purported "credibility problems" do not render him

6  an inadequate class representative.  The first three issues that DFS has identified are collateral matters

7  not at issue in this litigation.  *Cf. Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)

8  (concluding that "serious concerns" as to named plaintiff's credibility rendered him inadequate

9  because he "repeatedly changed his position" as to whether he received "the letters that form[ed] the

10  very basis for his lawsuit").  The only supposed credibility problem that is directly implicated in this

11  litigation is Plaintiff's "doubtless inflated" damage claim.  But this argument lacks substance because

12  DFS has proffered no evidence that would contradict Plaintiff's assertions.  Accordingly, the Court

13  is satisfied that Plaintiff would vigorously prosecute the action on behalf of the class.

14          The Debt Collectors, for their part, resort to the specious argument that "Tourgeman has not

15  shown that his counsel are adequate to represent the interests of the class."  (Debt Collectors' Opp'n

16  14.)  Although the Court will not go into any great detail regarding the Debt Collectors' misguided

17  and vaguely personal attacks on Plaintiff's counsel, their argument mostly focuses on what is missing

18  from the Plaintiff's counsel's resumes.  (*See id.* at 16 ("[T]here is no mention in the [Johnson Bottini

19  firm's] resume that Mr. Weaver had any experience handling class action litigation with his former

20  firm."); *id.* at 18 ("Mr. Murphy does not identify any individual actions or class actions he has handled

21  since re-entering private practice in February 2007.").)  Notably, in the four-and-a-half pages devoted

22  to this argument, the Debt Collectors do not cite a single authority to bolster their contention that

23  Plaintiff's chosen counsel would not adequately represent the interests of the class.  (*See id.* at 14–18.)

24          "[O]ne has to take objections by defendants to adequacy of class counsel with a grain of salt."

25  *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 662 (S.D. Cal. 2010) (Sammartino,

26  J.) (quoting *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 119 n.10 (N.D. Ill. 1993)).  Thus,

27  "adequate representation is usually presumed in the absence of contrary evidence."  *Californians for*

28  *Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).  "The burden

1    is on the defendants to prove that the representation will be inadequate." *In re Data Access Sys. Secs.*

2    *Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984).

3         Here, the Debt Collectors have not come close to rebutting the presumption that Plaintiff's

4    chosen counsel would adequately represent the class. Plaintiff's counsel Mr. Weaver has significant

5    experience in class action litigation. (Pl.'s NOL Ex. 46, ECF No. 183-50; Suppl. Weaver Decl.

6    ¶¶ 2–4, ECF No. 216-1; Chapin Decl. ¶ 4, ECF No. 216-3; *see In re Natural Gas Commodities Litig.*,

7    231 F.R.D. 171, 185 (S.D.N.Y. 2005) (finding counsel adequate where they had previously

8    represented classes).) And Plaintiff's counsel Mr. Murphy has experience managing outside counsel

9    responsible for FDCPA matters. (Pl.'s NOL Ex. 45, ECF No. 183-49; *see Molski v. Gleich*, 318 F.3d

10   937, 956 (9th Cir. 2003) (finding counsel adequate to represent ADA class where they had "significant

11   experience litigating ADA cases"), *overruled on other grounds in Dukes v. Wal-Mart Stores, Inc.*, 603

12   F.3d 571, 617 (9th Cir. 2010).) Moreover, Plaintiff's counsel have performed competently in this

13   litigation to date, securing, among other benefits to their client, over $15,000 in discovery sanctions

14   against Defendants. (Order 5, May 4, 2009, ECF No. 44 (awarding Plaintiff over $2500 in discovery

15   sanctions); Order 4, Aug. 26, 2010, ECF No. 120 (awarding Plaintiff over $13,000 in discovery

16   sanctions); *see In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) ("[C]ourts can

17   evaluate the performance of counsel in prior stages of the instant case.").) Accordingly, the Court

18   concludes that Plaintiff is represented by qualified and competent counsel.

19   **2.**     **Rule 23(b)(3)**

20        In addition to Rule 23(a)'s requirements, a proposed class must satisfy the requirements of one

21   of the subdivisions of Rule 23(b). Here, Plaintiff seeks to certify a class only under Rule 23(b)(3),

22   which permits certification if "questions of law or fact common to class members predominate over

23   any questions affecting only individual class members," and "a class action is superior to other

24   available methods for fairly and efficiently adjudicating the controversy."

25   *A.*     *Predominance*

26        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

27   cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

28   623 (1997). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the

common and individual issues." *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (internal quotation marks omitted).  Put another way, the question is whether "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 137 (2d Cir. 2001) (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)) (internal quotation marks omitted), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006).  Central to this inquiry "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)) (internal quotation marks omitted).

For several reasons, Defendants contend that individual issues predominate over common ones.  The Court addresses each argument in turn.

*(1)*    Rooker–Feldman *Doctrine*

At the threshold, DFS argues that "Plaintiff's theory would require this Court to make determinations contrary to" the final judgments of state courts across the nation in the Debt Collectors' collection suits.  (DFS' Opp'n 11; *see also* Debt Collectors' Opp'n 9 ("The state court has already adjudicated that these judgment debtors owe the money as alleged in the complaint, so these potential class member's [sic] claims would be barred by the *Rooker–Feldman* doctrine and principles of res judicata.").)    According to DFS, the Court lacks the authority to do so under the *Rooker–Feldman* doctrine, and therefore, "[t]his Court lacks the power to award the class relief that Plaintiff seeks—*i.e.*, return of all amounts collected by the debt collectors."  (*Id.*; *see Heinrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) ("The *Rooker–Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments.").)

The Court will not address this argument because is entirely a merits issue—not a class certification issue.  By DFS' own admission, it requires rejection of "[t]he entire premise of Plaintiff's

1    theory."[10]  (DFS' Opp'n 11.)  "[A] full inquiry into the merits of a putative class's legal claims is

2    precisely what both the Supreme Court and [the Ninth Circuit] have cautioned is not appropriate for

3    a Rule 23 certification inquiry."  *United Steel*, 593 F.3d at 808 (citing *Eisen v. Carlisle & Jacquelin*,

4    417 U.S. 156, 177–78 (1974) ("In determining the propriety of a class action, the question is not

5    whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

6    whether the requirements of Rule 23 are met.")).  Accordingly, it would be inappropriate for the Court

7    to address DFS' *Rooker–Feldman* doctrine argument here.

8    *(2)    Negligence Class*

9          As to Plaintiff's negligence claim, DFS argues that "Plaintiff offers no legally viable theory

10   to establish damages or causation as to DFS on a class-wide basis."  (DFS' Opp'n 12.)  As discussed

11   above, the Court can adjudicate questions of duty and breach on a classwide basis.  And contrary to

12   DFS' contention, individualized questions going to damages do not preclude a finding that common

13   questions predominate.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of

14   damages is invariably an individual question and does not defeat class action treatment.").

15         This leaves individual issues of causation.  Even if a class member paid money or incurred

16   expenses "in response to" a letter from the Debt Collectors misidentifying the original creditor for his

17   loan, this does not necessarily mean that Defendants' wrongful conduct *caused him* to pay money or

18   incur expenses.  Put another way, to prevail on their negligence claims, every single class member

19   must show that he would not have paid money or incurred expenses *but for* Defendants'

20   misidentification of the original creditor for his loan.  It is entirely possible that a class member

21   (1) received a letter misidentifying AIB as his original creditor, (2) recognized that the letter referred

22   to money he still owed for his Dell purchase, and (3) paid money in response to the letter.  If so, then

23   it was the class member's recognition that he still owed a debt that caused him to pay or incur

24   expenses, not Defendants' misidentification of his original creditor.  Thus, the Court would have to

25

26          [10]  *See Blaxill v. Arrow Fin. Servs., LLC*, 2011 WL 1299350, at *2 (N.D. Cal. Apr. 4, 2011)
     (ruling defendants' argument that plaintiff's FDCPA and Rosenthal Act claims were barred by the
27   *Rooker–Feldman* doctrine at motion to dismiss stage); *Williams v. Cavalry Portfolio Servs., LLC*,
     2010 WL 2889656 (C.D. Cal. July 20, 2010) (ruling on same argument at summary judgment stage);
28   *Fleming v. Gordon & Wong Law Grp., P.C.*, 723 F. Supp. 2d 1219, 1222–24 (N.D. Cal. 2010) (ruling
     on same argument at motion to dismiss stage).

1   determine *why* each class member paid money or incurred expenses in response to the Debt
2   Collectors' letters or lawsuit.

3          Moreover, DFS notes that "Plaintiff offers the Court no methodology that would establish that
4   DFS, and not Collins or other of the Debt Collectors, is responsible for *any* particular
5   misidentification, let alone a methodology for establishing on a class-wide basis DFS' responsibility
6   for *every* misidentification in every erroneous communication the class received." (DFS' Opp'n 15.)
7   "DFS provided Collins with a variety of information and media about a variety of information and
8   media about a variety of loans in the portfolio for a significant period of time after the sale." (Towns
9   Decl. ¶ 14.)   And as Plaintiff points out, DFS provided Collins with the criteria that it used to
10  determine the originator of the accounts in the portfolio on January 25, 2007.  (Pl.'s NOL Ex. 15.)
11  Yet the Debt Collectors continued to misidentify the identity of the original creditor for loans in the
12  portfolio as late as August 2007.  (TAC ¶ 29.)

13         Thus, to determine which Defendant or group of Defendants is responsible for the class
14  members' injuries, the Court would have to determine whether it was DFS' misidentification of the
15  original creditor during the course of the sale, or the Debt Collectors' intervening negligence in failing
16  to correct that misidentification, that caused the Debt Collectors' misidentification of the original
17  creditor in the letters and lawsuits that went out to the class members.  *See Walt Rankin & Assocs.,*
18  *Inc. v. City of Murrieta*, 101 Cal. Rpter. 2d 48, 64 (Cal. Ct. App. 2000) ("Proximate cause is that cause
19  which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the
20  injury [or damage complained of] and without which such result would not have occurred." (alteration
21  in original)).  Thus, as to each account, the Court would have to determine what information DFS gave
22  to Collins, whether the information was accurate, whether DFS corrected any inaccurate information,
23  and what information Collins passed on to the other Debt Collectors.

24         Plaintiff insists that "the ultimate underlying factual issues" are (1) whether the Debt
25  Collectors sent a letter to every creditor, and (2) whether those letters identified the wrong original
26  creditor.  (Reply 11–12.)  Although this might be the case for the FDCPA and Rosenthal Act claims,
27  it is not so for the negligence claim.  Causation is an element of the negligence claim.  *Lopez*, 126 Cal.
28  Rptr. 3d at 714.  And because causation must be adjudicated on a class member-by-class member

1    basis, this individual issue threatens to swamp the common ones.

2        Plaintiff cites *In re Heritage Bond Litig.*, 2004 WL 1638201, at *6 (C.D. Cal. July 12, 2004),

3    for the proposition that "whether or how Plaintiffs can establish class-wide causation or reliance is an

4    issue that goes to the merits of their negligence claim and is inappropriate to consider at the class

5    certification stage."  (Reply 13; *see also id.* at 15 ("[T]he Court must not allow either party to

6    bootstrap a trial or summary judgment motion into the class certification stage." (quoting *In re Nat'l

7    W. Deferred Annuities Litig.*, 268 F.R.D. at 664) (internal quotation marks omitted)).  With all due

8    deference to the *Heritage Bond* court, this statement is likely based on a "mistaken[]" reading of the

9    Supreme Court's statement in *Eisen* that "'nothing in the language or history of Rule 23 . . . gives a

10   court any authority to conduct any preliminary inquiry into the merits of a suit in order to determine

11   whether it may be maintained as a class action.'"  *Wal-Mart*, 131 S. Ct. at 2552 n.6 (quoting *Eisen*,

12   417 U.S. at 177).  While a court may not decide the merits of a plaintiff's claims at the class

13   certification stage, *Eisen* does not prohibit a court from delving into merits-related issues in

14   determining whether Rule 23's requirements are met.  "Frequently [the] 'rigorous analysis' [that Rule

15   23 requires] will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot

16   be helped."  *Id.* at 2551.

17       Here, the Court makes no judgment of the merits of Plaintiff's claims in finding that individual

18   issues of causation predominate.  It simply reaches the common sense conclusion that, where the

19   Court must conduct mini-trials to determine *which Defendant* is responsible for each misrepresentation

20   and *why* each class member paid money or incurred expenses, class adjudication of the negligence

21   claim would not substantially promote judicial economy.  *See Picus v. Wal-Mart Stores, Inc.*, 256

22   F.R.D. 651, 659 (D. Nev. 2009) (concluding that predominance requirement was not satisfied where

23   court would have to individually consider whether each class member "relied on or even saw"

24   misrepresentation, "as well as what damage each class member incurred as a result of that reliance").

25       Accordingly, the Court finds that individual issues of causation predominate over the common

26   issues related to Defendants' actions in allegedly misidentifying the original creditor for the class

27   members' loans.  Class treatment of the negligence claim under Rule 23(b)(3) is therefore

28   inappropriate.

1    *(3)    UCL Class*

2         The UCL claim stands on different footing.  Even after Proposition 64, relief under the UCL

3    is available for non-representative class members without individualized proof of deception, reliance,

4    and injury.  *McAdams v. Monier, Inc.*, 105 Cal. Rptr. 3d 704, 717 (Cal. Ct. App. 2010) (citing *Tobacco*

5    *II*, 207 P.3d at 39).  This is because of three factors:

6         (1) [California Business and Professions Code] section 17203's language that specifies
     the relief available under the UCL, including restoring money which "*may have been*
7    *acquired*" by unfair competition (as opposed to the more stringent standing
     requirement under . . . section 17204 for representative plaintiffs of "*as a result of the*
8    *unfair competition*,"; (2) the limited nature of relief available under the UCL
     (basically, injunction and restitution); and (3) the concern that wrongdoers not retain
9    the benefits of their misconduct.

10   *Id.* (citing *Tobacco II*, 207 P.3d at 35).  "Since *individualized* proof of reliance and injury is *not*

11   required for non-representative class members, [individual] issues of reliance and injury do not

12   foreclose a UCL class action . . . ."  *McAdams*, 105 Cal. Rptr. 3d at 717; *accord Plascensia v. Lending*

13   *1st Mortg.*, 259 F.R.D. 437, 448–49 (N.D. Cal. 2009) ("[O]nly the named plaintiff in a UCL class

14   action need demonstrate injury and causation.").

15        *Sevidal* and *Pfizer Inc. v. Superior Court*, 105 Cal. Rptr. 3d 795 (Cal. Ct. App. 2010), do not

16   counsel otherwise.  In each of those cases, the proposed classes encompassed individuals who were

17   never exposed to the alleged misrepresentations.  *Sevidal*, 117 Cal. Rptr. 3d at 83; *Pfizer*, 105 Cal.

18   Rptr. 3d at 803.  Accordingly, "there [was] absolutely no likelihood they were deceived by the alleged

19   false or misleading advertising or promotional campaign.  Such persons cannot meet the standard of

20   [California Business and Professions Code section 17203 of having money restored to them because

21   it 'may have been acquired by means of' the unfair practice."  *Pfizer*, 105 Cal. Rptr. 3d at 804; *accord*

22   *Sevidal*, 117 Cal. Rptr. 3d at 83.

23        Here, the UCL class members necessarily were exposed to the misrepresentation because, by

24   definition, they received a collection letter or lawsuit stating that AIB as the original creditor for the

25   loan.  Because they were exposed to the misrepresentation, any money that the class members paid

26   to Defendants "may have been acquired by means of" Defendants' misidentification of the original

27   creditor for the their loans.  Cal. Bus. & Prof. Code § 17203.  In contrast to the negligence claim, the

28   Court need not inquire into whether the UCL class members would have paid money to Defendants

1   but for Defendants' misidentification of the original creditor for the class members' loans. *Sevidal*,

2   117 Cal. Rptr. 3d at 82 (noting that the "which may have been acquired" standard of California

3   Business and Professions Code section 17203 "is substantially less stringent than a reliance or 'but

4   for' causation test"). Because individual inquiry into causation is not necessary, common issues

5   would predominate on the UCL claim.

6   *(4)    FDCPA and Rosenthal Act Classes*

7        Like the UCL class, the FDCPA and Rosenthal Act classes do not suffer from the same

8   infirmity as the negligence class. Perhaps recognizing that this is so, the Debt Collectors devote less

9   than a page to Rule 23(b)'s requirements. They contend that "[t]he account-by-account analysis of

10   the potential class members' records would make the class unmanageable, and individual issues, as

11   opposed to common issues, would predominate." (Debt Collectors' Opp'n 18.)

12        Contrary to the Debt Collectors' contention, however, adjudicating the FDCPA and Rosenthal

13   Act claims would not entail individual inquiries into the class members' unique circumstances.

14   Rather, these claims can be adjudicated by answering a few common questions: whether the Debt

15   Collectors letters and lawsuits to the class members misidentified the original creditor on the class

16   members' accounts; whether Nelson & Kennard failed to be meaningfully involved in the collection

17   of debts; and whether the Debt Collectors' conduct violated the FDCPA and Rosenthal Act.

18        The only individual inquiry that the Debt Collectors identify is how to determine membership

19   in the classes. (*See* Debt Collectors' Opp'n 9–13.) However, that some individualized inquiry may

20   be necessary to determine the limits of the classes does not defeat predominance. *See Herrera*, 2011

21   WL 2149084, at *12 (concluding that individual inquiries did not predominate where questionnaire

22   would be required to determine class membership). As Plaintiff points out, it would be no great feat

23   to identify which of the 85,292 accounts in the portfolio were originated by CIT. (*See* Reply 9 ("[T]he

24   original creditor for each account can easily be determined by using DFS's secret formula.").) From

25   there, the Court need only determine which of those class members received a letter or lawsuit

26   identifying AIB as the original creditor for their account. Even if making this determination from the

27   available discovery is impossible, it could still be made by asking putative class members "a single

28   question to determine whether they are entitled to relief." *Wilkerson*, 200 F.R.D. at 610. Accordingly,

this inquiry does not predominate over the "central question" of the FDCPA and Rosenthal Act claims—whether the Debt Collectors' misidentification of the original creditor in letters and lawsuits violated the FDCPA and Rosenthal Act. *Herrera*, 2011 WL 2149084, at *12.

**B.      Superiority**

The final requirement for class certification is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "In determining superiority, courts must consider the four factors of Rule 23(b)(3)."[11] *Zinser*, 253 F.3d at 1190. The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Id.* (internal quotation marks omitted). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Here, Defendants contend that the class action format would be unmanageable because of individualized inquiries regarding class membership, causation, and damages. (*See* DFS' Opp'n 16; Debt Collectors' Opp'n 18.) Regarding the negligence class, the Court agrees. As to the UCL, FDCPA, and Rosenthal Act claims, however, any individual inquiries, if necessary, would be minimal. "They would hardly be unmanageable in the context of a class action." *Herrera*, 2011 WL 2149084, at *14. Accordingly, a class action would be a superior method of adjudicating the claims of the UCL class, the FDCPA class against Collins, Collins USA, and Paragon Way, and the FDCPA/Rosenthal Act class against Nelson & Kennard.

**CONCLUSION**

Plaintiffs proposed subclasses fail at multiple junctures. First, the negligence class is overbroad because it includes non-injured consumers. Second, all of Plaintiff's proposed subclasses

---

[11]   The Rule 23(b)(3) factors are:

(A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

08cv1392

1    fail the test of numerosity.  Third, because Plaintiff would be subject to the unique defense that

2    Defendants' breach of duty and unfair and unlawful conduct did not cause his injury, he is neither a

3    typical nor an adequate representative of the negligence and UCL classes.  Fourth, because individual

4    issues of causation would predominate over common issues, class treatment of the negligence claim

5    is inappropriate.  For all of these reasons, Plaintiff's motion for class certification is **DENIED**

6    **WITHOUT PREJUDICE**.[12]   If Plaintiff wishes, he may file an amended motion for class

7    certification curing the aforementioned defects <u>within thirty days</u> after this order is electronically

8    docketed.

9            **IT IS SO ORDERED.**

10

11   DATED:  October 21, 2011

12                                                        _Janis L. Sammartino_
                                                         Honorable Janis L. Sammartino
13                                                       United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26            [12] Because Plaintiff's motion for class certification is capable of resolution on narrower Rule
     23 grounds, the Court declines to address DFS' contention that classwide application of California law
27   would violate due process.  (DFS' Opp'n 21–24; *see Greater New Orleans Broad. Ass'n, Inc. v.*
     *United States*, 527 U.S. 173, 184 (1999) ("[W]e do not ordinarily reach out to make novel or
28   unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a
     narrower ground."); *United States v. Withers*, 618 F.3d 1008, 1020 n.5 (9th Cir. 2010) (same).)