# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOURGEMAN, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br>    vs.<br><br>COLLINS FINANCIAL SERVICES, INC.; NELSON & KENNARD; DELL FINANCIAL SERVICES, L.P.; PARAGON WAY, INC.; COLLINS FINANCIAL SERVICES USA, INC.; et al.,<br><br>            Defendants. | Case No. 08cv1392-CAB(NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION, AND DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>[Doc. Nos. 259, 234] |

Presently before the Court is Plaintiff David Tourgeman's Amended Motion for Class Certification. [Doc. No. 259.] On March 28, 2012 the Court held oral argument on the motion. Brett Weaver, Esq. and Daniel P. Murphy, Esq. appeared on behalf of the Plaintiff. Brandon Wisoff, Esq. and Paul Alsdorf, Esq. appeared on behalf of Defendant Dell Financial Services ("DFS"). Tomio B. Narita, Esq. appeared on behalf of Defendants Nelson & Kennard and the Collins Financial Defendants. Upon consideration of the parties' filings and oral argument the Court **GRANTS IN PART AND DENIES IN PART** the Amended Motion for Class Certification.

The Court also indicated to the parties during oral argument that it would

1 consider and address in this Order the Collins Financial Defendants' Motion for
2 Reconsideration of Judge Sammartino's Order on the Motion to Dismiss the Third
3 Amended Complaint. [Doc. No. 234.] As set forth below, that motion is **DENIED.**

## I.     BACKGROUND

On July 31, 2008, Plaintiff filed the present action against, *inter alia,* Collins Financial, Nelson & Kennard, and DFS alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), and the California Rosenthal Act, invasion of privacy, and negligence, arising out of the Defendants' efforts to collect the outstanding balance on a computer the Plaintiff purchased from Dell, and financed through DFS. [Doc. No. 1.] DFS sold a portfolio containing approximately 85,000 charged-off debts, including Plaintiff's debt, to Collins Financial. Collins Financial and its affiliated companies then sent letters to the individuals in the portfolio seeking to collect on the debts, which Plaintiff himself did not receive. Collins Financial then referred approximately 2,000 accounts, including Plaintiff's account to the law firm of Nelson & Kennard, who sent additional letters to the individuals in the portfolio they received, and ultimately brought at least 30 lawsuits in various state courts with respect to the debts. When Plaintiff was served with the lawsuit, he contacted an attorney and ultimately succeeded in having the lawsuit dismissed because Plaintiff contended that he had already paid the debt owed.[1]

In November of 2010, after multiple rounds of motions and extensive discovery, the Court granted Plaintiff's contested motion for leave to file the operative Third Amended Complaint ("TAC"). [Doc. Nos. 156 and 157, respectively.] The TAC amends the class definition, and alleges that the collection letters addressed to, and lawsuit filed against, the Plaintiff were misleading in that they incorrectly identified the original creditor on the debt as American Investment Bank, N.A. ("AIB"), instead of

---

[1] Since this is the second motion for class certification, and one of many orders on this matter, the Court does not provide a detailed factual history here. *See* Doc. No. 230 at 2-5 for an in-depth recitation of the facts alleged in the Third Amended Complaint; Doc. No. 240 at 2-4 for the factual underpinnings relevant to class certification.

the actual original creditor on Plaintiff's, and others' accounts, CIT Bank ("CIT"). *See* TAC at ¶¶ 21-22.

The Collins Financial entities and Paragon Way moved to dismiss the TAC [Doc. No. 165,] as did Nelson & Kennard [Doc. No. 166.] Judge Sammartino denied the motion as to certain of the FDCPA/ Rosenthal Claims, finding that the FDCPA is a strict liability statute which focuses on collectors' as opposed to consumers' behavior, and therefore the Court could not hold, as a matter of law, "that Defendants are free from liability under the FDCPA because, by chance, their representations never reached Plaintiff." [Doc. No. 230 at 8.] Accordingly, Judge Sammartino found that the TAC adequately states a claim under 15 U.S.C. §§ 1692e and 1692f of the FDCPA, despite the fact that the Plaintiff does not allege that he received the allegedly misleading validation letters. *Id*. at 5-8. Judge Sammartino also rejected defendants' arguments that the misstatement as to the original creditor were not "material," finding that knowledge of creditor identity is critical to allowing the "'least sophisticated consumer' to make more informed decisions on how to communicate with the creditor and avoid being misled." *Id.* at 8, *quoting Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F.Supp.2d 986, 996 (D. Ariz. 2010).

The Collins entities moved for reconsideration of this order, arguing that the Court erred in denying the motion as to the FDCPA claims because Plaintiff did not receive the offending letters and therefore has no injury sufficient to meet Article III standing requirements. [Doc. No. 234] This motion will be addressed below.

Plaintiff moved for class certification in April of 2011, seeking certification of the following subclasses:

> 1. **Negligence class (against all Defendants):** All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during a period of two years of the date of the filing of his lawsuit, paid money or incurred expenses in response to a collection letter or lawsuit stating that American Investment Bank was the original creditor for the loan.
>
> 2. **The UCL class (against all Defendants)**: All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT

Online Bank provided the funds and, during a period of four years of the date of the filing of his lawsuit, paid money or incurred expenses in response to a collection letter or lawsuit stating that American Investment Bank was the original creditor for the loan.

3. **The FDCPA/ Rosenthal Act I Class (against Collins, Collins USA, and Paragon Way):** All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during a period of one year of the date of the filing of his lawsuit, received a collection letter or were named in a lawsuit stating that American Investment Bank was the original creditor for the loan.

4. **The FDCPA III Class (against Nelson & Kennard**): All consumers residing in the United States and abroad who financed a Dell computer through DFS where CIT Online Bank provided the funds and, during a period of one year of the date of the filing of his lawsuit, received a collection letter from Nelson & Kennard or were named in a lawsuit filed by Nelson & Kennard stating that American Investment Bank was the original creditor for the loan.

[Doc. No. 183].

Judge Sammartino denied the Motion for Class Certification without prejudice on October 21, 2011. [Doc. No. 240.] Relevant to the present motion, the Court granted Plaintiff leave to amend his class certification motion to cure the following defects:

1) **Plaintiff did not provide evidence of numerosity as to any subclass**.

"Rule 23(a)(1) does not set a high bar but it requires more than speculation. Because Plaintiff has failed to provide evidence regarding critical aspects of his four proposed classes, the Court cannot conclude that the numerosity requirement is satisfied." *Id.* at 10-12. As to the UCL/FDCPA claims, Judge Sammartino found that evidence as to how many CIT accounts the DFS debt portfolio contained was lacking. *Id.* at 11. As to the UCL class specifically, she found that Plaintiff failed to show that numerous CIT account holders *paid money or incurred expenses* as a result of Defendants' alleged wrongful conduct. *Id.* at 11-12. As to the Nelson and Kennard class, the Court found that there was no evidence of which of the 2000 account holders received a case-initiating document or collection letter, which of them were named in a lawsuit or letter, or which of them received a letter or complaint misidentifying AIB rather than CIT as the original creditor for their account. *Id.* at 12.

        2) **As to the Negligence and UCL classes, Plaintiff did not meet the typicality or adequacy requirements**.

Because the allegations in the TAC assert that Plaintiff incurred expenses for reasons unrelated to defendants' misrepresentation of the original creditor's identity (ie that he pursued the claim because he had paid the debt in full) he would be subject to a unique defense that Defendants' breach of duty and unfair and unlawful conduct did not cause his injury. *Id.* at 16. Judge Sammartino found that because such a defense is likely to become a "major focus of the litigation," it gives rise to a conflict of interest that would prevent Plaintiff from being an adequate representative of the interests of the class. *Id.* at 18.

Plaintiff filed the instant Amended Motion for Class Certification ("Mot.") on February 3, 2012. [Doc. No. 259.] Other than dropping the Negligence Class, the amended motion does not amend the remaining three class definitions, and does not propose a new class representative. The DFS and the Collins entities each filed an opposition. [Doc. Nos. 267 and 268, respectively.] Plaintiff's reply addresses both oppositions [Doc. No. 272.]

As stated in oral argument, the Court will not revisit issues which Judge Sammartino has already determined, and will only consider here whether the Plaintiff has cured the deficiencies Judge Sammartino identified, as well as the standing issue on the UCL claim, upon which the Court invited further briefing from the parties.

**II. MOTION FOR RECONSIDERATION**

Defendants Collins Financial Services, Inc., Collins Financial Services, USA, Inc., Paragon Way, Inc., and Nelson & Kennard brought a Motion for Reconsideration of Judge Sammartino's Order on the motion to dismiss the TAC with respect to Judge Sammartino's denial of the motion on certain FDCPA/ Rosenthal Act Claims. [Doc. No. 234.] Defendants argue that the Court erred in finding that Plaintiff could maintain these claims because the Plaintiff did not suffer "injury in fact" and therefore lacks standing pursuant to Article III of the U.S. Constitution. *Id.* Since Plaintiff seeks

certification of two classes of individuals based on the claims at issue in the Motion for Reconsideration, the Court will address that pending motion first.

While the Court has inherent power to reconsider and modify prior rulings in the same litigation, even where, as here, a district judge previously presiding in the case has made the ruling at issue, (*Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 572 (7th Cir. 2006), reconsideration is an "extraordinary remedy, to be used sparingly." *Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted). Absent highly unusual circumstances, a motion for reconsideration will not be granted "unless the District Court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (internal quotes omitted). *See also* Local Civil Rule 7.1(i) (requiring attorney seeking reconsideration to "present to the judge to whom any subsequent application is made an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including *inter alia*: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.")

This Court finds that Defendants have not presented sufficient grounds for reconsideration. Defendants concede that there are no "new and different facts" presented on the motion; rather, without further specification, they argue that the Court's order denying the motion to dismiss "may amount to new 'circumstances.'" [Doc. 235, Narita Declaration, at ¶¶ 3-4.] The Court disagrees.

Judge Sammartino's opinion upholding Plaintiff's FDCPA claims as to 15 U.S.C. §§ 1692e and 1692f is well-reasoned and well supported. [Doc. 230 at 5-8.] The Court finds no clear error in this analysis. Nor does the Court find clear error in light of Defendants' newly-raised standing argument. The U.S. Supreme Court has expressly held that "[t]he actual or threatened injury required by Art. III may exist

solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotes omitted).  In such cases, the standing question is "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.*  If the statute at issue prohibits the defendants' alleged conduct, therefore, a plaintiff may demonstrate an injury sufficient to satisfy Article III. *Edwards v. First American Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (finding Plaintiff has standing where Congress creates a statutory private right of action, regardless of whether she sustained actual injury.)

Here, as Judge Sammartino found, "the FDCPA's focus is on a debt collector's conduct, and not on whether a consumer suffers actual damages or is misled." [Doc. No. 230 at 6, *citing Mahon v. Credit Bureau of Placer Cnty., Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999).] *See also Baker v. G. C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (finding that the purpose of the FDCPA is "to protect consumers who have been victimized by unscrupulous debt collectors.").  In light of this purpose, and the apparent Congressional intent to focus on the defendants' rather than the plaintiffs' conduct by creating a private right of action under the FDCPA, the Court declines to find that the order denying Defendants' motion to dismiss with respect to 15 U.S.C. §§ 1692f and 1692g was "clear error" and accordingly **DENIES** the motion for reconsideration.

### III.  CLASS CERTIFICATION

Rule 23(a) requires parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation). Fed.R.Civ.P. 23(a).

"Parties seeking class certification bear the burden of demonstrating that they

have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011), *citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). In considering class certification, district courts must engage in "a rigorous analysis" as to whether the prerequisites of Rule 23(a) have been satisfied. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), *citing General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). In is often inevitable, therefore, that such an analysis "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

If the court concludes that the moving party has carried its burden, then the court is afforded "broad discretion" to certify the class. *Zinser*, 253 F.3d at 1186.

**A.  Standing to raise UCL Claim**

In his Reply brief regarding his Amended Motion for Class Certification, Plaintiff articulated his prayer for injunctive relief for the first time in this four-year-old litigation. [Doc. No. 272 ("Reply") at 9.] Specifically, he argues that injunctive relief is warranted because "DFS is in the debt selling business," and an injunction should issue "to require DFS to take reasonable steps to ensure it includes correct and necessary information, including the name of the original creditor(s), in future portfolio sales." *Id.* at 9. Plaintiff's Reply also concedes for the first time that he is not entitled to restitution, and thus seeks only injunctive relief on behalf of the UCL class. *Id.* In response, during oral argument, Defendants raised the issue as to whether or not Plaintiff had standing to seek injunctive relief on behalf of a UCL class at all. "Standing is a jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249-50 (9th Cir. 1990). The parties were thus

invited to, and did, submit supplemental briefing on this issue.[2] [Doc. Nos 276, 277.]

Plaintiff's standing to bring a claim for injunctive relief turns on whether he can demonstrate that 1) he has suffered an "injury in fact;" 2) that there is a "causal connection between the injury and the conduct complained of," and 3) it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife, et* al*.,* 504 U.S. 555, 561 (1992) (internal quotations omitted). *See also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (recognizing overlap between Article III standing requirements and those of the UCL). As a class representative, Plaintiff has the burden of showing that Article III standing exists. *Ellis,* 657 F.3d at 979.

Upon consideration of the briefing before the Court, and argument of counsel, the Court finds that Plaintiff has not met his burden to establish standing sufficient to represent at UCL class of individuals. Critically, he has not demonstrated that he personally "has sustained or is immediately in danger of sustaining some direct injury as the result of" DFS's future debt portfolio sales – the subject of the injunction sought. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotations omitted). Nor has he established that the injury or threat of injury is "both real and immediate, not conjectural or hypothetical." *Id.*

Indeed, for Plaintiff to suffer harm as a result of the injunctive relief he seeks, he would have to purchase another computer from Dell, finance it, default on the loan, receive a letter from a collections agency which identifies the wrong creditor, and incur expense as a result of such a letter. Such a "chain of highly speculative contingencies" does not warrant a finding of standing on an injunctive relief claim. *See Nelsen*, 895 F.2d at 1252-53 (denying motion for class certification for lack of standing on

---

[2] Plaintiff seeks certification of the UCL class as to all Defendants. Mot. at 11. Although the Collins Defendants did not submit supplemental briefing of this issue, the analysis here applies equally to all Defendants.

injunctive relief claims where plaintiffs' likelihood of suffering future harm was highly speculative.) Plaintiff does not allege that he has any current relationship with DFS. Nor has Plaintiff produced any evidence that DFS's errors in identifying the original creditors on the debt portfolios it sells are the result of any "systematic pattern or policy" that would justify the finding of standing to seek an injunction to address the threat of future harm. *See Id.* at 1254.

The Court is not persuaded by Plaintiff's argument that Judge Sammartino has already determined the standing issue in her November 23, 2009 order denying DFS's motion to dismiss the UCL claim. [Doc. No. 276 at 1, *citing* Doc. No. 89.] That order is inapposite to the present issue as it pertains to Plaintiff's Second Amended Complaint, which is not the operative complaint here, and, critically, did not contain any allegations as to DFS's alleged misidentification of the original creditor on the debt portfolios, nor any articulation of the injunctive relief which Plaintiff now seeks. [*See* Doc. No. 60.]

The case law Plaintiff cites does not compel a different result. In *Henderson et al. v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. April 11, 2011), upon which Plaintiff heavily relies, the court found that the plaintiffs had established Article III standing to raise their false advertising claim under California law, despite the fact that they were unlikely to be deceived by the product labeling again, because the alternative result would "surely thwart the objective of California's consumer protection laws." *Id*. at * 20. Since the defendants in that case were continuing to label the products with the allegedly misleading information, the court found that the "plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from defendant's alleged false advertising." *Id.* at *21. By contrast, here, there is nothing to suggest that there is an ongoing, continuing harm to other potential class members, or to Plaintiff himself. *See Ellis*, 657 F.3d at 979 (plaintiff has the burden to establish Article III standing exists).

Because Plaintiff cannot demonstrate that he is likely to be injured by the conduct he seeks to enjoin, and because he has not demonstrated that the conduct at issue is the subject of systematic pattern or policy that is ongoing and likely to continue to harm potential class members, the Court finds that Plaintiff lacks standing to bring a UCL claim for injunctive relief, and his request for certification of a UCL class is therefore **DENIED**.[3]

### B. Numerosity

#### *1. FDCPA/ Rosenthal class against the Collins Entities*

As to the FDCPA class against Collins, Collins USA, and Paragon Way, Judge Sammartino's key concern was the lack of "evidence regarding how many of the allegedly misidentified accounts – if any – were originated by CIT. [Doc. No. 240 at 11.] Specifically, she was concerned that Plaintiff did not provide evidence as to "how many accounts in the *total portfolio* were originated by CIT, let alone how many CIT account holders received a collection letter or were named in a lawsuit misidentifying AIB of their loan." *Id*. (emphasis in original). Without at least some evidence of how many CIT accounts the portfolio contained, therefore, Judge Sammartino found that she could not reasonably infer that Plaintiff met his burden in satisfying Rule 23's numerosity requirement. *Id.*

In the Amended Motion for Class Certification, Plaintiff's counsel provided his own calculations as to the number of accounts CIT issued as opposed to AIB and DFS during the relevant time period based on his review of the demographic information DFS provided to Collins upon the sale of the 82,000 accounts in the portfolio. Amended Motion for Class Certification ("Mot.") at 4-6; Weaver. Decl., ¶¶ 4-7, Exs. 5-6. Applying testimony as to the time periods in which the various entities issued the loans, Plaintiff's counsel determined that CIT initiated 62,261 accounts over the

---

[3] Because the Court finds that Plaintiff lacks standing, it need not reach the issue as to whether the Plaintiff has successfully cured Judge Sammartino's identified deficiencies as to Plaintiff's numerosity, adequacy, and typicality to represent the UCL class.

relevant period as opposed to AIB's 19,891 accounts and DFS's 2,863 accounts. [Mot. at 6.] Combining that information with the evidence before Judge Sammartino on the initial motion for class certification, that Paragon Way sent 256,458 letters to 49,939 account holders all stating that AIB was the original creditor on the accounts [*see* Doc. 240 at 3,] Plaintiff contends that at least 27,185 CIT account holders were sent false AIB letters. [Mot. at 6.]

Defendants do not dispute Plaintiff's counsel's math, but argue that the evidence submitted by Plaintiff does not indicate *when* the letters were sent, and therefore is still insufficient to establish numerosity because the class period is expressly limited to one year prior to the filing of the lawsuit. [Collins Opp., Doc. No. 268 at 9-10.] Specifically, the Collins Defendants cite a statement from Judge Sammartino's order denying class certification, stating that "Paragon Way spent between six months and a year trying to collect the accounts in the portfolio, after which Paragon Way referred the uncollectible accounts to law firms." [Doc. No. 240 at 3, *citing* Knauer Dep. 74-75.] Because of this "finding," the Collins Defendants argue that "all of the allegedly erroneous letters sent by Paragon Way on behalf of Collins would have been sent on or before July 11, 2007, *i.e.*, they would have been sent **more than one year** prior to the date this suit was filed." [Doc. No. 268 at 9.] (emphasis in original). Therefore, they argue, there are zero members of the class. *Id.* The Collins Defendants also argue that the numerosity requirement is not met because Plaintiff has not demonstrated which of the accounts were intended for consumer as opposed to business purposes sufficient to justify recovery under the FDCPA and Rosenthal acts. *Id.* at 10-13.

In response, Plaintiff cites additional evidence quoting Defendant Paragon Way's 30(b)(6) witness, who testified in February of 2011 that Paragon Way was till trying to collect accounts in the portfolio. [ Reply at 4, and Ex. 3 attached thereto.] Plaintiff argues, among other reasons, that since the loan agreement is itself entitled a "consumer credit contract" [Reply Ex. 7,] there is sufficient evidence for class

1  certification purposes to justify numerosity without going into that inquiry. *Id*. at 4.

2  To satisfy Rule 23(a)(1), Plaintiff need only show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied. *Charlebois v. Angels Baseball, L.P.*, 2011 WL 2610122, at * 4 (C.D. Cal. June 30, 2012) (quotations omitted.)

Since Judge Sammartino found the remaining elements of class certification were met pursuant to Fed. R. Civ. Proc. 23, and given the "relatively low hurdle" Rule 23 (a)(1) sets, this Court finds that Plaintiff has now provided credible evidence from which it can reasonably infer that a significant number of individuals were sent false AIB letters. [*See* Doc. 240 at 12, *citing Schwartz v. Upper Deck,* 183 F.R.D. 672, 681 (S.D. Cal. 1999).]

Defendants' argument that the Court should find there are zero class members, citing Judge Sammartino's "finding" as to the timing of Paragon Way's collection efforts, is not compelling in light of Plaintiff's submission of evidence to the contrary. Nor is the Court persuaded by Defendants' arguments that Plaintiff cannot demonstrate numerosity as to which of the class members purchased the computer for consumer as opposed to business purposes. The Court finds that Plaintiff's evidence that the loan agreement is itself entitled a "consumer credit contract" is sufficient evidence to satisfy his burden to establish numerosity for class certification purposes. (*See* Reply Ex. 7.) Indeed, the Court will not deny class certification because of defendants' own failure to keep adequate records regarding the nature of the debt. *See Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) (certifying the class, finding the Congressional purpose behind the FDCPA statute would be thwarted if debt collectors were able to avoid class action liability due to their own inadequate record-keeping, and recognizing that any disputes regarding whether a particular class member's debt is commercial or consumer can be remedied through the claims process.)

Defendants provide no authority to the contrary; in fact, they cite no cases in which class certification was defeated on this basis. [*See* Doc. 268 at 10-11.] Rather, Defendants' cases cited only confirm this Court's finding that the issue of whether or not the debts were consumer debts goes to a material issue of fact as to the merits of Plaintiff's claim. *See e.g. Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075-76 (9th Cir. 2001) (holding summary judgment to be improper where a genuine issue of material fact existed as to whether or not the debt at issue was a consumer or business debt.) To hold otherwise would be to make an improper merits determination at this stage in the litigation. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) ("Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23.") (internal quotation marks omitted).

As numerosity was the only basis upon which Judge Sammartino denied class certification, and in light of the Court's finding that the Plaintiff has now provided the Court with sufficient evidence to satisfy the numerosity requirement pursuant to Fed. R. Civ. Proc. 23(a)(1), certification of the FDCPA class against the Collins Entities is **GRANTED** with respect to alleged violations of 15 U.S.C. §§ 1692e and 1692f and Cal. Civ. Code § 1788.17.

### *2. Nelson & Kennard FDCPA class*

As to the Nelson & Kennard FDCPA class, Judge Sammartino was similarly concerned that "there is no evidence of which of the 2000 account holders received a case-initiating document or collection letter from Nelson & Kennard, or even which of those 2000 account holders were named in a letter."[Doc. 240 at 12.]

Plaintiff's Amended Motion for Class Certification attaches 31 purportedly

identical complaints, all attaching a blank AIB loan agreement as an exhibit [Weaver Decl., ¶ 11; Exs. 9-49,] filed in San Diego and Orange County Superior Courts which falsely allege that AIB was the original creditor.  Plaintiff's counsel located these complaints upon his own investigation of court files; they were not initially produced in discovery.  Mot. at 7-8.

Plaintiff argues that the 31 complaints alone are sufficient to establish numerosity.  Mot. at 7-8, *citing Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988).  ("As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and cases of 40 or more are numerous enough.")  Plaintiff also submits that members of the class against Nelson & Kennard are located throughout California, Oregon, and Washington states, and the relatively small amount of each class member's claim makes it unlikely that they will pursue individual actions.  Mot. at 9.  Finally, Plaintiff argues that the given the evidence presented with respect to the error percentage in Paragon Way's database, it is reasonable to infer that hundreds of people received such a letter.  *Id.* at 10.  Plaintiff contends that because roughly 43% of the CIT originated accounts were misidentified, applying that percentage to the 2000 accounts Nelson and Kennard is reasonable to establish numerosity.  *Id.*

Defendants argue that 30 lawsuits is insufficient to certify a class anyway, but that the court should not include 19 of the 30 debtors in determining numerosity because judgments were entered against them and in favor of Collins, and their claims are thus barred as a matter of law pursuant to the *Rooker-Feldman* doctrine. [Doc. 268 at 4-7;] *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Defendants also claim that six of the debtors were never served with the complaints and they should not be counted. [Doc. No. 268 at 7.]

In response, Plaintiff points out that Judge Sammartino expressly found it

inappropriate to consider *Rooker Feldman* issues here because it involves a merits and not a class certification issue. [Reply at 6, *citing* Doc. No. 240 at 20-21.] Moreover, in light of Judge Sammartino's holding on the Motion to Dismiss that the collector's conduct, and not the consumer's conduct, is the focus of the FDCPA, Plaintiff argues that the six individuals who were not served with the complaint should still be counted for class certification purposes. *Id.* at 7, *citing* Doc. 230 at 6.

The Court agrees with Plaintiff. The *Rooker Feldman* doctrine is inapplicable here because the issue as to whether or not the original creditor was properly identified in the lawsuit was not actually litigated by any state court. *See Blaxill v. Arrow Fin. Servs., LLC*, 2011 WL 1299350, at * 2 (N.D. Cal. Apr. 4, 2011) (rejecting same argument defendants raise here, and stating that "[b]ecause the instant action does not seek to relitigate the same claims presented to the Superior Court, it is not barred by *res judicata*.")

In light of the fact that the Plaintiff has demonstrated that at least 30 individuals were named as plaintiffs in lawsuits that fall into this category, the Court finds that he has met his burden to establish numerosity here. *Inoken*, 122 F.R.D. at 262. Accordingly, the Amended Motion to Certify the Nelson Kennard class is **GRANTED.**

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Amended Motion for Class Certification, and **DENIES** Defendants' Motion for Reconsideration.

**IT IS SO ORDERED**.

DATED:  April 17, 2012

                                            **CATHY ANN BENCIVENGO**
                                            United States District Judge